1

2

3

4

5

6

7

8                UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                   June 2024 Grand Jury

11  UNITED STATES OF AMERICA,          CR No. 2:24-cr-00471-MWF

12            Plaintiff,               I N D I C T M E N T

13            v.                       [18 U.S.C. § 1349: Conspiracy to
                                       Commit Wire Fraud; 18 U.S.C.
14  JUAN CARLOS THOLA-DURAN,           § 1343: Wire Fraud; 18 U.S.C.
      aka "Parcero,"                   § 371: Conspiracy; 18 U.S.C.
15  ANA MARIA ARRIAGADA,               § 1956(h): Conspiracy to Commit
      aka "Parcera,"                   Money Laundering; 18 U.S.C.
16    aka "Anna,"                      § 1956(a)(1)(B)(i): Money
    DRIVER POWER RENTALS, LLC,         Laundering; 31 U.S.C. §§ 5313,
17    d/b/a Car Deals and More,        5324(a)(3), (d)(2): Structuring
      d/b/a Enterprise LA Rentals,     Transactions to Avoid a Reporting
18      LLC,                           Requirement; 18 U.S.C. § 982, 18
      d/b/a Driver Power Network,      U.S.C. § 981(a)(1)(C), 28 U.S.C.
19    d/b/a Driver Power Rental,       § 2461(c), and 31 U.S.C. § 5317:
    JOHN CARLO THOLA,                  Criminal Forfeiture]
20  PATRICIA ENDERTON,
      aka "Patty,"
21  MIGUEL ANGEL BARAJAS, and
    FEDERICO JORGE TRIEBEL IV,

22

23            Defendants.

24

25       The Grand Jury charges:

26

27

28

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.      Crime tourism theft groups were made up of individuals, often originating from South America and elsewhere outside of the United States, who engage in burglaries, thefts, and other crimes throughout the United States.  As part of the modus operandi of crime tourism theft groups, individuals would enter the United States and engage in theft crime sprees.  The fruits of the thefts were often shared with facilitators and co-conspirators who assisted the crime tourists in the commission of their crimes, as well as others, both inside and outside the United States.

2.      Defendant JUAN CARLOS THOLA-DURAN, also known as ("aka") "Parcero" ("THOLA"), lived primarily in a residence at 27332 Sand Canyon Road in Canyon Country, California (the "Sand Canyon residence").

3.      Defendant ANA MARIA ARRIAGADA, aka "Parcera," aka "Anna," lived in the Sand Canyon residence in Canyon Country, California. Defendants THOLA and ARRIAGADA were in a romantic relationship and shared a child in common.

4.      Defendants THOLA and ARRIAGADA controlled and operated defendant DRIVER POWER RENTALS, a car rental or dealership business that went by various names and operated from various locations within the Central District of California, including, but not limited to, Car Deals and More, located at 15205 Roscoe Boulevard in Van Nuys, California; Enterprise LA Rental, located at 16129 Sherman Way in Van Nuys; Driver Power Rental, located at 13277 Van Nuys Boulevard, Suite F, in Pacoima, California (collectively, defendant "DRIVER POWER

RENTAL," or "DPR").  Defendant ARRIAGADA was the registered owner of DPR.

5.    Defendant PATRICIA ENDERTON, aka "Patty," lived at a residence on Bianca Avenue in Northridge, California (the "Bianca residence").  Defendant THOLA would regularly visit and stay at the Bianca residence.  Defendant ENDERTON owned a company called "MoreLuxe4Less."

6.    Defendant JOHN CARLO THOLA ("JOHN THOLA") was a resident of Van Nuys, California.  Defendant THOLA was defendant JOHN THOLA's father.

7.    Co-conspirator 1 was defendant ARRIAGADA's mother and resided in Canyon Country, California.

8.    Defendant FEDERICO JORGE TRIEBEL IV was a resident of Woodland Hills, California.  He was the father of Co-conspirator 2.

9.    Federal Express, also known as "FedEx," was a shipping company that operated around the United States and worldwide.  FedEx customers could pay to have items shipped via ground or air.  FedEx would keep records of each shipment.  FedEx also operated stores in physical locations around the United States where customers could either ship or receive items.

10.    When an individual made or attempted to make a purchase at a retailer using a credit or debit card, the transaction would initiate a wire transfer of information from the retail location's point-of-sale computer to one of the servers located at the retailer's data centers, as well as a communication from the data center's servers to the applicable credit card network or issuing bank's server.  Once the transaction was processed, there would be a

final wire transfer of information back to the retail location's point-of-sale computers acknowledging that the data was received.

11.  A "gift card" was a physical card or a payment code that was issued by a merchant in a particular amount in exchange for approximately equivalent value received.  Generally, upon presentation to such merchant, gift cards could be used to pay for purchases at the merchant.  At the time a gift card was purchased or used, the transaction would initiate a wire transfer of information from the retail location where the gift card was purchased or used to a server located at the operator's data center in order to process the transaction.

12.  Interactive Communications International, Inc. ("InComm") was a global payments technology company based in Atlanta, Georgia, that served as the largest provider of Visa and MasterCard prepaid gift cards in the United States.  InComm sold pre-paid Visa gift cards at retailers, including at Target, Best Buy, and Walmart, that could be used to pay for purchases anywhere that accepted Visa credit cards.  InComm's gift card data center was located in Atlanta, Georgia.  Any purchase, activation, or usage of an InComm gift card would initiate a wire transfer of information from the point-of-service server to InComm's gift card data center.

13.  Target Corporation was headquartered in Minnesota and operated brick-and-mortar retail stores throughout the United States. Target sold gift cards that could be used to pay for purchases from Target, as well as Visa or MasterCard gift cards that could be used like cash.  Target also sold electronics and other goods.  Any purchase made at a Target store would initiate a wire transfer of information from the store's localized server to Target's centralized

server located in its data center in Minnesota.  If the purchase was made using a credit or debit card, the Minnesota data center would initiate a wire transfer of information to a server located in either Arizona or Texas to authorize payment using that card.

14.  The Home Depot, Inc. was headquartered in Georgia and operated brick-and-mortar retail stores throughout the United States. Home Depot also sold Home Depot gift cards that could be used to pay for purchases from Home Depot.  Home Depot's gift card data center was located in Austin, Texas.  Any purchase, activation, or usage of a Home Depot gift card would initiate a wire transfer of information from the point-of-service server to Home Depot's gift card data center.

15.  During the date ranges listed below, the following bank accounts were controlled by the corresponding individuals:

| Bank | Acct Last 4 Digits | Relevant Authorized User(s) | Business Name (If Any) | Approx. Dates Opened / Closed | Herein-after Known As: |
|------|------|------|------|------|------|
| JP Morgan Chase | 7012 | THOLA | Luxury Rental Motorcars, LLC | 8/3/2020 to 12/31/2022 | "LRM Chase account" |
| JP Morgan Chase | 0387 | ARRIAGADA | Driver Power Rental, LLC | 12/26/2017 to 6/30/2020 | "DPR Chase account" |
| Wells Fargo | 6608 | ARRIAGADA | Driver Power Rentals, LLC | 1/20/2018 to 4/30/2021 | "DPR Wells Fargo account" |
| Bank of the West | 2770 | ARRIAGADA | Driver Power Rentals, LLC | 5/3/2021 to 3/1/2022 | "DPR Bank of the West account" |
| Bank of Hope | 7163 | ARRIAGADA | Driver Power Rentals, LLC | 4/8/2021 | "DPR Bank of Hope account" |
| US Bank | 0572 | ARRIAGADA | Driver Power Rentals, LLC | 5/10/2023 to 2/29/2024 | "DPR US Bank account" |

5

| Bank | Acct Last 4 Digits | Relevant Authorized User(s) | Business Name (If Any) | Approx. Dates Opened / Closed | Herein-after Known As: |
|---|---|---|---|---|---|
| JP Morgan Chase | 8773 | ARRIAGADA | Criadero de Los Angeles | 3/15/2021 to 8/1/2021 | "Criadero Chase account" |
| Wells Fargo | 0581 | ARRIAGADA; Co-conspirator 1 | | 6/20/2019 to 4/30/2021 | "ARRIAGADA / Co-conspirator 1 joint account" |
| Logix Federal Credit Union | 9800 | Co-conspirator 1 | | 3/25/2021 | "Logix account" |
| Wells Fargo | 5350 | JOHN THOLA | Car Deals and More, LLC | 4/30/2022 to 12/31/2023 | "CDM Wells Fargo account" |
| Wells Fargo | 3617 | JOHN THOLA | | 5/5/2021 to 12/1/2023 | "JOHN THOLA's Wells Fargo personal account" |
| Wells Fargo | 4470 | ENDERTON | | 7/19/2017 | "ENDERTON's Wells Fargo personal account" |
| Wells Fargo | 4830 | ENDERTON | MoreLuxe4Less LLC | 7/28/2020 | "MoreLuxe4-Less Wells Fargo account" |
| JP Morgan Chase | 9729 | ENDERTON | MoreLuxe4Less LLC | 2/20/2019 | "MoreLuxe4-Less Chase account" |
| Wells Fargo | 3836 | BARAJAS | | 8/24/2016 to 3/30/2023 | "BARAJAS's Wells Fargo personal account" |

| Bank | Acct Last 4 Digits | Relevant Authorized User(s) | Business Name (If Any) | Approx. Dates Opened / Closed | Herein-after Known As: |
|------|------|------|------|------|------|
| Wells Fargo | 0429 | BARAJAS | Miguel Barajas | 11/19/2019 to 3/30/2023 | "BARAJAS's Wells Fargo business account" |
| MUFG Union Bank | 3719 | TRIEBEL | | 12/7/2021 | "MUFG Union Bank account" |
| Bank of America | 3797 | TRIEBEL | | Unknown | "TRIEBEL's "Bank of America personal account" |

COUNT ONE

[18 U.S.C. § 1349]

[DEFENDANTS THOLA, ARRIAGADA, DRIVER POWER RENTALS, JOHN THOLA, BARAJAS]

16.  The Grand Jury re-alleges and incorporates Paragraphs 1 through 15 of this Indictment here.

A.   <u>OBJECT OF THE CONSPIRACY</u>

17.  Beginning on an unknown date, but no later than in or around January 2018, and continuing through July 25, 2024, in Los Angeles, Ventura, Orange, Santa Barbara, and Riverside Counties, within the Central District of California, and elsewhere, defendants JUAN CARLOS THOLA-DURAN, also known as ("aka") "Parcero" ("THOLA"), ANA MARIA ARRIAGADA, aka "Parcera," aka "Anna," DRIVER POWER RENTALS, LLC, doing business as, and aka, "Car Deals and More," "Enterprise LA Rentals," "Driver Power Network," and "Driver Power Rental" (collectively, "DPR"), JOHN CARLO THOLA ("JOHN THOLA"), and MIGUEL ANGEL BARAJAS, and others known and unknown to the Grand Jury, conspired with one another to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B.   <u>MANNER AND MEANS OF THE CONSPIRACY</u>

18.  The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.   Defendant THOLA would direct associates, often members of crime tourism theft groups who travelled to the United States from South America and elsewhere (hereinafter, the "thief co-conspirators"), to travel to various parts of the United States to commit thefts, including shoplifting goods from stores, burglarizing

8

residences and commercial businesses, and stealing victims' credit cards and debit cards.

b.    Defendants THOLA, ARRIAGADA, and DPR, and co-conspirators who worked at DPR, would provide DPR vehicles for the thief co-conspirators to drive throughout the United States to commit thefts and burglaries.

c.    Defendants THOLA, ARRIAGADA, and DPR, and co-conspirators working at DPR, would require the thief co-conspirators to provide false identification when renting a vehicle for DPR's records in order to make the rental transaction appear legitimate while maintaining the thief co-conspirators' anonymity.

d.    Defendants THOLA and ARRIAGADA would direct the thief co-conspirators who stole credit or debit cards to go immediately to local stores like Target, Best Buy, Home Depot, and others, to max out the stolen credit and debit cards by purchasing electronics, gift cards, designer purses, other high-end luxury goods, or other items before the stolen cards could be frozen or cancelled.

e.    Defendant THOLA would direct thief co-conspirators to return the DPR vehicles to the DPR car lot and process the vehicle return through defendant ARRIAGADA or other DPR staff.

f.    Defendant THOLA would arrange for thief co-conspirators to deliver stolen or fraudulently-obtained goods to associates at DPR or other meeting locations, or to mail them via the United States Postal Service or FedEx to defendant BARAJAS or to other co-conspirators at a FedEx store in Sherman Oaks, California (the "Sherman Oaks FedEx").

g.    At the direction of defendant THOLA, defendants BARAJAS and JOHN THOLA, and other co-conspirators, would pick up

parcels containing items that the thief co-conspirators stole or purchased with stolen credit or debit cards from the post office or the Sherman Oaks FedEx, then deliver the parcels to defendant THOLA and other co-coconspirators.

h.   At the direction of defendant THOLA, defendant BARAJAS and other co-conspirators would use gift cards purchased with stolen credit and debit cards to purchase United States Postal money orders at various United States Post Offices around Southern California.

i.   Defendant THOLA would act as a "fence" to buy the stolen or fraudulently-obtained goods and pay the thief co-conspirators a percentage of the value of the items.

j.   For gift cards purchased with stolen credit or debit cards, defendant THOLA's payment percentage would depend on his and the co-conspirators' understanding of the type of gift card purchased, the co-conspirator's prior relationship with defendant THOLA, and how quickly the gift card would be frozen or cancelled due to fraud detection.

k.   Defendant THOLA would use messaging and encrypted texting apps on his cell phone, including WhatsApp, to communicate with the thief co-conspirators regarding the thefts and the transportation of the stolen or fraudulently-obtained goods.

l.   Defendant THOLA would sell some of the stolen or fraudulently-obtained goods to other buyers or fences, including to buyers located outside of California or outside of the United States.

m.   Defendants THOLA, ARRIAGADA, JOHN THOLA, and others would keep some of the stolen or fraudulently-obtained goods, including gift cards, for personal use, or give gift cards to other co-conspirators for personal use.

10

C.   OVERT ACTS

19.   On or about the following dates, in furtherance of the conspiracy and to accomplish the object of the conspiracy, defendants THOLA, ARRIAGADA, DPR, JOHN THOLA, and BARAJAS, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1.   **2/2018: Undercover Attempt to Rent a Car at DPR Legitimately**

Overt Act No. 1:   In February 2018, an employee of defendant DPR's car rental business, then located at 13277 Van Nuys Boulevard in Pacoima, refused to rent a car to an undercover officer posing as a legitimate walk-in customer after learning that the customer had not been referred by someone in the conspiracy and that the customer had a valid driver's license.

2.   **4/26/2019: Bellevue Theft**

Overt Act No. 2:   On April 26, 2019, while driving a Mazda CX-5 SUV provided by defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, thief co-conspirators stole credit cards belonging to victim N.Y. as she shopped at a HomeGoods in Bellevue, Washington, and used the stolen credit cards to purchase approximately $4,000 worth of jewelry at a Macy's in Bellevue.

3.   **2/17/2021: Newbury Park Theft**

Overt Act No. 3:   On February 17, 2021, while driving a Nissan Altima provided by defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, thief Co-conspirator 4 and other thief co-conspirators stole credit cards from victim I.A.'s car parked at a trailhead in Newbury Park, California, and attempted to use the

11

stolen cards to purchase jewelry for approximately $1,608 at a JC Penney's in The Oaks Mall in Thousand Oaks, California.

Overt Act No. 4:   On February 27, 2021, using coded language in a recorded jail call with thief Co-conspirator 4, defendant THOLA agreed to pay $6,500 for stolen or fraudulently-obtained goods, minus $950 for impound fees defendant ARRIAGADA paid to retrieve the DPR Nissan Altima provided by defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, to the thief co-conspirators who had been arrested.

### 4.   5/5/2021: Mission Viejo Theft

Overt Act No. 5:   On May 5, 2021, thief co-conspirators, driving a car provided by defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, stole debit cards belonging to victim K.B. from her car parked at the James G. Gilleran Park in Mission Viejo, California, and used the stolen debit card to make 19 purchases totaling approximately $9,541 at three different Target stores in Mission Viejo, Aliso Viejo, and Irvine, California.

### 5.   5/5/2021: Summerland Theft

Overt Act No. 6:   On May 5, 2021, thief co-conspirators stole an American Express credit card belonging to victim A.H. by breaking into victim A.H.'s vehicle at Summerland Beach in Santa Barbara, California, then used victim A.H.'s stolen credit card to purchase three Home Depot gift cards totaling approximately $1,500 at a Home Depot store in Goleta, California.

Overt Act No. 7:   On May 8, 2021, at a Home Depot on Foothill Boulevard in San Fernando, California (the "San Fernando Home Depot"), defendant ARRIAGADA purchased a Maytag oven for approximately $1,287 to be delivered to the Sand Canyon residence

12

using four Home Depot gift cards, including part of a $500 Home Depot gift card that thief co-conspirators had purchased with victim A.H.'s stolen credit card.

Overt Act No. 8:   On May 28, 2021, at Home Depot in Newhall Ranch, California (the "Newhall Ranch Home Depot"), defendant ARRIAGADA purchased 67 units of luxury marble vinyl plank flooring totaling approximately $4,358 in her name, and on the purchase paperwork she listed an address on Soledad Canyon Road in Canyon Country, California, that was Co-conspirator 1's address of record at the time, and defendant ARRIAGADA paid using two of the Home Depot gift cards that had been purchased with victim A.H.'s stolen credit card.

**6.   9/3/2021: New Port Richey Theft**

Overt Act No. 9:   On September 3, 2021, thief co-conspirators broke into a vehicle parked at Starkey Wilderness Park in New Port Richey, Florida, and stole five credit cards and $400 from a wallet belonging to victims A.F., D.F., and L.M., which the thief co-conspirators used to purchase $8,000 worth of Home Depot gift cards.

Overt Act No. 10:   On September 7, 2021, at the San Fernando Home Depot, defendant ARRIAGADA purchased a Maytag refrigerator for the Sand Canyon residence for approximately $4,582, using nine $400 Home Depot gift cards that had been purchased with credit cards stolen from victim A.F. by thief co-conspirators, and one of the Home Depot gift cards that had been purchased with victim A.H.'s stolen credit card.

**7.   10/23/2021: Colorado and Mountain View Thefts**

Overt Act No. 11:   On October 23, 2021, thief co-conspirators stole victim T.T.'s wallet as victim T.T. was shopping at a Whole

Foods in Denver, Colorado, then used victim T.T.'s stolen credit card to purchase a $200 Target gift card at a Target in Glendale, Colorado, and to attempt a purchase of approximately $5,000 at a department store.

Overt Act No. 12:   On October 24, 2021, thief co-conspirators stole victim J.W.'s wallet while victim J.W. was shopping at a Trader Joe's in Boulder, Colorado, and used victim J.W.'s stolen credit card to purchase two $500 Target gift cards at a Target in Boulder, and a purchase of $509 at a King Sooper market.

Overt Act No. 13:   On November 5, 2021, thief co-conspirators used credit cards stolen from victims Y.L. and A.T. to make purchases at a Target in Mountain View, California, totaling $2,751, including a $500 Target gift card.

Overt Act No. 14:   On November 9, 2021, driving a Honda Civic provided by defendant DPR to the parking lot of a Target in Northridge, California (the "Northridge Target"), defendant THOLA met with Co-conspirator 5.

Overt Act No. 15:   On November 9, 2021, immediately after meeting with defendant THOLA, Co-conspirator 5 bought two Nintendo Switch devices from the Northridge Target for approximately $656 with three Target gift cards that had been purchased with credit cards stolen from victims T.T., J.W., and Y.L.

**8.   11/30/2021: DPR Car Rental**

Overt Act No. 16:   On November 30, 2021, at defendant DPR's location on Sherman Way in Van Nuys, defendant DPR's employee, Co-conspirator 6, spoke with customers he believed were thieves interested in renting a DPR vehicle, including a confidential source working at the direction of the Federal Bureau of Investigation (the

"Confidential Source").  Co-conspirator 6 said that a DPR car rental cost $500 per week, and that defendants THOLA and ARRIAGADA would buy gift cards for 75 percent of their retail value.

### 9.  12/13/2021: Winston-Salem Theft

Overt Act No. 17:    On December 13, 2021, thief co-conspirators stole victim L.H.'s wallet from a Trader Joe's grocery store in Winston-Salem, North Carolina, then used victim L.H.'s stolen American Express card to purchase two Apple MacBook computers at a Best Buy in Winston-Salem, North Carolina, for approximately $2,888. The thief co-conspirators also used victim L.H.'s stolen credit cards to make purchases of approximately $766 at a local Target, approximately $1,005 at a Bed, Bath & Beyond, and over $900 at an Ulta beauty supply store.

Overt Act No. 18:    On December 14, 2021, thief co-conspirators used FedEx to ship the computers purchased with victim L.H.'s stolen credit card and the corresponding receipt from a FedEx store in Durham, North Carolina, to defendant BARAJAS at the Sherman Oaks FedEx, which he then delivered to defendant THOLA.

### 10.  1/23/2022: Riverside Purse Theft

Overt Act No. 19:    On January 23, 2022, driving a Ford Edge vehicle provided by defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, thief Co-conspirators 7, 8, 9, and 10 forced victim A.G. into their DPR vehicle and when she tried to stop them from stealing purses from the Beer Hunter restaurant in La Quinta, California.

Overt Act No. 20:    On February 21, 2022, on behalf of defendants THOLA, ARRIAGADA, and DPR, Co-conspirator 6 went to the

Riverside County Sheriff's station to retrieve the impounded DPR Ford Edge SUV that had been provided to Co-conspirators 7, 8, 9, and 10.

**11.  2/13/2022: Yorba Linda Traffic Stop**

<u>Overt Act No. 21:</u>   On February 13, 2022, while driving a Nissan Murano provided by defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, thief Co-conspirators 7, 8, 9, and 10 possessed fake IDs and tools for breaking into vehicles in Yorba Linda, California, when they were pulled over by police officers.

**12.  3/3/2022: Ohio and Illinois Thefts**

<u>Overt Act No. 22:</u>   On March 3, 2022, thief co-conspirators stole a credit card belonging to victim L.P. while victim L.P. was shopping at an Athleta in Orange Village, Ohio, then used victim L.P.'s credit card to purchase an Apple MacBook Pro for approximately $2,698 at a Best Buy in Mayfield Heights, Ohio.

<u>Overt Act No. 23:</u>   On March 5, 2022, thief co-conspirators broke into a vehicle parked at a trailhead in Clifton, Ohio, and stole three credit cards belonging to victim L.E., then used victim L.E.'s stolen credit card to purchase an Apple MacBook Pro for approximately $2,680 at a Best Buy in Springfield, Ohio.

<u>Overt Act No. 24:</u>   On March 9, 2022, thief co-conspirators used a credit card belonging to victim R.A. to purchase an Apple MacBook Pro for approximately $2,717 at a Best Buy in Rockford, Illinois.

<u>Overt Act No. 25:</u>   On March 15, 2022, at the Sherman Oaks FedEx, defendant BARAJAS picked up a FedEx parcel containing three Apple MacBooks that thief co-conspirators had bought using credit cards stolen from victims L.P., L.E., and R.A, and delivered the FedEx parcel to defendant THOLA at a gas station on Sherman Way in Van Nuys, California.

1    <u>Overt Act No. 26:</u>  On March 15, 2022, using coded language over

2    WhatsApp, defendant THOLA agreed to sell six MacBook laptops for

3    $12,680 to one of the fences to whom defendant THOLA sold stolen or

4    fraudulently-obtained electronics (hereinafter, "Fence 1").

5    <u>Overt Act No. 27:</u>  On March 15, 2022, outside a Ralph's

6    supermarket in Sunland, California (the "Sunland Ralph's"), defendant

7    THOLA gave the FedEx box containing the three MacBook Pro laptops

8    purchased with victims L.P., L.E., and R.A.'s stolen credit cards to

9    FenceFence 1's associate to deliver to Fence 1.

10   **13.  <u>3/22/2022: DPR Car Rental</u>**

11   <u>Overt Act No. 28:</u>  On March 22, 2022, defendants THOLA and DPR

12   agreed to rent a DPR car to the Confidential Source to commit thefts

13   for items to fence to defendant THOLA.

14   <u>Overt Act No. 29:</u>  On March 24, 2022, using coded language

15   during a meeting at the Sherman Way DPR, defendant ARRIAGADA

16   indicated that the Confidential Source did not have to use their real

17   identification for the DPR car rental paperwork as long as it was the

18   identification the Confidential Source would provide to police if

19   stopped while driving a DPR vehicle.

20   <u>Overt Act No. 30:</u>  On March 29, 2022, at the Sherman Way DPR,

21   defendants ARRIAGADA and DPR recorded the Confidential Source's fake

22   driver's license on the car rental agreement and provided the

23   Confidential Source with a DPR sedan in exchange for a $500 fee and

24   an additional $500 deposit.  Defendant ARRIAGADA said the rental

25   could be extended past the first week with additional $500 payments

26   in cash or via wire transfers or Zelle.

27   <u>Overt Act No. 31:</u>  On April 5, 2022, at the Sherman Way DPR,

28   defendants ARRIAGADA and DPR processed the Confidential Source's

17

return of the DPR vehicle, and defendant ARRIAGADA questioned why the Confidential Source returned the car after only one week.

**14.  4/11/2022: Kansas and Illinois Thefts**

<u>Overt Act No. 32:</u>   On April 11, 2022, thief co-conspirators used a Meritrust Credit Union card belonging to a victim to purchase a $500 MasterCard gift card and other items from a Walmart in Wichita, Kansas.

<u>Overt Act No. 33:</u>   On April 14, 2022, thief co-conspirators used credit cards they stole from victims E.S., S.M., and L.L. to purchase 39 MasterCard gift cards, each worth $200, from Walmart stores in the cities of Springfield, Peoria, and Morton in Illinois.

<u>Overt Act No. 34:</u>   On April 16, 2022, defendant THOLA used a MasterCard gift card ending in 2451 that had been purchased with the stolen Meritrust Credit Union card stolen by thief co-conspirators in Wichita, Kansas, to make a payment of approximately $60 to T-Mobile for a prepaid cell phone account with a phone number used by defendant THOLA.

<u>Overt Act No. 35:</u>   On April 21, 2022, at the Sherman Oaks FedEx, defendant BARAJAS picked up a parcel containing 64 MasterCard gift cards with a total value of approximately $13,100, which included the 40 gift cards that had been purchased with the stolen Meritrust Credit Union card and credit cards stolen from victims E.S., S.M., and L.L.

<u>Overt Act No. 36:</u>   On April 21, 2022, Co-conspirator Patricia Enderton, aka "Patty," used a MasterCard gift card ending in 6631 that had been purchased with victim E.S.'s credit card to make a $90 payment to Spectrum for services at the Bianca residence.

18

1      <u>Overt Act No. 37:</u>  On April 22, 2022, Co-conspirator Enderton

2  used a MasterCard gift card ending in 6631 that had been purchased

3  with victim E.S.'s credit card to make a $100 payment to SoCal Gas

4  for utilities at the Bianca residence, attempted to use a MasterCard

5  gift card ending in 9785 that had been purchased with victim E.S.'s

6  credit card for a $180 payment to Co-conspirator Enderton's T-Mobile

7  account, and used a MasterCard gift card ending in 9785 that had been

8  purchased with victim E.S.'s credit card to buy an Amazon gift card

9  for $10 on Co-conspirator ENDERTON's Amazon account.

10      **15.  <u>5/20/2022: THOLA Purchased Gift Cards</u>**

11      <u>Overt Act No. 38:</u>  On May 20, 2022, using coded language during

12  a WhatsApp text conversation with the Confidential Source, defendant

13  THOLA agreed to buy Target and Visa gift cards he believed the

14  Confidential Source had purchased using a stolen credit card.  In

15  later conversations, defendant THOLA agreed to pay 65 percent of the

16  value of each Visa gift card and 50 percent of the value of each

17  Target gift card.

18      <u>Overt Act No. 39:</u>  On May 25, 2022, outside a Chase Bank in

19  Northridge, California, defendant THOLA paid the Confidential Source

20  approximately $1,220 in cash in exchange for 15 Visa gift cards, each

21  worth $100 (collectively, "the Confidential Source's fraudulent gift

22  cards"), and one $500 Target gift card, which defendant THOLA

23  believed the Confidential Source had purchased with a stolen credit

24  card.  During this meeting, THOLA agreed to buy what the Confidential

25  Source described as stolen high-end tequila for 60 percent of its

26  value.

27      <u>Overt Act No. 40:</u>  On May 25, 2022, in the parking lot of an

28  Albertson's supermarket in Northridge, California, defendant THOLA

met with Co-conspirator 11, who gave defendant THOLA five boxed Apple MacBooks.

Overt Act No. 41:   On May 25, 2022, at the Sunland Ralph's, defendant THOLA met with Fence 1.

Overt Act No. 42:   On May 25, 2022, Co-conspirator Enderton used one of the Confidential Source's fraudulent gift cards at her nail salon and to buy ice cream in North Hills, California.

Overt Act No. 43:   Between May 26, 2022, and June 15, 2022, defendants THOLA and ENDERTON, and other co-conspirators, used the Confidential Source's fraudulent gift cards for transactions at gas stations and auto services in Canyon Country and Santa Clarita near the Sand Canyon residence, at a Lowe's store in Santa Clarita, and at a grocery store in Palmdale, California, at an automobile glass supplier in San Fernando, at a restaurant in Northridge and at Home Depot stores in Van Nuys, at a sushi restaurant in Northridge and a flower shop in Reseda, California, and at Home Depot stores in Van Nuys and Los Angeles.

Overt Act No. 44:   Between May 27, 2022, and May 28, 2022, defendant THOLA and Co-conspirator Enderton used the Confidential Source's fraudulent gift cards on purchases at a Circle K gas station in Bullhead, Arizona.

**16.   7/15/2022: Thousand Oaks Theft**

Overt Act No. 45:   On July 15, 2022, while driving a Dodge Durango provided by defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, Co-conspirators 7, 9, and 12 used a stolen credit card belonging to victim K.T. to purchase an iPad for approximately $861 at a Target in Thousand Oaks, California, and a Gucci handbag for approximately $1,303 at a Saks Off 5th in Camarillo, California.

20

### 17.  9/3/2022: JOHN THOLA Traffic Stop in Burbank

Overt Act No. 46:   On August 12, 2022, co-conspirators used credit cards they stole from victim M.S.C. in San Jose, California, to purchase two iPads from a Best Buy in San Jose with a total value of $2,632.98.

Overt Act No. 47:   On August 29, 2022, co-conspirators used credit cards they stole from victim C.K. in San Diego, California, and used her credit cards to purchase two $500 gift cards from a Best Buy in San Diego.

Overt Act No. 48:   On September 3, 2022, while driving a BMW provided by defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, in Burbank, California, defendant JOHN THOLA possessed over 130 gift cards with a total value of approximately $19,500, $9,400 in cash, and numerous receipts, including receipts for Best Buy purchases of electronics in San Jose and San Diego using credit cards stolen from victims M.S.C. and C.K., as well as a Pennsylvania license plate registered to a Nissan Sentra in the trunk of the DPR BMW.

Overt Act No. 49:   On September 3, 2022, defendant JOHN THOLA possessed a note on his cell phone setting forth fencing payment rates as follows: 80 percent for Apple gift cards worth at least $500; 75 percent for Visa gift cards; 50 percent for Best Buy gift cards; 65 percent for Target gift cards; 50 percent for Home Depot gift cards; 75 percent for Apple computers or watches; $1,000 for Apple Pro Max 256 GB iPhones; and $1,100 for Apple Pro Max 512 GB iPhones.

Overt Act No. 50:   On September 3, 2022, defendant JOHN THOLA possessed notes on his cell phone listing electronics and gift card

amounts, such as $2,800 in Target gift cards and $6,300 in Home Depot gift cards.

**18.   9/6/2022: THOLA Purchase of Gift Cards and Tequila**

Overt Act No. 51:   On September 6, 2022, using coded language in WhatsApp text conversations, defendant THOLA agreed to purchase what he believed were stolen bottles of high-end tequila for $130 per bottle from the Confidential Source, as well as gift cards and Apple electronic devices that defendant THOLA believed were purchased with credit cards stolen by the Confidential Source.

Overt Act No. 52:   On September 6, 2022, using coded language over WhatsApp, defendant THOLA instructed the Confidential Source to send what defendant THOLA believed were gift cards and Apple electronic devices purchased with stolen gift cards to defendant BARAJAS at the Sherman Oaks FedEx.  Defendant THOLA agreed to pay the Confidential Source 70 percent of the value of each Apple tablet and 65 percent of the value of the other items.

Overt Act No. 53:   On September 9, 2022, at the Sherman Oaks FedEx, defendant BARAJAS picked up the parcel sent by the Confidential Source containing three iPads, three Apple Watches, three $500 Target gift cards, and two $500 Visa gift cards, with a total value of approximately $4,447, then delivered this and a second FedEx parcel to defendant THOLA at an ARCO gas station on Nordhoff Street in North Hills, California (the "North Hills Arco").

Overt Act No. 54:   On September 13, 2022, at the North Hills ARCO, defendant THOLA paid the Confidential Source $3,400 in cash for the electronics and gift cards he believed the Confidential Source had bought with stolen credit cards, and for five bottles of high-end tequila that defendant THOLA believed were stolen.

Overt Act No. 55:   On October 7, 2022, at a Target in Pico Rivera, California, co-conspirators purchased two headphones and three Apple devices using three Target gift cards sold by the Confidential Source to defendant THOLA.

**19.  1/15/2023: Scottsdale Theft**

Overt Act No. 56:   On January 15, 2023, thief co-conspirators broke into a vehicle at a trailhead in Scottsdale, Arizona, and stole over $500 in cash, credit cards, and debit cards belonging to victim S.B., then used the stolen credit cards to purchase 25 Visa and MasterCard gift cards, each with a $200 value, at a Sam's Club in Chandler, Arizona.

Overt Act No. 57:   On January 19, 2023, defendant ARRIAGADA paid an overdue water bill for the Sand Canyon residence with three gift cards that had been purchased with credit cards stolen from victim S.B. in Scottsdale, Arizona.

**20.  3/2/2023: New Jersey Theft**

Overt Act No. 58:   On March 2, 2023, Co-conspirators 13 and 14, driving a Nissan Sentra provided by defendants THOLA, ARRIAGADA, and DPR, and other DPR associates, used credit cards they stole from victim C.W. at a trailhead in Alpine, New Jersey, to purchase four Target gift cards, each worth $500, at a Target located in Closter, New Jersey.

**21.  6/7/2023 – 12/29/2023: Thefts for Postal Money Orders**

Overt Act No. 59:   Between June 23, 2023, and June 25, 2023, driving a car provided by defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, thief Co-conspirators 3 and 15 used credit cards they stole from victim C.A. in Washington, Utah, victim M.A. in Albuquerque, New Mexico, victim L.M. in Amarillo, Texas, and victim

C.Y. in Lubbock, Texas, to purchase numerous $400 and $500 gift cards, with a total value of $9,000.

Overt Act No. 60:   Between July 6, 2023, and July 8, 2023, defendant ARRIAGADA made three purchases at Fox Feed & Grain in Canyon Country, California, using four gift cards totaling $1,900, that had been purchased with credit cards stolen by thief co-conspirators from victims C.A., L.M., and M.A..

Overt Act No. 61:   On July 7, 2023, at the U.S. Postal Office on South Maclay Avenue in San Fernando (the "San Fernando post office"), defendant BARAJAS bought U.S. Postal Money Orders using four gift cards totaling $1,200, which had been purchased with credit cards stolen by thief co-conspirators from victims C.A., L.M., and C.Y.

Overt Act No. 62:   On July 8, 2023, at the U.S. Postal Office on Fenwick Street in Sunland, California (the "Fenwick post office"), defendant BARAJAS purchased U.S. Postal Money Orders using five gift cards, totaling $2,200, that had been stolen from victims C.A., L.M., and M.A.

Overt Act No. 63:   On July 10, 2023, defendant JOHN THOLA deposited into his CDM Wells Fargo account $1,800 in the form of four U.S. Postal money orders purchased by defendant BARAJAS on July 7, 2023, and July 8, 2023, using gift cards bought with victim C.A.'s stolen credit cards.

Overt Act No. 64:   Between September 7, 2023, and November 15, 2023, at the San Fernando post office, defendant BARAJAS purchased 29 U.S. Postal money orders, totaling approximately $14,924, using a combination of cash and 17 gift cards.

COUNTS TWO THROUGH THREE

[18 U.S.C. §§ 1343, 2(a)]

[DEFENDANTS THOLA, ARRIAGADA]

20.  The Grand Jury re-alleges and incorporates Paragraphs 1 through 15 and 18 through 19 of this Indictment here.

A.  THE SCHEME TO DEFRAUD

21.  Beginning on or about a date unknown, but no later than in or around January 2018, and continuing to in or about July 25, 2024, in Los Angeles and Ventura Counties, within the Central District of California, and elsewhere, defendants JUAN CARLOS THOLA-DURAN, also known as ("aka") "Parcero" ("THOLA"), and ANA MARIA ARRIAGADA, aka "Parcera," aka "Anna," and others known and unknown to the Grand Jury, aiding and abetting one another, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud retailers and financial institutions as to material matters, and to obtain money and property from retailers and financial institutions by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

22.  The scheme to defraud operated, in substance, as described in Paragraph 18 of this Indictment, which is re-alleged and incorporated here.

B.  USE OF THE WIRES

23.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, for the purpose of executing the above-described scheme to defraud, defendants THOLA and ARRIAGADA, and others known and unknown to the Grand Jury, aiding and abetting one another, transmitted and caused the transmission of the

following items by means of wire communication in interstate

commerce:

| Count | Date | Wire Transmission | Defendants Charged |
|-------|------|-------------------|--------------------|
| TWO | 5/5/2021 | Payment of $1,500 on American Express credit card ending in 1007 in the Central District of California to Home Depot. | THOLA, ARRIAGADA |
| THREE | 7/15/2022 | Payment of $861.99 on credit card ending in 9542 in the Central District of California to Target. | THOLA, ARRIAGADA |

COUNT FOUR

[18 U.S.C. § 371]

[DEFENDANTS THOLA, ARRIAGADA, DRIVER POWER RENTALS]

24.  The Grand Jury re-alleges and incorporates Paragraphs 1 through 15, 18 through 19, and 23 of this Indictment here.

A.  OBJECT OF THE CONSPIRACY

25.  Beginning on an unknown date, but at least as early as January 2018, and continuing to on or about July 25, 2024, in Los Angeles, Ventura, Orange, Santa Barbara, and Riverside Counties, within the Central District of California, and elsewhere, defendants JUAN CARLOS THOLA-DURAN, also known as ("aka") "Parcero" ("THOLA"), ANA MARIA ARRIAGADA, aka "Parcera," aka "Anna," and DRIVER POWER RENTALS, LLC, doing business as, and aka, "Car Deals and More," "Enterprise LA Rentals," "Driver Power Network," and "Driver Power Rental" (collectively, "DPR"), and others known and unknown to the Grand Jury, conspired with one another to knowingly and intentionally commit interstate receipt and transportation of stolen property, in violation of Title 18, United States Code, Sections 2314 and 2315.

B.  MANNER AND MEANS OF THE CONSPIRACY

26.  The objects of the conspiracy were to be accomplished, in substance, in the manner and means set forth in Paragraph 18 of Count One of this Indictment, which is re-alleged and incorporated here.

C.  OVERT ACTS

27.  On or about the following dates, in furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendants THOLA, ARRIAGADA, and DPR, and others known and unknown to the Grand Jury, committed various overt acts, within the Central

27

District of California, and elsewhere, including, but not limited to, the following:

Overt Act Nos. 1 Through 64:   The Grand Jury re-alleges and incorporates Overt Acts 1 through 64 of Count One of this Indictment here.

**1.   6/15/2019: CompuDirect Burglary, Transportation to Colombia**

Overt Act No. 65:   On or about June 15, 2019, co-conspirators broke into CompuDirect, an electronics warehouse in Laguna Hills, California, and stole over $100,000 worth of electronic devices, including a Toshiba laptop bearing serial number 5G013314C.

Overt Act No. 66:   On June 25, 2022, defendants THOLA and ARRIAGADA transported numerous electronic devices in their checked luggage on a flight from Los Angeles International Airport to Colombia, including five Samsung Galaxy watches; seven Samsung Galaxy phones; two Samsung Galaxy tablets; two Apple Watches; seven Apple iPhones, six of which were part of a retail shipment that had been reported missing; one Apple iPad; two Apple AirPods; one Apple Pencil; and two Toshiba laptops, including the laptop bearing serial number 5G013314C that had been stolen in the June 15, 2019, burglary of CompuDirect.

**2.   11/9/2020: Burglary in Clayton, MO**

Overt Act No. 67:   On November 9, 2020, co-conspirators committed a burglary of a residence in Clayton, Missouri, and stole a safe that contained 19 Rolex and Patek Philippe watches valued at approximately $234,400, $10,000 in cash, and gold liberty coins valued between approximately $4,000 and $5,000.

Overt Act No. 68:   On December 17, 2020, using coded language in a WhatsApp chat with defendant THOLA, thief Co-conspirator 16

offered to sell to defendant THOLA collectible coins that had been stolen during the burglary of the residence in Clayton, Missouri.

Overt Act No. 69:  On December 21, 2020, using coded language in WhatsApp conversations, thief Co-conspirator 16 offered to sell to defendant THOLA a Rolex watch, a Patek Philippe watch, and a Hermes Birkin handbag.

Overt Act No. 70:  On December 21, 2020, using coded language in WhatsApp conversations, thief Co-conspirator 16 requested that defendant THOLA provide thief Co-conspirator 16 a better car so that thief Co-conspirator 16 could steal more items and provide them to defendant THOLA.

### 3.    12/31/2020: Burglary of Stephen Silver Jewelry in Menlo Park, CA

Overt Act No. 71:  On December 31, 2020, thief co-conspirators burglarized Stephen Silver Fine Jewelry in Menlo Park, California, and stole numerous high-end watches and jewelry valued at over $5,000,000 (the "Stephen Silver heist").

Overt Act No. 72:  On January 18, 2021, Co-conspirator 17 used WhatsApp to send defendant THOLA a photograph of a Bulgari Octo Finissimo watch with a price tag of $14,300 that had been stolen in the Stephen Silver heist, and they exchanged text messages about selling the watch for $11,000 to make a profit.

Overt Act No. 73:  On January 19, 2021, over WhatsApp, defendant THOLA sent to Co-conspirator 17 a photograph of a De Bethune DB25 Starry Sky Watch with a price tag of $90,000 that had been stolen in the Stephen Silver heist and told thief Co-conspirator 17 to demand no less than $12,000 to "make sure we get our cut."

1      Overt Act No. 74:    On January 20, 2021, using coded language in
2  a WhatsApp voice memo to Co-conspirator 17, defendant THOLA said he
3  would buy stolen watches from thief co-conspirators and share any
4  profit from selling them with Co-conspirator 17.

5      Overt Act No. 75:    On January 26, 2021, in a WhatsApp voice
6  message to Co-conspirator 17, defendant THOLA said he was getting
7  "the diamonds" and the Bulgari watch later that night, noting his
8  suppliers "gave me real expensive watches worth $30,000" that he
9  would sell for $8,000.

10      Overt Act No. 76:    On January 28, 2021, using WhatsApp,
11  defendant THOLA sent Co-conspirator 17 a photograph of a diamond
12  flower ring with a price tag of $30,000 that had been stolen in the
13  Stephen Silver heist, noting that the ring's sellers wanted $13,000.

14      Overt Act No. 77:    On January 29, 2021, using WhatsApp,
15  defendant THOLA sent Co-conspirator 17 a photograph of a 4.78 carat
16  yellow diamond halo ring with a price tag of $138,000 that had been
17  stolen in the Stephen Silver heist.

18      Overt Act No. 78:    On February 4, 2021, over WhatsApp,
19  defendant THOLA sent Co-conspirator 17 a photograph and a video of a
20  1.65 carat yellow diamond halo ring with a price tag of $62,000 that
21  had been stolen in the Stephen Silver heist, noting that the sellers
22  wanted $10,000.  The following day, they discussed selling the ring
23  to Co-conspirator 17's buyers.

24      Overt Act No. 79:    On February 6, 2021, over WhatsApp, Co-
25  conspirator 17 confirmed with defendant THOLA that his buyer wanted
26  to buy a limited edition MB&F LM2 watch that was stolen in the
27  Stephen Silver heist.

28

<u>Overt Act No. 80:</u>    On February 7, 2021, at defendant THOLA's direction, Co-conspirator 18 retrieved a watch from an individual at an Arco gas station, which he then delivered to Co-conspirator 17 at a Jack in the Box restaurant in, where Co-conspirator 17 gave Co-conspirator 18 two items: a watch that Co-conspirator 18 immediately delivered to a jeweler on San Fernando Road in exchange for $2,000, and the 1.65 carat diamond halo ring stolen in the Stephen Silver heist, for defendant THOLA to sell to Co-conspirator 17's buyer.

<u>Overt Act No. 81:</u>    On February 9, 2021, using coded language in a WhatsApp chat, defendant THOLA told thief Co-conspirator 19 that he had "a customer for your jewel," that he made lots of money fencing "the white ones," that "The Russian pays well whenever good jewels come up," and that defendant THOLA would deduct the $1,000 DPR car rental fee from what defendant THOLA would pay for the thief co-conspirator's goods.

### 4.    <u>5/26/2021 – 8/8/2021: Best Buy Burglaries</u>

<u>Overt Act No. 82:</u>    On May 26, 2021, defendants THOLA, ARRIAGADA, and DPR, and their DPR associates, provided a white Ford Transit van to thief Co-conspirator 20 and other thief co-conspirators.

<u>Overt Act No. 83:</u>    Between June 15, 2021, and August 8, 2021, thief Co-conspirator 20, along with other thief co-conspirators, while driving the white DPR Ford van, burglarized Best Buy locations in Charlottesville, Virginia; Stroudsburg, Pennsylvania; Holland, Michigan; and Greenfield, Wisconsin, and attempted to burglarize a Best Buy in Mt. Pleasant, Wisconsin, and stole computers, electronics, and other items worth a total value of approximately $626,075.

COUNT FIVE

[18 U.S.C. § 1349]

[DEFENDANTS THOLA, ARRIAGADA, ENDERTON, BARAJAS]

A.    INTRODUCTORY ALLEGATIONS

28.    The Grand Jury re-alleges and incorporates Paragraphs 1 through 15 of this Indictment here.  Additionally, at times relevant to this Indictment:

The Paycheck Protection Program

29.    The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

30.    As part of this effort, the SBA facilitated government-backed loans through banks, credit unions, and other lenders.

31.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

32.    To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business.  The PPP loan application required the business, through its authorized representative, to acknowledge the program

32

rules and make certain affirmative certifications to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments."  The applicant, through its authorized representative, was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges."  In the PPP loan application, the small business, through its authorized representative, was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP, and a business could not receive a loan of more than 2.5 times its average monthly payroll costs.  In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

33.  A PPP loan application was processed by a participating financial institution ("lender").  If a PPP loan application was approved, the participating lender would fund the loan using its own monies, which were guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

34.  PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities.  Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business was eligible for the PPP loan it

1  received, spent the loan proceeds on these permissible expense items
2  within a designated period of time, and used a certain portion of the
3  loan proceeds for payroll expenses.

4      35.  Harvest Small Business Finance, headquartered in Laguna
5  Beach, California, was a financial institution that the Federal
6  Deposit Insurance Company insured and that was an approved SBA lender
7  of PPP loans.

8      <u>The Economic Injury Disaster Loan Program</u>

9      36.  The Economic Injury Disaster Loan ("EIDL") Program was a
10  United States Small Business Administration ("SBA") program that
11  provided low-interest financing to small businesses, renters, and
12  homeowners in regions affected by declared disasters.

13      37.  The CARES Act authorized the SBA to provide EIDLs up to $2
14  million to eligible small businesses experiencing substantial
15  financial disruption due to the COVID-19 pandemic.  In addition, the
16  CARES Act authorized the SBA to issue advances of up to $10,000 to
17  small businesses applying for an EIDL.

18      38.  To obtain an EIDL and an advance, a qualifying business was
19  required to submit an application to the SBA and provide information
20  about its operations, such as the number of employees, gross revenues
21  for the 12-month period preceding the disaster, and cost of goods
22  sold in the 12-month period preceding the disaster.  In the case of
23  EIDLs for COVID-19 relief, the 12-month period extended from January
24  1, 2019, to January 31, 2020.  Applicants certified that all the
25  information in the application was true and correct to the best of
26  their knowledge.

27      39.  EIDL applications were submitted directly to the SBA and
28  processed by the agency with support from a government contractor.

The amount of the loan was determined, in part, on the information provided by the applicant about employment, revenue, and cost of goods, as described above.

40.   Any funds issued under an EIDL or advance were issued directly by the SBA.  EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

B.   OBJECT OF THE CONSPIRACY

41.   Beginning no later than in or around May 2020 and continuing until at least in or around June 2021, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants JUAN CARLOS THOLA-DURAN, also known as  ("aka") "Parcero" ("THOLA"), ANA MARIA ARRIAGADA, aka "Parcera," aka "Anna," PATRICIA ENDERTON, aka "Patty," and MIGUEL ANGEL BARAJAS, and others known and unknown to the Grand Jury, conspired with one another to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

C.   MANNER AND MEANS OF THE CONSPIRACY

42.   The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.   Defendants THOLA, ARRIAGADA, ENDERTON, and BARAJAS together with other co-conspirators, would make, and cause to be made, false statements to lenders, including Harvest Small Business Finance and the SBA, in connection with fraudulent applications for PPP and EIDL loans for businesses they claimed to control, including false representations regarding the nature of the businesses, the

number of employees to whom the company had paid wages and false certifications that the loans would be used for permissible business purposes.

b.    In connection with those applications, defendants THOLA, ARRIAGADA, ENDERTON, and BARAJAS, together with other co-conspirators, would also electronically submit, and cause to be submitted, false documents to lenders, including Harvest Small Business Finance and the SBA, in support of the fraudulent PPP and EIDL loan applications, including false and fictitious tax documents.

c.    At the time of these applications, defendants THOLA, ARRIAGADA, ENDERTON, and BARAJAS, together with other co-conspirators, knew that the representations regarding the numbers of employees and intended use of the loan proceeds were false and that the tax documents were fabricated.  In making these false representations and submitting these fabricated documents, defendants THOLA, ARRIAGADA, ENDERTON, and BARAJAS intended that the lenders, including Harvest Small Business Finance and the SBA, would rely on them to approve the applications and determine the amount to be disbursed.

d.    Defendant THOLA would pay Co-conspirator 21 to assist defendants THOLA, ARRIAGADA, and BARAJAS, and other co-conspirators, with their PPP loan applications.

e.    Defendants THOLA, ARRIAGADA, and BARAJAS would electronically submit, and cause to be submitted, initial false PPP loan applications that were denied and then would re-apply electronically using different false information in applications submitted to Harvest Small Business Finance.

f. Defendant ENDERTON would electronically submit, and cause to be submitted, multiple EIDL loan applications that were denied and then she would re-apply using different false information on the new applications.

g. Defendant ARRIAGADA would direct that PPP loan proceeds be deposited into a JP Morgan Chase bank account associated with Criadero De Los Angeles that she controlled.

h. Defendant ENDERTON would direct that EIDL loan proceeds be deposited first into a Wells Fargo personal bank account that she controlled and then into a business JP Morgan Chase bank account that she controlled.

i. Defendant BARAJAS would direct that PPP loan proceeds be deposited into a Wells Fargo bank account that he controlled.

j. Defendants ARRIAGADA and BARAJAS would electronically submit, and cause to be submitted, applications for a second draw of PPP loan funding by falsely misrepresenting on the applications that they had spent the first round of PPP loan proceeds on acceptable expenses.

k. Defendants THOLA, ARRIAGADA, ENDERTON, and BARAJAS, together with other co-conspirators, would then use the fraudulently obtained PPP and EIDL loan proceeds for their own personal benefit and for the benefit of their co-conspirators, including for expenses prohibited under the requirements of the PPP and EIDL programs. Sometimes, in order to conceal their misappropriation of these loan proceeds, defendants THOLA, ARRIAGADA, ENDERTON, and BARAJAS would write checks drawn on the loan proceeds to one another or other co-conspirators, with memo lines falsely describing the purpose of the checks as "payroll" or a similar notation.

D.    <u>OVERT ACTS</u>

43.    On or about the following dates, in furtherance of the conspiracy and to accomplish the object of the conspiracy, defendants THOLA, ARRIAGADA, ENDERTON, and BARAJAS, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1.    **7/17/2020: Defendant ENDERTON EIDL Loan Fraud**

<u>Overt Act No. 84:</u>    On May 12, 2020, defendant ENDERTON electronically submitted, and caused to be submitted, an application for unemployment benefits from the California Employment Development Department ("EDD"), which application falsely claimed that her luxury goods resale company, MoreLuxe4Less, had to close due to the pandemic, and before that had a yearly gross revenue of $18,000.

<u>Overt Act No. 85:</u>    Between May 21, 2020, and September 8, 2021, defendant ENDERTON received EDD payments based on her fraudulent application of May 12, 2020.

<u>Overt Act No. 86:</u>    On July 7, 2020, with assistance from defendant THOLA and other co-conspirators, defendant ENDERTON electronically submitted, and caused to be submitted, to the SBA an EIDL loan application in the name of her clothing re-sale company MoreLuxe4Less, which application: (1) falsely represented that the business earned yearly gross revenues of $829,314 and had yearly costs of goods sold of $609,241; (2) falsely represented that MoreLuxe4Less had 10 employees; (3) listed a falsified Social Security Number; and (4) falsely certified that MoreLuxe4Less would use the loan proceeds only for permissible business purposes.

1     <u>Overt Act No. 87:</u>    On July 12, 2020, while defendant ENDERTON's
2  first EIDL loan application was still pending, defendant ENDERTON
3  electronically submitted, and caused to be submitted, to the SBA a
4  second EIDL loan application in the name of MoreLuxe4Less, which
5  application: (1) falsely represented that the business earned yearly
6  gross revenues of $150,000 and had yearly costs of goods sold of
7  $80,000; (2) falsely represented that MoreLuxe4Less had 3 employees;
8  (3) falsely listed someone else's Social Security number as defendant
9  ENDERTON's Social Security number; and (4) falsely certified that
10 MoreLuxe4Less would use the loan proceeds only for permissible
11 business purposes.

12     <u>Overt Act No. 88:</u>    On July 17, 2020, while defendant ENDERTON's
13 first and second EIDL loan applications were still pending, defendant
14 ENDERTON electronically submitted, and caused to be submitted, to the
15 SBA a third EIDL loan application in the name of "Enderton Patricia,"
16 which application: (1) falsely represented that "Enderton Patricia"
17 was an interior design company at which defendant ENDERTON was an
18 independent contractor; (2) falsely represented that the business
19 earned yearly gross revenues of $325,000 and with no listed cost of
20 goods sold; (3) falsely represented that "Enderton Patricia" had 4
21 employees; (4) falsely listed defendant ENDERTON's Social Security
22 Number; (5) listed as the business address of "Enderton Patricia" the
23 address of her brother's residence in North Hills, which she falsely
24 represented was her personal residential address; and (6) falsely
25 certified that "Enderton Patricia" would use the loan proceeds only
26 for permissible business purposes.    Defendant ENDERTON's application
27 specified that EIDL payments be deposited into her Wells Fargo
28 personal account.

Overt Act No. 89:    On August 7, 2020, defendant ENDERTON electronically signed a Loan Authorization and Agreement.

Overt Act No. 90:    On August 11, 2020, defendant ENDERTON caused the SBA to transfer approximately $150,000 into defendant ENDERTON's Wells Fargo personal account when the SBA approved her fraudulent "Enderton Patricia" EIDL application.

Overt Act No. 91:    On August 26, 2020, defendant ENDERTON transferred $149,000 of the fraudulently-obtained "Enderton Patricia" EIDL loan proceeds to her MoreLuxe4Less Wells Fargo account.

Overt Act No. 92:    On August 27, 2020, defendant ENDERTON used the fraudulently-obtained "Enderton Patricia" EIDL loan proceeds to write a check for $10,000 drawn on her MoreLuxe4Less Wells Fargo account to defendant ARRIAGADA's Driver Power Rentals bank account, and defendant ARRIAGADA deposited the check into that account on the same day.

Overt Act No. 93:    On August 31, 2020, defendant ENDERTON used the fraudulently-obtained "Enderton Patricia" EIDL loan proceeds to write a check from her MoreLuxe4Less Wells Fargo account for $11,584 to "Seva Ventures," a real estate company owned and controlled by Co-conspirator 22, who, later that day, first deposited the check in the Seva Ventures Wells Fargo account that he controlled, and subsequently deposited the money into his personal account on November 5, 2020.

Overt Act No. 94:    On August 31, 2020, defendant ENDERTON used the fraudulently-obtained "Enderton Patricia" EIDL loan proceeds to write a check from her MoreLuxe4Less Wells Fargo account for $28,416 to Co-conspirator 22, who deposited the check into his Wells Fargo personal account the same day.

40

1    Overt Act No. 95:    On August 31, 2020, defendant ENDERTON used

2  the fraudulently-obtained "Enderton Patricia" EIDL loan proceeds to

3  write a check from her MoreLuxe4Less Wells Fargo account for $30,000

4  to "Green Movement Builders," a company owned and controlled by Co-

5  conspirator 2.

6    Overt Act No. 96:    On September 1, 2020, defendant THOLA used

7  WhatsApp to send Co-conspirator 23 a screenshot provided by defendant

8  ENDERTON that displayed her Wells Fargo personal account, showing the

9  EIDL loan payment to that account.  Using coded language, defendant

10  THOLA told Co-conspirator 23 that defendant ENDERTON had received a

11  "loan for $150K" with the assistance of co-conspirators, whom

12  defendant THOLA had directed to "work on" a similar loan application

13  for Co-conspirator 23.

14    Overt Act No. 97:    Between September 6, 2020, and September 15,

15  2020, in response to the SBA's request for items in support of

16  defendant ENDERTON's first MoreLuxe4Less EIDL application, defendant

17  ENDERTON submitted or caused to be submitted through the online EIDL

18  application portal fraudulent documents, including a fake federal tax

19  return for MoreLuxe4Less for tax year 2019, when, in fact,

20  MoreLuxe4Less had never filed any tax return for that year.

21    Overt Act No. 98:    On September 15, 2020, defendant ENDERTON

22  called the EIDL loan program hotline to inquire about her first

23  MoreLuxe4Less loan application, but could not pass the security

24  verification step because she could not remember the last four digits

25  of the false Social Security number she had provided on her loan

26  application.

27    Overt Act No. 99:    On January 29, 2021, defendant ENDERTON

28  called the EIDL loan program hotline regarding the "Enderton

"Patricia" loan, but she could not remember the last four digits of the false Social Security number she had provided on her loan application.

Overt Act No. 100:  Between May 2, 2023, and January 29, 2024, after having received approximately ten notices to repay the "Enderton Patricia" EIDL loan, defendant ENDERTON made online loan payments totaling approximately $5,800 using 12 separate cards.

**2.   3/30/2021: Defendant BARAJAS PPP Loan Fraud**

Overt Act No. 101:  On July 28, 2020, using coded language on WhatsApp text conversations, defendant THOLA instructed Co-conspirator 24 to submit a PPP loan application on behalf of defendant BARAJAS and sent the co-conspirator defendant BARAJAS's photograph and personal information.

Overt Act No. 102:  On January 14, 2021, defendant THOLA sent Co-conspirator 21 the driver's license and Social Security information for defendants THOLA, ARRIAGADA, and BARAJAS, and Co-conspirator 2, so that PPP loan applications could be submitted in their names.

Overt Act No. 103:  On January 15, 2021, defendant THOLA used WhatsApp to ask Co-conspirator 21, "can we start with the applications."

Overt Act No. 104:  On January 16, 2021, Co-conspirator 21 requested bank statements for January and February 2020 from defendant THOLA, who then sent Co-conspirator 21 account statements for two shell companies controlled by Co-conspirator 2, Ferovision DBA Green Movement Builders, and Lighthouse of Happiness.

Overt Act No. 105:  On January 18, 2021, defendant THOLA used WhatsApp to send defendant ARRIAGADA Social Security Numbers to use

for PPP application for defendants THOLA, ARRIAGADA, and BARAJAS, and as well as a link to submit online PPP loan applications at "app.bluevine.com" with the instruction to "send information here please."

Overt Act No. 106:  On January 18, 2021, over WhatsApp, defendant THOLA asked Co-conspirator 21 if he was going to work on the applications, otherwise defendant THOLA would check elsewhere. Co-conspirator 21 explained to defendant THOLA that "PPP doesn't start until [January] 19th."

Overt Act No. 107:  On January 29, 2021, defendant THOLA reminded Co-conspirator 21 over WhatsApp to do the loans, adding, "We are going to get money."

Overt Act No. 108:  On January 29, 2021, defendant THOLA told Co-conspirator 21 over WhatsApp to prepare loan applications, "the one for 10K that they are giving away" for "all of us," and sent Co-conspirator 21 pictures of business documents, including a voided check from defendant BARAJAS's bank account.

Overt Act No. 109:  On February 16, 2021, using coded language over WhatsApp text conversations, defendant THOLA instructed Co-conspirator 21 to work on PPP loan applications for business entities used and controlled by defendant THOLA and other co-conspirators, namely, Luxury Rental Car, Driver Power Rentals, 6 and 7 Wholesale, and Organic Green, the shell company whose bank account was managed by defendant BARAJAS.

Overt Act No. 110:  On March 30, 2021, defendant BARAJAS electronically signed and submitted, and caused to be signed and submitted, a PPP loan application to lender Harvest Small Business Finance for the requested amount of $20,833, falsely claiming on the

43

application that he was self-employed in trucking with lost wages due to COVID-19, listing as his business address the address of DPR on Van Nuys Boulevard in Pacoima, and providing an e-mail address that was not connected to any trucking business.

Overt Act No. 111: On March 31, 2021, defendant BARAJAS electronically submitted and caused to be submitted to Harvest Small Business Finance a false document in support of defendant BARAJAS's PPP loan application, namely, a fake Internal Revenue Service Form 1040, Schedule C that falsely claimed defendant BARAJAS earned a gross income of $138,486 as a truck driver in tax year 2019.

Overt Act No. 112: On April 7, 2021, defendant BARAJAS used, or caused to be used, the fraudulently obtained PPP loan proceeds, to make seven separate cash withdrawals from four ATMs in Yerevan, Armenia, each for $282.22, totaling $1,975.54.

Overt Act No. 113: On April 9, 2021, defendant BARAJAS caused Harvest Small Business Finance to transfer approximately $20,833 to the checking account associated with his Wells Fargo personal account based on the fraudulent PPP loan application of March 31, 2021. After receiving the loan payment, defendant BARAJAS used the fraudulently obtained PPP loan proceeds, among other funds, to make two transfers totaling $3,000 to the savings account associated with his Wells Fargo personal account, and one transfer of $9,000 to his Wells Fargo business account.

Overt Act No. 114: On April 12, 2021, defendant BARAJAS used the fraudulently obtained PPP loan proceeds to make two separate wire transfers of $5,000 each from his Wells Fargo personal checking account to his Wells Fargo business account.

Overt Act No. 115:  On April 12, 2021, defendant BARAJAS used the fraudulently obtained PPP loan proceeds, among other funds, to transfer a total of $1,600 from his Wells Fargo personal checking account to his Wells Fargo personal savings account.

Overt Act No. 116:  Between April 12, 2021, and April 19, 2021, defendant BARAJAS used or caused to be used his fraudulently obtained PPP loan proceeds to withdraw a total of approximately $6,294 from his Wells Fargo business account in Yerevan, Armenia, and to withdraw a total of approximately $18,361.52 from that account in Tblisi, Georgia.

Overt Act No. 117:  On April 15, 2021, defendant BARAJAS electronically signed and submitted, and caused to be submitted, a request for a second draw of PPP loan payments to lender Harvest Small Business Finance for the requested amount of $20,833, relying on the fraudulent financial documents submitted with his initial PPP loan application on March 31, 2021.

Overt Act No. 118:  On April 26, 2021, defendant BARAJAS caused Harvest Small Business Finance to transfer approximately $20,833 to his Wells Fargo personal account based on his fraudulent request for a second draw of PPP loan payments, and he withdrew $13,510 from his Wells Fargo personal account the following day.

Overt Act No. 119:  On April 27, 2021, defendant BARAJAS used the fraudulently obtained PPP loan proceeds to transfer $3,000 from his Wells Fargo personal account to his Wells Fargo business account, from which he withdrew $1,000 in cash on April 29, 2021.

Overt Act No. 120:  On April 28, 2021, defendant BARAJAS used the fraudulently obtained PPP loan proceeds to withdraw $3,000 in cash from his Wells Fargo personal account.

1    <u>Overt Act No. 121:</u>  On May 3, 2021, defendant BARAJAS used or
2   caused to be used his fraudulently obtained PPP loan proceeds to
3   withdraw $1,000 in cash from his Wells Fargo personal account.
4    <u>Overt Act No. 122:</u>  On May 3, 2021, defendant BARAJAS used or
5   caused to be used his fraudulently obtained PPP loan proceeds to make
6   an online purchase of a calling card for $52 and to withdraw $637 in
7   cash from an ATM in Tijuana, Mexico.
8    **3.   <u>4/2/2021: Defendant ARRIAGADA PPP Loan Fraud</u>**
9    <u>Overt Act No. 123:</u>  On September 3, 2020, defendants THOLA and
10  ARRIAGADA incorporated "Criadero de Los Angeles," identifying
11  themselves as registered managers.
12   <u>Overt Act No. 124:</u>  On February 7, 2021, defendant ARRIAGADA
13  electronically submitted and caused to be submitted an ultimately
14  unsuccessful PPP loan application to lender Itria Ventures on behalf
15  of "Driver Power Rental" for the requested amount of $171,250,
16  falsely claiming on the application that her rental car business
17  employed nine employees and had an average monthly payroll of
18  $68,500.
19   <u>Overt Act No. 125:</u>  On March 15, 2021, defendant ARRIAGADA
20  opened the Criadero Chase account, for which she was the sole
21  authorized user.  In setting up the Criadero Chase account, defendant
22  ARRIAGADA listed a P.O. Box in Canyon Country, California that was
23  Co-conspirator 1's address of record and knowingly provided the bank
24  with a false Social Security number.
25   <u>Overt Act No. 126:</u>  On April 2, 2021, after defendant
26  ARRIAGADA's loan application submitted to Itria Ventures on February
27  7, 2021, was rejected, defendant ARRIAGADA electronically signed and
28  submitted, and caused to be submitted, a PPP loan application to

46

lender Harvest Small Business Finance on behalf of the self-employed business "Ana Maria Arriagada" for the requested amount of $20,833, falsely claiming on the application that she was a self-employed car rental independent contractor with lost wages due to COVID-19.

Overt Act No. 127:  On April 2, 2021, defendant ARRIAGADA electronically submitted and caused to be submitted to Harvest Small Business Finance false documents in support of defendant ARRIAGADA's PPP loan application, including a fake Internal Revenue Service Form 1040, Schedule C that claimed defendant ARRIAGADA had net earnings of $656,267 in tax year 2019.

Overt Act No. 128:  On April 9, 2021, defendant ARRIAGADA electronically signed and submitted, and caused to be submitted to Harvest Small Business Finance, an application for a second draw of PPP loan payments on behalf of "Ana Maria Arriagada" for the requested amount of $20,833, falsely claiming on the application that she was a self-employed car rental independent contractor with lost wages due to COVID-19, and relying on the fraudulent supporting documents she had submitted with her first application on April 2, 2021.

Overt Act No. 129:  On April 20, 2021, defendant ARRIAGADA caused Harvest Small Business Finance to transfer approximately $20,833 to the Criadero Chase account based on the fraudulent PPP loan application of April 2, 2021.

Overt Act No. 130:  On May 5, 2021, defendant ARRIAGADA caused Harvest Small Business Finance to transfer approximately $20,833 to the Criadero Chase account based on the second draw PPP loan application.

<u>Overt Act No. 131:</u>  On May 6, 2021, defendant ARRIAGADA used the fraudulently obtained second draw PPP loan proceeds to write a check drawn on the Criadero Chase account to Co-conspirator 6 in the approximate amount of $7,980, disguised as "commissions and payroll."

<u>Overt Act No. 132:</u>  On May 20, 2021, defendant ARRIAGADA used the fraudulently obtained PPP loan proceeds, among other illegal sources of income, to write a check drawn on the Criadero Chase account to defendant ARRIAGADA's DPR Bank of the West account in the approximate amount of $4,800 falsely disguised as "payroll and commissions," and defendant ARRIAGADA then deposited the check into the Driver Power Rental bank account later that day.

### 4.   5/25/2021: John Thola PPP Loan Application

<u>Overt Act No. 133:</u>  On May 23, 2021, a co-conspirator electronically submitted false documents to Harvest Small Business Finance in support of a PPP loan application on behalf of Co-conspirator John Carlo Thola ("John Thola"), including a fake Internal Revenue Service Form 1040, Schedule C claiming Co-conspirator John Thola's business was located in Greenville, South Carolina, and that he had gross earnings of $103,021 and net earnings of $61,057 in tax year 2020.

<u>Overt Act No. 134:</u>  On May 25, 2021, a co-conspirator electronically submitted a PPP loan application on behalf of Co-conspirator John Thola to Harvest Small Business for the requested amount of $20,833, falsely claiming on the application that Co-conspirator John Thola was self-employed in "general freight trucking."

<u>Overt Act No. 135:</u>  On June 25, 2021, co-conspirators caused Harvest Small Business Finance to transfer approximately $20,833 to

48

defendant THOLA's "Luxury Rental Motorcars, LLC" business account at JP Morgan Chase ending in 7012 (the "LRM Chase account"), based on the fraudulent PPP loan application submitted on behalf of co-Conspirator John Thola on June 25, 2021.

Overt Act No. 136:  On June 25, 2021, defendant THOLA used the fraudulently obtained PPP loan proceeds from Co-conspirator John Thola's PPP loan application of May 23, 2021, to write a check drawn on his Luxury Rental Motorcars business account at JP Morgan Chase to Co-conspirator 22 in the approximate amount of $15,000, disguised as "payroll."

Overt Act No. 137:  On June 30, 2021, defendant THOLA used the fraudulently obtained PPP loan proceeds from Co-conspirator John Thola's PPP loan application of May 23, 2021, to write a check drawn on his Luxury Rental Motorcars business account at JP Morgan Chase to Co-conspirator 23's business account for 6/7 Wholesale Cars in in the approximate amount of $9,800, disguised as "pairoll," meaning payroll.

Overt Act No. 138:  On July 1, 2021, defendant THOLA used the fraudulently obtained PPP loan proceeds from Co-conspirator John Thola's PPP loan application of May 23, 2021, to write a check drawn on his Luxury Rental Motorcars business account at JP Morgan Chase to Co-conspirator 23's business account for 6/7 Wholesale Cars in the approximate amount of $3,600.

Overt Act No. 139:  On November 1, 2021, defendant THOLA wrote a cashier's check drawn on his Luxury Rental Motorcars business account at JP Morgan Chase to Co-conspirator 21 in the approximate amount of $37,000.

1     <u>Overt Act No. 140:</u>  On June 2, 2022, defendant THOLA wrote a
2 cashier's check drawn on his Luxury Rental Motorcars business account
3 at JP Morgan Chase to Co-conspirator 21 in the approximate amount of
4 $18,000.

5     **5.  <u>06/18/2021: Co-Conspirator 1's PPP Loan Application</u>**

6     <u>Overt Act No. 141:</u>  May 27, 2021, a co-conspirator
7 electronically submitted a PPP loan application to lender Harvest
8 Small Business Finance on behalf of Co-conspirator 1 for the
9 requested amount of $20,833, falsely claiming on the application that
10 Co-conspirator 1 was a self-employed freight trucker with lost wages
11 due to COVID-19.

12     <u>Overt Act No. 142:</u>  On June 5, 2021, a co-conspirator
13 electronically submitted false documents in support of Co-conspirator
14 1's PPP loan application, including a fake Internal Revenue Service
15 Form 1040, Schedule C that claimed Co-conspirator 1 was a self-
16 employed individual working in general freight trucking and earned
17 $132,147 in tax year 2019.

18     <u>Overt Act No. 143:</u>  On June 18, 2021, Co-conspirator 1 or a co-
19 conspirator electronically signed Co-conspirator 1's application in
20 her name, which caused Harvest Small Business Finance to transfer
21 approximately $20,833 to the Criadero Chase account on July 9, 2021.

22     <u>Overt Act No. 144:</u>  On July 9, 2021, defendant ARRIAGADA wrote
23 two checks drawn on the Criadero Chase account to Co-conspirator 23's
24 business account for 6/7 Wholesale Cars in the approximate amount of
25 $9,000, falsely labeled as "marketing and promotion" and for
26 approximately $4,000, falsely labeled as money for "commissions and
27 sales."

28

1        <u>Overt Act No. 145:</u>  On July 12, 2021, defendant ARRIAGADA

2    transferred $500 via Zelle from the Criadero Chase account to Co-

3    conspirator 6.

4        <u>Overt Act No. 146:</u>  On July 12, 2021, defendant ARRIAGADA wrote

5    a $2,500 check drawn on the Criadero Chase account to Co-conspirator

6    1, disguised as "payroll for past month."

7        <u>Overt Act No. 147:</u>  On July 23, 2021, defendant ARRIAGADA

8    withdrew the $8,426 remaining in the Criadero Chase account and

9    subsequently closed the account on July 28, 2021.

COUNTS SIX THROUGH TEN

[18 U.S.C. §§ 1343, 2(a), (b)]

[DEFENDANTS THOLA, ARRIAGADA, ENDERTON, BARAJAS]

44.   The Grand Jury re-alleges and incorporates Paragraphs 1 through 15, 29 through 40, and 42 through 43 of this Indictment here.

A.   THE SCHEME TO DEFRAUD

45.   Beginning on a date unknown, but no later than in or around May 2020, and continuing to July 25, 2024, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants JUAN CARLOS THOLA-DURAN, also known as ("aka") "Parcero" ("THOLA"), ANA MARIA ARRIAGADA, aka "Parcera," aka "Anna," PATRICIA ENDERTON, aka "Patty," and MIGUEL ANGEL BARAJAS, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA and other lenders as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

46.   The scheme to defraud operated, in substance, as described in Paragraph 42 of this Indictment, which is re-alleged and incorporated here.

B.   USE OF THE WIRES

47.   On or about the dates set forth below, in Los Angeles and Orange Counties, within the Central District of California, for the purpose of executing the above-described scheme to defraud, defendants THOLA, ARRIAGADA, ENDERTON, and BARAJAS, and others known and unknown to the Grand Jury, aiding and abetting one another, transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

52

| COUNT | DATE | WIRE TRANSMISSION | DEFENDANTS |
|-------|------|-------------------|------------|
| SIX | 7/17/2020 | Submission of application for $150,000 EIDL loan on behalf of Enderton Patricia. | ENDERTON |
| SEVEN | 3/30/2021 | Submission of application for $20,833 PPP loan in the name of Miguel A. Barajas. | THOLA, BARAJAS |
| EIGHT | 4/2/2021 | Submission of application for $20,833 PPP loan in the name of Ana Maria Arriagada. | THOLA, ARRIAGADA |
| NINE | 4/9/2021 | Submission of application for $20,833 PPP loan in the name of Ana Maria Arriagada. | THOLA, ARRIAGADA |
| TEN | 4/15/2021 | Submission of application for $20,833 PPP loan in the name of Miguel A. Barajas. | THOLA, BARAJAS |

COUNT ELEVEN

[18 U.S.C. § 1956(h)]

[DEFENDANTS THOLA, ARRIAGADA, JOHN THOLA, ENDERTON, BARAJAS, TRIEBEL]

48.  The Grand Jury re-alleges and incorporates Paragraphs 1 through 15, 18 through 19, 23, 27, 29 through 40, and 42 through 43 of this Indictment here.

A.  OBJECT OF THE CONSPIRACY

49.  Beginning no later than in or around January 2018 and continuing through July 25, 2024, in Los Angeles and Ventura Counties, within the Central District of California, and elsewhere, defendants JUAN CARLOS THOLA-DURAN, also known as ("aka") "Parcero" ("THOLA"), ANA MARIA ARRIAGADA, aka "Parcera," aka "Anna," JOHN CARLO THOLA ("JOHN THOLA"), PATRICIA ENDERTON, aka "Patty," MIGUEL ANGEL BARAJAS, and FEDERICO JORGE TRIEBEL IV knowingly conspired with one another and others known and unknown to the Grand Jury to commit an offense against the United States, namely, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to commit wire fraud and wire fraud, in violation of Title 18, United States Code, Sections 1349 and 1343, and conspiracy to commit interstate receipt and transportation of stolen property and interstate receipt and transportation of stolen property, in violation of Title 18, United States Code, Sections 371, 2314, and 2315, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and, while conducting and attempting to conduct such financial transactions, knowing that the

54

property involved in the financial transactions represented the

proceeds of some form of unlawful activity, in violation of Title 18,

United States Code, Section 1956(a)(1)(B)(i).

B.   MANNER AND MEANS OF THE CONSPIRACY

     50.   The object of the conspiracy was to be accomplished, in

substance, in the manner and means set forth in Paragraph 18 of Count

One of this Indictment, which are re-alleged and incorporated here,

in addition to the following:

          a.   Defendants THOLA, ARRIAGADA, JOHN THOLA, ENDERTON, and

BARAJAS, and other co-conspirators would obtain gift cards and

electronics that were either stolen and transported in interstate

commerce or fraudulently purchased with stolen credit or debit cards

to sell, or "fence," to buyers, in exchange for money, including an

individual ("Fence 1"), an electronics business located in Van Nuys,

California ("Fence 2"), whose owners, Co-conspirator 25 and Co-

conspirator 26, would purchase electronics and gift cards on behalf

of Fence 2; and an individual who operated an electronics repair shop

in Pacoima, California ("Fence 3").

          b.   Defendant THOLA would either meet in person with thief

co-conspirators and fences to buy and sell electronics, gift cards,

and other stolen or fraudulently-obtained items, or he would direct

defendant JOHN THOLA and other co-conspirators to conduct the

meetings on his behalf.

          c.   Defendants THOLA, ARRIAGADA, JOHN THOLA, ENDERTON,

BARAJAS, and TRIEBEL, and others known and unknown to the Grand Jury,

would cause bank accounts to be opened under their own names and

names of entities they controlled to be used as funnel accounts, that

is, bank accounts into which they would deposit and withdraw proceeds

1  derived from conspiracy, wire fraud, and interstate receipt and

2  transportation of stolen goods so as to conceal and disguise the

3  nature, location, source, ownership, and control of the proceeds.

4         d.    Defendants THOLA, ARRIAGADA, JOHN THOLA, ENDERTON,

5  BARAJAS, and TRIEBEL, and others known and unknown to the Grand Jury,

6  would open bank accounts that received wire transfers as payment in

7  exchange for the fenced stolen or fraudulently obtained gift cards,

8  electronics, and other goods.

9         e.    During the course of the conspiracy, defendant THOLA,

10  and others known and unknown received at least $379,430 from Fence 1

11  in exchange for stolen items.

12         f.    During the course of the conspiracy, defendants THOLA,

13  ARRIAGADA, BARAJAS, ENDERTON, JOHN THOLA, and TRIEBEL, and others

14  known and unknown received at least $5,100,000 from Fence 2 in

15  exchange for stolen items and gift cards.

16         g.    During the course of the conspiracy, defendant THOLA,

17  and others known and unknown, received at least $1,100 from Fence 3

18  in exchange for stolen items.

19         h.    Between December 2018 and July 18, 2024, Fence 2 would

20  pay approximately $5,100,000 to defendants THOLA, ARRIAGADA, BARAJAS,

21  ENDERTON, JOHN THOLA, and TRIEBEL in exchange for the gift cards and

22  electronics sold to Fence 2 by defendant THOLA and other co-

23  conspirators.  Defendants THOLA, ARRIAGADA, JOHN THOLA, ENDERTON,

24  BARAJAS, and TRIEBEL, and other co-conspirators would keep some of

25  the gift cards that had been purchased with victims' stolen credit

26  cards for their own personal use.

27

28

1        i.    Defendants THOLA and ARRIAGADA would use gift cards to

2   pay for the purchase, maintenance, and improvement of assets,

3   including real property and horses.

4        j.    The co-conspirators would use the proceeds from the

5   unlawful activity including, but not limited to, fraudulently-

6   obtained gift cards and the proceeds of their sales of stolen or

7   fraudulently-obtained goods to other fences, to finance the purchase,

8   investment, and improvement of properties, including the following

9   properties:

10              i.    7423 Owensmouth Avenue in Canoga Park, California

11  (the "Owensmouth property");

12              ii.   The Sand Canyon residence;

13              iii. 16235 Valley Ranch Road in Santa Clarita,

14  California (the "Valley Ranch property"); and

15              iv.   16161 Sky Ranch Road in Santa Clarita, California

16  (the "Sky Ranch property").

17       k.    Defendants THOLA, ARRIAGADA, and ENDERTON would pay

18  unindicted co-conspirators to conduct straw purchases of properties

19  on behalf of defendants THOLA and ARRIAGADA, including the Owensmouth

20  property, the Sand Canyon residence, the Valley Ranch property, and

21  the Sky Ranch property.

22  C.    OVERT ACTS

23       51.   On or about the following dates, in furtherance of the

24  conspiracy and to accomplish the object of the conspiracy, defendants

25  THOLA, ARRIAGADA, JOHN THOLA, ENDERTON, BARAJAS, and TRIEBEL, and

26  others known and unknown to the Grand Jury, committed various overt

27  acts within the Central District of California, and elsewhere,

28  including, but not limited to, the following:

57

1    <u>Overt Act Nos. 1 Through 147:</u>  The Grand Jury re-alleges and

2   incorporates Overt Acts 1 through 64 of Count One, Overt Acts 65

3   through 83 of Count Four, and Overt Acts 84 through 147 of Count Five

4   of this Indictment here.

5    <u>Overt Act No. 148:</u>  On December 12, 2018, defendant ARRIAGADA

6   received a wire payment of approximately $20,000 on behalf of Fence 2

7   from Co-conspirator 26's bank account ("Co-conspirator 26's bank

8   account") into her DPR Chase account, and she withdrew $9,800 in

9   cash.

10    <u>Overt Act No. 149:</u>  On December 12, 2018, defendant ARRIAGADA

11   received a wire payment of approximately $20,000 on behalf of Fence 2

12   from Co-conspirator 26's bank account into her DPR Wells Fargo

13   account.

14    <u>Overt Act No. 150:</u>  On December 13, 2018, defendant ARRIAGADA

15   withdrew $9,800 from her DPR Chase account.

16    <u>Overt Act No. 151:</u>  On December 17, 2018, and December 24, 2018,

17   defendant ARRIAGADA received two separate wire payments of

18   approximately $25,000 on behalf of Fence 2 from Co-conspirator 26's

19   bank account into her DPR Chase account, and she withdrew $9,000 in

20   cash on December 17, 2018.

21    <u>Overt Act No. 152:</u>  On December 21, 2018, and December 24, 2018,

22   defendant ARRIAGADA received wire payments of approximately $20,000

23   and $25,000, respectively, on behalf of Fence 2 from Co-conspirator

24   26's bank account into her DPR Wells Fargo account, and she withdrew

25   $3,000 and $9,900 in cash on December 24, 2018.

26    <u>Overt Act No. 153:</u>  On December 25, 2018, and December 26, 2018,

27   defendant ARRIAGADA wrote several checks drawn on her DPR Wells Fargo

28

1  account, namely, a $3,821 check to Co-conspirator 27, and two checks
2  for $4,400 and $8,000 to one of defendant THOLA's sons.

3      Overt Act No. 154:  On December 26, 2018, defendant ARRIAGADA
4  received a wire payment of approximately $15,000 on behalf of Fence 2
5  from Co-conspirator 26's bank account into her DPR Wells Fargo
6  account and wrote a $7,600 check to one of defendant THOLA's
7  daughters with the memo line "compra Mercedes."

8      Overt Act No. 155:  On January 8, 2019, defendant ARRIAGADA
9  wrote a check drawn from her DPR Wells Fargo account to one of
10  defendant THOLA's daughters in the approximate amount of $3,000 with
11  the memo line "2008 BMW," and a $9,000 check to defendant BARAJAS,
12  with memo line "compra de carro 2015 Hunday."

13      Overt Act No. 156:  On August 16, 2019, defendant ARRIAGADA
14  wrote a $9,900 cashier's check from an unidentified account to Co-
15  conspirator 22 with memo line "to buy property" in Spanish.

16      Overt Act No. 157:  On October 1, 2019, defendant ARRIAGADA
17  wrote a $4,000 check drawn from her DPR Chase account to Green
18  Movement Builders, Co-conspirator 2's business, with a memo line to
19  "7423 Owensmouth," referring to the Owensmouth property.

20      Overt Act No. 158:  On January 23, 2020, Co-conspirator 2
21  purchased in his own name the Owensmouth property for approximately
22  $560,000, and signed a quit claim for the property to his business
23  "Lighthouse of Happiness LLC," on February 13, 2020.

24      Overt Act No. 159:  On August 22, 2020, defendant ARRIAGADA
25  wrote Co-conspirator 22 a $6,000 check from her Wells Fargo personal
26  account ending in 2542 with memo line "6235 Valley Ranch" for the
27  purchase of the Valley Ranch property.

28

1    <u>Overt Act No. 160:</u>  On September 19, 2020, using coded language

2  over WhatsApp, defendant THOLA agreed to buy Apple AirPod Pro devices

3  from thief Co-conspirator 28 for 70 percent of their retail value.

4    <u>Overt Act No. 161:</u>  On October 15, 2020, Co-conspirator 22's

5  business Seva Ventures purchased the Valley Ranch property for

6  $540,000.

7    <u>Overt Act No. 162:</u>  On October 23, 2020, using coded language

8  over WhatsApp messages, Co-conspirator 22 asked why defendant THOLA's

9  payment to him of "more than $209,000" was paid in multiple checks of

10  "less than $10,000," and defendant THOLA responded that writing

11  checks in larger amounts required him to "fill out a form, and I

12  don't want that, friend."

13    <u>Overt Act No. 163:</u>  On October 23, 2020, Co-conspirator 22 sent

14  a wire transfer in the amount of $134,720 from his Wells Fargo

15  account ending in 5649 to Fidelity National Title Company for the

16  purchase of the Valley Ranch property.

17    <u>Overt Act No. 164:</u>  On December 7, 2020, using coded language

18  over WhatsApp, defendant ARRIAGADA asked defendant THOLA for gift

19  cards to buy dog food and other items.

20    <u>Overt Act No. 165:</u>  On December 11, 2020, using coded language

21  over WhatsApp, defendant THOLA agreed to purchase iPhones, Apple

22  Watches, iPads, and MacBooks from thief Co-conspirator 28 in exchange

23  for cash and a $3,000 diamond necklace.

24    <u>Overt Act No. 166:</u>  On December 17, 2020, using coded language

25  in a WhatsApp chat with defendant THOLA, Fence 3 said newer security

26  features prevented him from wiping a used computer that defendant

27  THOLA hoped to sell.

28

Overt Act No. 167:  On December 19, 2020, using coded language in a WhatsApp voice message, defendant ARRIAGADA warned defendant THOLA not to send unencrypted text messages and calls, noting that police had managed to obtain Co-conspirator 6's contacts.

Overt Act No. 168:  On January 1, 2021, defendant ARRIAGADA wrote Co-conspirator 22 a $4,150 check from the ARRIAGADA/Co-conspirator 1 joint account with the memo line "*compra* 16235 Valley Ranch," referring to the purchase of the Valley Ranch property.

Overt Act No. 169:  On January 5, 2021, using coded language over WhatsApp, defendant THOLA sold a camera to Fence 3 for $1,100.

Overt Act No. 170:   On January 7, 2021, defendant THOLA directed Co-conspirator 18 to pick up $1,100 in cash from Fence 3 as payment for a camera, as well as to give Fence 3 a cell phone to unlock.

Overt Act No. 171:  Between January 7, 2021, and February 17, 2021, defendant THOLA paid Co-conspirator 2 via gift cards, Zelle, money orders, and cash, approximately $86,971, to finance at least $190,000 in improvements, as well as payments for the Owensmouth property, and these payments were discussed and confirmed using coded language in WhatsApp chats.

Overt Act No. 172:  On February 3, 2021, over WhatsApp, defendant THOLA directed Co-conspirator 18 to call Co-conspirator 25.

Overt Act No. 173:  On January 15, 2021, using coded language over WhatsApp, Fence 3 advised defendant THOLA how much to pay a thief co-conspirator for cameras.

Overt Act No. 174:  On January 31, 2021, using coded language over WhatsApp, defendant THOLA agreed to send $5,000 to individuals in Chile.

1    Overt Act No. 175:  On January 24, 2021, using coded language
2    over WhatsApp, defendant THOLA instructed Co-conspirator 18 to meet
3    with a thief co-conspirator at a gas station on Sherman Way and
4    Balboa Boulevard in Van Nuys, California and pay $3,770 for Visa gift
5    cards worth $4,900.

6    Overt Act No. 176:  On January 13, 2021, using coded language in
7    WhatsApp messages with defendant THOLA, a co-conspirator located in
8    Colombia confirmed she had wired $1,530,000 Colombian pesos to
9    defendant THOLA for stolen iPhones sold on his behalf.

10    Overt Act No. 177:  On January 31, 2021, using coded language
11    over WhatsApp, defendant THOLA instructed Co-conspirator 18 to send
12    $992 over Western Union to an individual in Chile.

13    Overt Act No. 178:  On January 31, 2021, using coded language
14    over WhatsApp, Co-conspirator 18 said he would pay thief co-
15    conspirators for Visa gift cards with the "stack of 20s" that
16    defendant THOLA had provided two days prior to purchase a camera and
17    Visa gift cards from other thief co-conspirators.

18    Overt Act No. 179:  On February 1, 2021, defendant ARRIAGADA
19    wrote Co-conspirator 22 a $4,150 check from the ARRIAGADA/YUDINE
20    joint account as payment for the Valley Ranch property.

21    Overt Act No. 180:  On February 13, 2021, over WhatsApp,
22    defendant THOLA sent defendant ARRIAGADA photos of two Visa gift
23    cards with the instruction: "Spend them."

24    Overt Act No. 181:  On February 14, 2021, using coded language
25    over WhatsApp, defendant THOLA arranged to purchase $10,000 in gift
26    cards at 77 percent, or $7,777, from thief Co-conspirator 29 at a
27    Shell gas station on Sand Canyon Road off the 14 Freeway in Santa
28    Clarita, California.

1   Overt Act No. 182:  On February 16, 2021, using coded language

2   over WhatsApp, defendant THOLA instructed Co-conspirator 18 to

3   deliver gift cards from defendant ARRIAGADA to a buyer in exchange

4   for $20,000.

5   Overt Act No. 183:  On March 25, 2021, Co-conspirator 1 opened

6   her Logix account, for which she was the sole authorized account

7   user.

8   Overt Act No. 184:  On May 3, 2021, defendant ARRIAGADA opened

9   the DPR Bank of the West business account, for which she was the sole

10  authorized account user.

11  Overt Act No. 185:  On May 5, 2021, defendant JOHN THOLA opened

12  his Wells Fargo personal account.

13  Overt Act No. 186:  On May 5, 2021, over WhatsApp messages,

14  defendant THOLA agreed to send $1,747 for defendant TRIEBEL to pay

15  Co-conspirator 22 for the Sand Canyon residence on defendant THOLA's

16  behalf, which defendant TRIEBEL sent to Co-conspirator 22 the

17  following day.

18  Overt Act No. 187:  On July 7, 2021, defendant ARRIAGADA wrote a

19  $9,000 check from her DPR Bank of the West account to co-conspirator

20  22 with memo line "mortgages casas."

21  Overt Act No. 188:  On September 3, 2021, defendant TRIEBEL

22  wrote Co-conspirator 22 a $13,555 check with memo line "Thola

23  mortgages."

24  Overt Act No. 189:  On September 13, 2021, defendant ARRIAGADA

25  wrote Co-conspirator 22's business Seva Ventures a $9,998.99

26  cashier's check from her Bank of Hope account.

27  Overt Act No. 190:  On September 14, 2021, defendant ARRIAGADA

28  wrote Co-conspirator 22's business Seva Ventures a $9,987.89

cashier's check from her DPR Bank of the West account with memo line "27332," referencing the Sand Canyon property.

Overt Act No. 191:  On December 7, 2021, defendant TRIEBEL opened the MUFG Union bank account as the sole authorized account user.

Overt Act No. 192:  On December 10, 2021, defendant ARRIAGADA received a wire payment of approximately $120,000 from Fence 2's Cathay Bank account ending in 3950 ("Fence 2's bank account") into her DPR Bank of the West account.

Overt Act No. 193:  On December 14, 2021, defendant ARRIAGADA sent a wire payment of $100,000 from her DPR Bank of the West account to defendant TRIEBEL's Bank of America personal account.

Overt Act No. 194:  On January 26, 2022, over WhatsApp, defendant THOLA directed defendant JOHN THOLA to meet with one of Fence 2's owners, Co-conspirator 25.

Overt Act No. 195:  On February 3, 2022, defendant ARRIAGADA oversaw the delivery of stolen or fraudulently purchased merchandise from thief co-conspirators as they returned a white Land Rover to DPR's car lot located on Sherman Way in Van Nuys, California.

Overt Act No. 196:  On February 7, 2022, using coded language over WhatsApp, Fence 1 asked to buy electronics from defendant THOLA, reminding him that Fence 1 had not betrayed him to law enforcement.

Overt Act No. 197:  On February 11, 2022, defendant ARRIAGADA oversaw the unloading of stolen or fraudulently purchased merchandise from the trunk of her silver Infiniti SUV parked in DPR's car lot located on Sherman Way in Van Nuys.

Overt Act No. 198:  On February 23, 2022, defendant THOLA received a wire payment of approximately $20,000 from Fence 2's bank account into his LRM Chase account.

Overt Act No. 199:  On February 27, 2022, using coded language in a WhatsApp chat with Fence 1, defendant THOLA offered to sell iPads for 75 percent of retail value, iPhones for 95 percent, and MacBooks for 83 percent.

Overt Act No. 200:  On March 2, 2022, defendant THOLA received a wire payment of approximately $30,000 from Fence 2's bank account into his LRM Chase account.

Overt Act No. 201:  On March 6, 2022, defendant THOLA sold six iPhones and three MacBooks to Fence 1 for $14,110.

Overt Act No. 202:  On March 7, 2022, defendant THOLA received a wire payment of approximately $20,000 from Fence 2's bank account into his LRM Chase account, and he wrote a $10,500 cashier's check to "Federico Triebel."

Overt Act No. 203:  On March 9, 2022, defendant THOLA received a wire payment of approximately $30,000 from Fence 2's bank account into his LRM Chase account, and he obtained a $20,627 cashier's check written to "Federico Triebel."

Overt Act No. 204:  On March 10, 2022, defendant THOLA used money from his LRM Chase account to write a $2,499 check to Co-conspirator 1, which she deposited on March 18, 2022.

Overt Act No. 205:  On March 11, 2022, defendant THOLA used money from his LRM Chase account to send a $1,000 Zelle payment to co-conspirator 2.

Overt Act No. 206:  On March 17, 2022, defendant THOLA received a wire payment of approximately $80,000 from Fence 2's bank account

into his LRM Chase account, and he withdrew $9,000 in cash, obtained a $7,500 cashier's check written to defendant ARRIAGADA, and wrote a $2,499 check to Co-conspirator 1.

Overt Act No. 207:  On March 18, 2022, defendant THOLA used his LRM Chase account to write a $4,000 check to "Driver Power Rental" and a $4,995 check to defendant ARRIAGADA, to send a $2,000 Zelle payment to Co-conspirator 2, and to make two separate cash withdrawals of $9,200 and $8,800, respectively.

Overt Act No. 208:  On March 20, 2022, defendant THOLA sold eleven iPhones and two MacBooks to Fence 1 for $17,920.

Overt Act No. 209:  On March 22, 2022, defendant THOLA received a wire payment of approximately $67,220 from Fence 2's bank account into his LRM JP Morgan Chase account.

Overt Act No. 210:  On March 23, 2022, defendant THOLA used his LRM Chase account to write a $12,000 check to Co-conspirator 23's 6/7 Wholesale Cars account and a $9,700 cashier's check to "Federico Triebel," and to withdraw $9,550 in cash.

Overt Act No. 211:  On March 24, 2022, defendant THOLA used his LRM Chase account to withdraw $9,300 in cash and to write a $10,000 check to "Federico Triebel."

Overt Act No. 212:  On March 27, 2022, defendant THOLA sold four MacBooks and twelve iPhones to Fence 1 for $20,640.

Overt Act No. 213:  On March 29, 2022, defendant THOLA received a wire payment of approximately $50,220 from Fence 2's bank account into his LRM Chase account.

Overt Act No. 214:  On March 30, 2022, defendant THOLA used his LRM JP Morgan Chase account to write a $9,700 check to defendant ENDERTON and to withdraw $9,400 in cash.

1    Overt Act No. 215:  On April 2, 2022, defendant THOLA sold two

2  MacBooks and eleven iPhones to Fence 1 for $16,100.

3    Overt Act No. 216:  On April 13, 2022, using coded language in a

4  WhatsApp chat with Fence 1, defendant THOLA said he had a buyer who

5  was buying all of defendant THOLA's available electronics, so he had

6  nothing left to sell that day.

7    Overt Act No. 217:  On May 16, 2022, defendant THOLA sold four

8  iPads, and 27 iPhones to Fence 1 for $32,340.

9    Overt Act No. 218:  On August 4, 2022, defendant JOHN THOLA

10  wired $200,000 from his Wells Fargo personal account to defendant

11  TRIEBEL.

12    Overt Act No. 219:  On September 1, 2022, defendant THOLA

13  delivered goods in a Best Buy bag to Fence 2's business location.

 

22    Overt Act No. 220:  On October 3, 2022, defendant THOLA received

23  a wire payment of approximately $20,000 from Fence 2's bank account

24  into his LRM Chase account.

25    Overt Act No. 221:  On October 4, 2022, defendant THOLA received

26  a wire payment of approximately $30,000 from Fence 2's bank account

27  into his LRM Chase account, and he withdrew $9,600 and wrote an

28

$8,000 check to defendant ARRIAGADA and a $7,000 check to defendant JOHN THOLA.

Overt Act No. 222:   On October 6, 2022, defendant THOLA received a wire payment of approximately $30,000 from Fence 2's bank account into his LRM Chase account, and he wrote a $26,105 check to Eblock, the parent company of ABS Auto Auction.

Overt Act No. 223:   On October 7, 2022, defendant THOLA received a wire payment of approximately $40,000 from Fence 2's bank account into his LRM Chase account, and he deposited two fraudulent checks made out to defendant BARAJAS from "Majhil Husero" for $19,700 and $19,850, respectively, and a $4,500 check from defendant ARRIAGADA's "Driver Power Rentals, LLC" Bank of Hope account ending in 7163 (the "DPR Bank of Hope account") with the memo line "Rent 2010 Prius."

Overt Act No. 224:   On October 7, 2022, defendant THOLA used his LRM Chase account to make two structured cash withdrawals of $9,500 and $9,800 and to write a $9,200 cashier's check to defendant ARRIAGADA and a $9,550 cashier's check to defendant BARAJAS.

Overt Act No. 225:   On October 12, 2022, defendant BARAJAS received a wire payment of approximately $30,000 from Fence 2's bank account into his Wells Fargo business account.

Overt Act No. 226:   On October 13, 2022, defendant BARAJAS received a wire payment of approximately $30,000 from Fence 2's bank account into his Wells Fargo business account, wrote a $9,900 cashier's check to defendant THOLA and a $9,800 cashier's check to Co-conspirator 6, and withdrew $9,950 in cash.

Overt Act No. 227:   On October 14, 2022, defendant BARAJAS received a wire payment of approximately $30,000 from Fence 2's bank

account into his Wells Fargo business account and wrote a $7,191 check to "LACTC," and a $32,671 check to Eblock.

Overt Act No. 228:  On October 18, 2022, defendant JOHN THOLA received a wire payment of approximately $30,000 from Fence 2's bank account into his Wells Fargo personal account.

Overt Act No. 229:  On October 21, 2022, defendant BARAJAS received a wire payment of approximately $20,000 from Fence 2's bank account into his Wells Fargo business account, and he wrote a $20,000 cashier's check to "Federico Triebel."

Overt Act No. 230:  On November 1, 2022, defendant ARRIAGADA wrote a $20,000 check from her DPR Bank of Hope account to Co-conspirator 22's business Seva Ventures.

Overt Act No. 231:  On November 1, 2022, defendant TRIEBEL sent a wire payment of $100,000 from his Bank of America personal account to defendant JOHN THOLA's Wells Fargo personal account with memo line "Refund for deposit of property purchase."

Overt Act No. 232:  On or before November 15, 2022, using coded language over WhatsApp, Co-conspirator 25 agreed on behalf of Fence 2 to purchase an item from defendant THOLA for "190."

Overt Act No. 233:  On or before November 17, 2022, using coded language over WhatsApp, Co-conspirator 25 agreed on behalf of Fence 2 to purchase a Nintendo Switch from defendant THOLA for $230.

Overt Act No. 234:  Between November 4, 2022, and November 29, 2022, defendant JOHN THOLA received seven wire payments, totaling $168,000, from Fence 2's bank account into his Wells Fargo personal account.

1    Overt Act No. 235:  On November 23, 2022, defendant JOHN THOLA
2    used his Wells Fargo personal account to send a wire payment of
3    $200,000 to Co-conspirator 22.

4    Overt Act No. 236:  On November 28, 2022, Co-conspirator 22's
5    business Seva Ventures purchased the Sand Canyon residence for
6    approximately $625,000.

7    Overt Act No. 237:  On or before November 28, 2022, using coded
8    language over WhatsApp, Co-conspirator 25, on behalf of Fence 2,
9    agreed to buy stolen electronics from defendant THOLA for $170,000.

10   Overt Act No. 238:  On or before November 29, 2022, using coded
11   language over WhatsApp, Co-conspirator 25 agreed on behalf of Fence 2
12   to purchase stolen electronics from defendant THOLA for $95,488 and
13   directed defendant THOLA to purchase the items.

14   Overt Act No. 239:  On December 19, 2022, defendant JOHN THOLA
15   opened his CDM Wells Fargo account.

16   Overt Act No. 240:  Between December 23, 2022, and January 5,
17   2023, defendant JOHN THOLA received three wire payments totaling
18   approximately $73,000 from Fence 2's bank account into his Wells
19   Fargo personal account.

20   Overt Act No. 241:  On or before January 8, 2023, using coded
21   language over WhatsApp with Co-conspirator 25, defendant THOLA
22   offered to sell Fence 2 24 Dell laptops that each retailed for
23   $1,415.

24   Overt Act No. 242:  On January 9, 2023, defendant JOHN THOLA
25   transferred $60,000 from his Wells Fargo personal account to his CDM
26   Wells Fargo business account, leaving approximately one dollar
27   remaining in his Wells Fargo personal account.

28

1    Overt Act No. 243:  On January 18, 2023, defendant JOHN THOLA
2  straw purchased the Valley Ranch property from Co-conspirator 22's
3  business Seva Ventures through a grant deed for approximately
4  $540,000 on behalf of defendant THOLA.

5    Overt Act No. 244:  On January 19, 2023, defendant BARAJAS
6  received a wire payment of approximately $20,000 from Fence 2's bank
7  account into his Wells Fargo business account.

8    Overt Act No. 245:  On January 20, 2023, defendant JOHN THOLA
9  received a wire payment of $11,000 from Fence 2 into his Car Deals
10  and More Wells Fargo account, and he wrote a $11,308 check to Co-
11  conspirator 22 as payment for the Valley Ranch property.

12    Overt Act No. 246:  On January 20, 2023, defendant BARAJAS
13  received a wire payment of approximately $20,000 from Fence 2's bank
14  account into his Wells Fargo business account, and he withdrew $9,700
15  in cash and wrote a $9,760 check to defendant ARRIAGADA.

16    Overt Act No. 247:  On January 23, 2023, defendant BARAJAS
17  received a wire payment of approximately $50,000 from Fence 2's bank
18  account into his Wells Fargo business account, and he made separate
19  cash withdrawals from different ATMs in increments of $500, $600,
20  $9,760, and $9,800, for a total of $29,920.

21    Overt Act No. 248:  On January 24, 2023, defendant BARAJAS used
22  the money in his Wells Fargo business account to write a $9,670
23  cashier's check to defendant ARRIAGADA and to withdraw $9,800 in
24  cash.

25    Overt Act No. 249:  On January 25, 2023, and January 27, 2023,
26  defendant BARAJAS received a wire payment of approximately $30,000
27  and a wire payment of approximately $50,000, respectively, from Fence
28  2's bank account into his Wells Fargo business account.

Overt Act No. 250:  On January 27, 2023, defendant TRIEBEL received a wire payment of approximately $30,000 from Fence 2's bank account into his MUFG Union bank account, and he withdrew $9,000 in cash.

Overt Act No. 251:  On January 28, 2023, defendant BARAJAS used the money in his Wells Fargo business account to write a $9,750 check to defendant ARRIAGADA, and to withdraw $9,800 in cash.

Overt Act No. 252:  On January 30, 2023, defendant BARAJAS used the money in his Wells Fargo business account to write a $9,500 check to defendant ENDERTON, and to withdraw $9,700 in cash.

Overt Act No. 253:  On January 30, 2023, defendant TRIEBEL received a wire payment of approximately $45,000 from Fence 2's bank account into his MUFG Union bank account, withdrew $9,500 in cash, and wrote a $9,500 cashier's check to one of defendant THOLA's daughters, an $8,900 cashier's check to defendant JOHN THOLA, and a $9,400 cashier's check to defendant ENDERTON.

Overt Act No. 254:  On February 1, 2023, defendant TRIEBEL deposited a $4,910 check from Fence 2 into his MUFG Union bank account.

Overt Act No. 255:  On February 2, 2023, defendant TRIEBEL used his MUFG Union bank account to withdraw $3,500 in cash and wrote a $6,500 cashier's check to "Federico Triebel."

Overt Act No. 256:  On February 6, 2023, defendant BARAJAS received a wire payment of approximately $60,000 from Fence 2's bank account into his Wells Fargo business account, from which he wrote a $8,490 check to Co-conspirator 30 the following day.

Overt Act No. 257:  On February 6, 2023, defendant TRIEBEL received a wire payment of approximately $45,000 from Fence 2's bank

account into his MUFG Union bank account, from which he withdrew $5,000 in cash and wrote a $4,700 cashier's check to defendant JOHN THOLA the following day.

Overt Act No. 258:  On February 8, 2023, defendant BARAJAS received a wire payment of approximately $50,000 from Fence 2's bank account into his Wells Fargo business account, and he wrote a $15,000 check to "Federico Triebel."

Overt Act No. 259:  On February 9, 2023, defendant BARAJAS deposited a fraudulent cashier's check from "Husary Damed," for $18,239, then deposited two more checks, namely, a $9,700 check from "Organic Green Investments Dominion," defendant TRIEBEL's business, and a $7,050 check from Fence 2's bank account, into his Wells Fargo business account.  Two hours later, he deposited another fraudulent cashier's check from "Husary Damed," this one for $19,789, into his Wells Fargo business account, as well as an $8,500 check from defendant ARRIAGADA's DPR Bank of Hope account, and an $8,700 check from defendant THOLA.

Overt Act No. 260:  On February 9, 2023, using money in his Wells Fargo business account, defendant BARAJAS withdrew $9,850 in cash and wrote a $5,000 cashier's check to defendant ARRIAGADA.

Overt Act No. 261:  On February 21, 2023, defendant TRIEBEL received a wire payment of approximately $40,000 from Fence 2's bank account into his MUFG Union bank account and withdrew $9,000 in cash from that account the following day.

Overt Act No. 262:  On April 19, 2023, defendant ARRIAGADA opened the DPR US Bank business account as the sole authorized account user.

1        <u>Overt Act No. 263:</u>  On April 20, 2023, defendant JOHN THOLA

2    received a wire payment of approximately $50,000 from Fence 2's bank

3    account into his CDM Wells Fargo account, from which he withdrew

4    $22,749 the following day.

5        <u>Overt Act No. 264:</u>  On April 24, 2023, defendant JOHN THOLA used

6    money in his CDM Wells Fargo account to make four separate cash

7    withdrawals from an ATM in North Hollywood, California for $2,000,

8    $2,000, $5,000, and $5,000, as well as a $163 withdrawal from a

9    second ATM in North Hills, California.

10       <u>Overt Act No. 265:</u>  On May 1, 2023, Co-conspirator 2 submitted

11   business registration records with the State of California listing

12   defendant TRIEBEL and Co-conspirator 1 as managers and/or members of

13   the Lighthouse of Happiness business, which owned the Owensmouth

14   property.

15       <u>Overt Act No. 266:</u>  On May 26, 2023, defendant JOHN THOLA

16   received a wire payment of approximately $50,000 from Fence 2's bank

17   account into his CDM Wells Fargo account, from which he wrote a

18   $7,000 check check to "Federico Triebel" and transferred $1,500 to

19   his Wells Fargo personal account on May 30, 2023.

20       <u>Overt Act No. 267:</u>  On May 31, 2023, defendant JOHN THOLA used

21   money in his CDM Wells Fargo account to write a $12,772 check to Co-

22   conspirator 18 with memo line "used car."

23       <u>Overt Act No. 268:</u>  On June 9, 2023, defendant JOHN THOLA

24   received a wire payment of approximately $20,000 from Fence 2's bank

25   account into his CDM Wells Fargo account.

26       <u>Overt Act No. 269:</u>  On June 9, 2023, defendant ENDERTON received

27   a wire payment of approximately $30,000 from Fence 2's bank account

28   into her MoreLuxe4Less account.

1    <u>Overt Act No. 270:</u>  On June 12, 2023, Co-conspirator 1 received
2  a wire payment of approximately $15,000 from Fence 2's bank account
3  into her Logix personal account, as well as a $35,000 wire payment
4  from defendant ARRIAGADA's DPR US Bank account.

5    <u>Overt Act No. 271:</u>  On June 13, 2023, Co-conspirator 1 used
6  money in her Logix personal account to send a wire transfer of
7  $57,000 to Commerce Escrow, a division of Pacific Premier Bank, as
8  payment for the Sky Ranch property.

9    <u>Overt Act No. 272:</u>  On June 14, 2023, defendant JOHN THOLA
10  received a wire payment of approximately $15,000 from Fence 2's bank
11  account into his CDM Wells Fargo account, and he wrote a $5,000 check
12  to "Federico Triebel" with memo line "VR," referring to the purchase
13  of the Valley Ranch property.

14    <u>Overt Act No. 273:</u>  On June 20, 2023, defendant ENDERTON
15  received a wire payment of approximately $30,000 from Fence 2's bank
16  account into her MoreLuxe4Less Chase account, and she wrote a
17  cashier's check for $80,300 to "MK Investment Services."

18    <u>Overt Act No. 274:</u>  On July 14, 2023, and July 17, 2023, Co-
19  conspirator 1 received two wire payments of approximately $40,000
20  each from Fence 2's bank account into her Logix personal account.

21    <u>Overt Act No. 275:</u>  On July 24, 2023, defendant JOHN THOLA and
22  Co-conspirator 1 purchased the Sky Ranch property for approximately
23  $1,900,000.

24    <u>Overt Act No. 276:</u>  On August 1, 2023, Co-conspirator 1 received
25  a wire payment of approximately $20,000 from defendant ARRIAGADA's
26  DPR US Bank account with the memo line "loan payment."

27    <u>Overt Act No. 277:</u>  On September 6, 2023, Co-conspirator 1
28  received a wire payment of approximately $50,000 from Fence 2's bank

account into her Logix personal account, which she used to send a wire transfer of $50,000 to Commerce Escrow the following day, as well as a wire transfer of $157,000 to Pacific Premier Bank as payment for the Sky Ranch property.

Overt Act No. 278:  On September 8, 2023, Co-conspirator 1 received a wire payment of approximately $30,000 from Fence 2's bank account into her Logix personal account, and she wired $60,000 from her Logix personal account to Pacific Premier Bank for the Sky Ranch property escrow account on September 11, 2023.

Overt Act No. 279:  On October 27, 2023, defendant JOHN THOLA received a wire payment of approximately $20,000 from Fence 2's bank account into his CDM Wells Fargo account, withdrew $9,500 in cash, and wrote a $5,000 check to "Federico Triebel."

Overt Act No. 280:  On November 10, 2023, defendants THOLA and JOHN THOLA went to a Wells Fargo ATM in Northridge, California where defendant JOHN THOLA deposited five fraudulent checks in his CDM Wells Fargo account that totaled $71,000 under defendant THOLA's supervision, and wrote or caused to have written three checks to "Federico Triebel" for $16,500, $14,500, and $11,000, two with the memo line "Mortgages," a $12,100 check to "Car Deals and More," and three checks for $8,500, $7,800, and $7,000 to other individuals.

///

///

///

///

///

///

///

11/10/2023 deposit Northridge, CA



Overt Act No. 281:  On November 13, 2023, defendant JOHN THOLA used his CDM Wells Fargo account to make two separate cash withdrawals, each for $1,000, and transferred $8,200 to his Wells Fargo personal account.

Overt Act No. 282:  On or before November 28, 2023, using coded language in a WhatsApp chat with defendant THOLA, Co-conspirator 25 disputed the retail value of an unidentified item that defendant THOLA offered to sell Fence 2.  Co-conspirator 25 suggested a fencing rate of 33 percent, or $177,000, for items he claimed had a total retail price of $538,000, and defendant THOLA said he would present the offer to his electronics supplier.

Overt Act No. 283:  On January 11, 2024, defendant ARRIAGADA received a wire payment of approximately $15,000 from Fence 2's bank account into her DPR US Bank account and withdrew $8,500 in cash the following day.

Overt Act No. 284:  On January 16, 2024, defendant ARRIAGADA received a wire payment of approximately $75,000 from Fence 2's bank

account into her DPR US Bank account and wrote a $8,900 check to herself with the memo line "transports salary."

Overt Act No. 285:  On January 17, 2024, defendant ARRIAGADA wrote a check for $4,998 to defendant THOLA with the memo line "*compra* Chevy Tahoe."

Overt Act No. 286:  On January 18, 2024, defendant ARRIAGADA wrote a check for $9,120 to defendant BARAJAS with the memo line "purchase Honda pilot," and two checks to defendant JOHN THOLA for $4,900 and $4,997, both with memo line "transport and towing."

Overt Act No. 287:  On January 30, 2024, defendant ARRIAGADA received a wire payment of approximately $25,000 from Fence 2's bank account into her DPR US Bank account, and she wrote a $4,988 check to defendant JOHN THOLA.

COUNTS TWELVE THROUGH FORTY-TWO

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a), (b)]

[DEFENDANTS THOLA, ARRIAGADA, JOHN THOLA, ENDERTON, BARAJAS, TRIEBEL]

52.    The Grand Jury re-alleges and incorporates Paragraphs 1 through 15, 18 through 19, 23, 29 through 40, and 42 through 43, and 50 through 51 of this Indictment here.

53.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants JUAN CARLOS THOLA-DURAN, also known as "Parcero" ("THOLA"), ANA MARIA ARRIAGADA, aka "Parcera," aka "Anna," JOHN CARLO THOLA ("JOHN THOLA"), PATRICIA ENDERTON, aka "Patty," MIGUEL ANGEL BARAJAS, and FEDERICO JORGE TRIEBEL IV, and others known and unknown to the Grand Jury, each aiding and abetting the others, conducted and willfully caused to be conducted financial transactions affecting interstate and foreign commerce, knowing that the property involved in each financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, namely, conspiracy to commit wire fraud and wire fraud, in violation of Title 18, United States Code, Sections 1349 and 1343, and conspiracy to commit interstate receipt and transportation of stolen property and interstate receipt and transportation of stolen property, in violation of Title 18, United States Code, Sections 371, 2314 and 2315, knowing that each transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds of said specified unlawful activity:

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|-------|------|--------------|----------------------|
| TWELVE | 8/11/2020 | ENDERTON | Wire transfer of $150,000 from Small Business Administration to Wells Fargo bank account ending in 4470 in Los Angeles, California |
| THIRTEEN | 8/27/2020 | ENDERTON, ARRIAGADA | Transfer of $10,000 from Wells Fargo bank account ending in 4470 via check, to unknown account, in Los Angeles, California |
| FOURTEEN | 8/31/2020 | ENDERTON | Transfer for $11,584 from Wells Fargo bank account ending in 4830 to Wells Fargo account ending in 2284 |
| FIFTEEN | 8/31/2020 | ENDERTON | Transfer for $28,416 from Wells Fargo bank account ending in 4830 to Wells Fargo account ending in 6714 |
| SIXTEEN | 4/9/2021 | BARAJAS | Wire transfer of $20,833 from Harvest Small Business Finance to Wells Fargo account ending in 3836 |
| SEVENTEEN | 4/12/2021 | BARAJAS | Cash withdrawal of $1,507 from Wells Fargo account ending in 3836 in Yerevan, Armenia |
| EIGHTEEN | 4/12/2021 | BARAJAS | Cash withdrawal of $1,020 from Wells Fargo account ending in 3836 in Tblisi, Georgia |
| NINETEEN | 4/13/2021 | BARAJAS | Cash withdrawals of $1,836 from ATM in Tblisi, Georgia |
| TWENTY | 5/5/2021 | ARRIAGADA | Wire transfer of $20,833 from Harvest Small Business Finance to JP Morgan Chase account ending in 8773, in Los Angeles, California |
| TWENTY-ONE | 5/20/2021 | ARRIAGADA | Transfer of $4,800 from JP Morgan Chase account |

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|---|---|---|---|
| | | | ending in 8773 to Bank of the West account ending in 2770 via check |
| TWENTY-TWO | 6/25/2021 | THOLA | Wire transfer of $20,833 from Harvest Small Business Finance to JP Morgan Chase account ending in 7012, in Los Angeles, California |
| TWENTY-THREE | 6/25/2021 | THOLA | Transfer of $15,000 from JP Morgan Chase account ending in 7012 to Nicholas Torok via check |
| TWENTY-FOUR | 7/9/2021 | ARRIAGADA | Wire transfer of $20,833 from Harvest Small Business Finance to JP Morgan Chase account ending in 8773 in Los Angeles, California |
| TWENTY-FIVE | 12/10/2021 | ARRIAGADA | Wire transfer of $120,000 from Cathay Bank account ending in 3950 in Los Angeles, California, to Bank of the West account ending in 2770 in Los Angeles, California |
| TWENTY-SIX | 12/14/2021 | ARRIAGADA, TRIEBEL | Wire transfer of $100,000 from Bank of the West account ending in 2770 in Los Angeles, California to Bank of America account ending in 3797 in Los Angeles, California |
| TWENTY-SEVEN | 3/17/2022 | THOLA | Wire transfer of $80,000 from Cathay Bank account ending in 3950 in Los Angeles, California, to JP Morgan Chase account ending in 7012 in Los Angeles, California |
| TWENTY-EIGHT | 3/17/2022 | THOLA, ARRIAGADA | Cashier's check for $7,500 from JP Morgan Chase account ending in 7012 in Los Angeles, California |

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|-------|------|--------------|----------------------|
| TWENTY-NINE | 3/17/2022 | THOLA | Check for $2,499 from JP Morgan Chase account ending in 7012 in Los Angeles, California |
| THIRTY | 3/17/2022 | THOLA | Cash withdrawal of $9,000 from JP Morgan Chase account ending in 7012 Los Angeles, California |
| THIRTY-ONE | 1/23/2023 | BARAJAS | Wire Transfer of $50,000 from Cathay Bank account ending in 3950 in Los Angeles, California, to Wells Fargo account ending in 0429 in Los Angeles, California |
| THIRTY-TWO | 1/23/2023 | BARAJAS | Cash withdrawals of $29,920 from Wells Fargo account ending in 0429 in Los Angeles, California. |
| THIRTY-THREE | 2/6/2023 | TRIEBEL | Wire transfer of $45,000 from Cathay Bank account ending in 3950 in Los Angeles, California, to MUFG Union Bank account ending in 3719, in Los Angeles, California |
| THIRTY-FOUR | 2/7/2023 | TRIEBEL | Cash withdrawal of $5,000 from MUFG Union Bank account ending in 3719, in Los Angeles, California |
| THIRTY-FIVE | 2/7/2023 | TRIEBEL, THOLA | Cashier's check for $4,700 from MUFG Union Bank account ending in 3719, in Los Angeles, California |
| THIRTY-SIX | 5/26/2023 | JOHN THOLA | Wire Transfer of $50,000 from Cathay Bank account ending in 3950 in Los Angeles, California, to Wells Fargo account ending in 5350 in Los Angeles, California. |

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|---|---|---|---|
| THIRTY-SEVEN | 5/30/2023 | JOHN THOLA | Check for $7,000 from Wells Fargo account ending in 5350 in Los Angeles, California |
| THIRTY-EIGHT | 5/31/2023 | JOHN THOLA | Check for $12,772 from Wells Fargo account ending in 5350 in Los Angeles, California. |
| THIRTY-NINE | 6/20/2023 | ENDERTON | Wire transfer of $30,000 from Cathay Bank account ending in 3950 in Los Angeles, California, to Wells Fargo account ending in 9729 in Los Angeles, California |
| FORTY | 6/20/2023 | ENDERTON | Cashier's check for $80,300 from Wells Fargo account ending in 9729 in Los Angeles, California |
| FORTY-ONE | 7/7/2023 | BARAJAS | Purchase of $1,700 in U.S. Postal Money Orders using gift cards ending in 0639, 0643, 3799, and 2939 in Los Angeles, California |
| FORTY-TWO | 7/8/2023 | BARAJAS | Purchase of $2,200 in U.S. Postal Money Orders using gift cards ending in 3804, 4905, 3801, 1458, and 1308 in Los Angeles, California |

COUNT FORTY-THREE

[31 U.S.C. §§ 5324(a)(3), (d)(2); 18 U.S.C. § 2]

[DEFENDANT THOLA]

54.   The Grand Jury re-alleges and incorporates Paragraphs 1 through 15, and 50 through 51 of this Indictment here.

55.   On or about dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant JUAN CARLOS THOLA-DURAN, also known as "Parcero," together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structured, assisted in structuring, and willfully caused to be structured, the following transactions with domestic financial institutions, namely, cash withdrawals from JP Morgan Chase account ending in 7012, and did so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, and while violating another law of the United States, namely, Title 18, United States Code, Sections 371, 1349, 1343, 1956:

| DATE | CASH WITHDRAWAL |
|------|-----------------|
| 3/18/2022 | $9,200 |
| 3/18/2022 | $8,800 |
| 4/4/2022 | $9,750 |
| 4/4/2022 | $9,600 |
| 4/11/2022 | $9,100 |
| 4/11/2022 | $9,450 |
| 5/25/2022 | $9,650 |
| 5/25/2022 | $7,500 |
| 8/5/2022 | $9,400 |
| 8/5/2022 | $5,000 |
| 8/15/2022 | $9,500 |
| 8/15/2022 | $8,700 |
| 8/26/2022 | $5,598 |
| 8/26/2022 | $9,500 |

| DATE | CASH WITHDRAWAL |
|---|---|
| 8/29/2022 | $9,650 |
| 8/29/2022 | $9,500 |
| 9/6/2022 | $9,850 |
| 9/6/2022 | $8,000 |
| 9/8/2022 | $8,750 |
| 9/8/2022 | $8,930 |
| 9/8/2022 | $8,500 |
| 9/8/2022 | $9,200 |
| 9/9/2022 | $9,800 |
| 9/9/2022 | $9,850 |
| 9/9/2022 | $9,550 |
| 9/9/2022 | $9,100 |
| 9/12/2022 | $9,870 |
| 9/12/2022 | $8,700 |
| 9/12/2022 | $9,630 |
| 9/12/2022 | $9,800 |
| 9/12/2022 | $9,750 |
| 9/13/2022 | $8,550 |
| 9/13/2022 | $2,000 |
| 9/13/2022 | $6,895 |
| 9/14/2022 | $9,250 |
| 9/14/2022 | $6,684 |
| 9/14/2022 | $9,870 |
| 9/16/2022 | $9,120 |
| 9/16/2022 | $9,900 |
| 9/19/2022 | $9,500 |
| 9/19/2022 | $8,770 |
| 9/30/2022 | $9,500 |
| 9/30/2022 | $8,875 |
| 10/7/2022 | $9,500 |
| 10/7/2022 | $9,800 |
| 10/11/2022 | $9,800 |
| 10/11/2022 | $5,100 |
| | |

**Total transactions: 47**
**Total amount withdrawn: $412,292**

COUNT FORTY-FOUR

[31 U.S.C. §§ 5324(a)(3), (d)(2); 18 U.S.C. § 2]

[DEFENDANT ARRIAGADA]

56. The Grand Jury re-alleges and incorporates Paragraphs 1 through 15, and 50 through 51 of this Indictment here.

57. On or about dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANA MARIA ARRIAGADA, aka "Parcera," aka "Anna," together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structured, assisted in structuring, and willfully caused to be structured, the following transactions with domestic financial institutions, an did so while violating another law of the United States, namely, Title 18, United States Code, Sections 371, 1349, 1343, 1956:

| DATE | TRANSACTION |
|---|---|
| 8/16/2019 | Cashier's check for $9,900 drawn on JP Morgan Chase account ending in 0387 |
| 7/7/2021 | Check for $9,000 drawn on Bank of the West account ending in 2770 |
| 9/14/2021 | Check for $4,988.89 drawn on Bank of the West account ending in 2770 |
| 1/12/2024 | Cash withdrawal of $8,500 from US Bank account ending in 0572 |
| 1/17/2024 | Check for $8,900 drawn on US Bank account ending in 0572 |
| 1/18/2024 | Check for $4,998 drawn on US Bank account ending in 0572 |
| 1/18/2024 | Checks for $9,120, $4,900, and $4,997 drawn on US Bank account ending in 0572 |
| 1/31/2024 | Check for $4,988 drawn on US Bank account ending in 0572 |

COUNT FORTY-FIVE

[31 U.S.C. §§ 5324(a)(3), (d)(2); 18 U.S.C. § 2]

[DEFENDANT JOHN THOLA]

58.  The Grand Jury re-alleges and incorporates Paragraphs 1 through 15, and 50 through 51 of this Indictment here.

59.  On or about dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant JOHN CARLO THOLA, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structured, assisted in structuring, and willfully caused to be structured, the following transactions with domestic financial institutions, namely, cash withdrawals from Wells Fargo account ending in 5350, and did so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, and while violating another law of the United States, namely, Title 18, United States Code, Sections 371, 1349, 1343, 1956:

| DATE | WITHDRAWALS |
| --- | --- |
| 1/30/2023 | $3,000 |
| 1/30/2023 | $5,000 |
| 1/30/2023 | $5,000 |
| 2/21/2023 | $2,000 |
| 2/21/2023 | $5,000 |
| 2/21/2023 | $5,000 |
| 2/22/2023 | $1,000 |
| 2/22/2023 | $2,000 |
| 2/22/2023 | $5,000 |
| 2/23/2023 | $5,025 |
| 2/23/2023 | $7,000 |
| 3/17/2023 | $1,000 |
| 3/17/2023 | $4,500 |
| 3/17/2023 | $5,000 |
| 3/17/2023 | $4,775 |

| DATE | WITHDRAWALS |
|---|---|
| 4/24/2023 | $2,000 |
| 4/24/2023 | $2,000 |
| 4/24/2023 | $5,000 |
| 4/24/2023 | $5,000 |
| 9/22/2023 | $5,000 |
| 9/22/2023 | $4,000 |
| 9/25/2023 | $5,000 |
| 9/25/2023 | $4,200 |
| 10/10/2023 | $4,000 |
| 10/10/2023 | $5,000 |
| 10/10/2023 | $4,200 |
| 10/10/2023 | $1,000 |
| 10/16/2023 | $5,000 |
| 10/16/2023 | $4,500 |
| 10/16/2023 | $400 |
| 10/17/2023 | $5,000 |
| 10/17/2023 | $4,000 |
| 11/9/2023 | $5,000 |
| 11/9/2023 | $4,000 |

**Total transactions: 34**
**Total amount withdrawn: $134,600**

COUNT FORTY-SIX

[31 U.S.C. §§ 5324(a)(3), (d)(2); 18 U.S.C. § 2]

[DEFENDANT BARAJAS]

60.    The Grand Jury re-alleges and incorporates Paragraphs 1 through 15, and 50 through 51 of this Indictment here.

61.    On or about dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant MIGUEL ANGEL BARAJAS, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structured, assisted in structuring, and willfully caused to be structured, the following transactions with domestic financial institutions, namely, cash withdrawals from Wells Fargo account ending in 0429, and did so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, and while violating another law of the United States, namely, Title 18, United States Code, Sections 371, 1349, 1343, 1956:

| DATE | WITHDRAWALS |
| --- | --- |
| 10/12/2022 | $9,800 |
| 10/12/2022 | $9,860 |
| 10/19/2022 | $1,300 |
| 10/19/2022 | $8,500 |
| 10/19/2022 | $663.42 |
| 10/21/2022 | $1,000 |
| 10/21/2022 | $9,000 |
| 11/7/2022 | $1,500 |
| 11/7/2022 | $8,000 |
| 11/7/2022 | $9,510 |
| 11/8/2022 | $9,460 |
| 11/8/2022 | $9,610 |
| 11/14/2022 | $9,500 |
| 11/14/2022 | $1,000 |
| 11/21/2022 | $9,300 |

| DATE | WITHDRAWALS |
|------|-------------|
| 11/21/2022 | $3,400 |
| 11/21/2022 | $9,510 |
| 11/21/2022 | $9,610 |
| 11/21/2022 | $9,300 |
| 11/23/2022 | $9,300 |
| 11/23/2022 | $1,500 |
| 12/2/2022 | $8,700 |
| 12/2/2022 | $1,000 |
| 12/27/2022 | $500 |
| 12/27/2022 | $500 |
| 12/27/2022 | $800 |
| 12/27/2022 | $1,500 |
| 12/27/2022 | $8,600 |
| 12/30/2022 | $500 |
| 12/30/2022 | $1,000 |
| 12/30/2022 | $4,000 |
| 12/30/2022 | $5,500 |
| 12/30/2022 | $7,335 |
| 12/30/2022 | $9,610 |
| 1/10/2023 | $8,500 |
| 1/10/2023 | $1,500 |
| 1/23/2023 | $500 |
| 1/23/2023 | $600 |
| 1/23/2023 | $9,760 |
| 1/23/2023 | $9,800 |
| 1/23/2023 | $9,800 |
| 1/27/2023 | $8,250 |
| 1/27/2023 | $1,500 |
| 2/9/2023 | $9,850 |
| 2/9/2023 | $9,860 |

**Total transactions: 45**
**Total amount withdrawn: $260,088**

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Three, and Five through Ten of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including but not limited to the following:

• Real property commonly known as 7423 Owensmouth Ave, Canoga Park, CA 91303 (APN 2111-009-013);

• Real property commonly known as 27332 Sand Canyon, Santa Clarita, CA 91387 (APNs 2841-004-061, 2841-004-059, 2841-004-060, 2841-004-062, 2841-004-063 and 2841-004-058);

• Real property commonly known as 16235 Valley Ranch Road, Santa Clarita, CA 91387 (APNs 2840-012-008 and 2840-012-009); and

• Real property commonly known as 16161 Sky Ranch Road, Santa Clarita, CA 91387 (APN 2841-013-026).

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any

defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Four of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense, including but not limited to the following:

• Real property commonly known as 7423 Owensmouth Ave, Canoga Park, CA 91303 (APN 2111-009-013);

• Real property commonly known as 27332 Sand Canyon, Santa Clarita, CA 91387 (APNs 2841-004-061, 2841-004-059, 2841-004-060, 2841-004-062, 2841-004-063 and 2841-004-058);

• Real property commonly known as 16235 Valley Ranch Road, Santa Clarita, CA 91387 (APNs 2840-012-008 and 2840-012-009); and

• Real property commonly known as 16161 Sky Ranch Road, Santa Clarita, CA 91387 (APN 2841-013-026).

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any

93

defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offenses set forth in any of Counts Eleven through Forty-Two of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following:

• Real property commonly known as 7423 Owensmouth Ave, Canoga Park, CA 91303 (APN 2111-009-013);

• Real property commonly known as 27332 Sand Canyon, Santa Clarita, CA 91387 (APNs 2841-004-061, 2841-004-059, 2841-004-060, 2841-004-062, 2841-004-063 and 2841-004-058);

• Real property commonly known as 16235 Valley Ranch Road, Santa Clarita, CA 91387 (APNs 2840-012-008 and 2840-012-009); and

• Real property commonly known as 16161 Sky Ranch Road, Santa Clarita, CA 91387 (APN 2841-013-026).

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so

95

convicted shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

FORFEITURE ALLEGATION FOUR

[31 U.S.C. § 5317]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 31, United States Code, Section 5317, in the event of any defendant's conviction of the offenses set forth in any of Counts Forty-Three through Forty-Six of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All property, real or personal, involved in the offense and any property traceable thereto, including but not limited to the following:

• Real property commonly known as 7423 Owensmouth Ave, Canoga Park, CA 91303 (APN 2111-009-013);

• Real property commonly known as 27332 Sand Canyon, Santa Clarita, CA 91387 (APNs 2841-004-061, 2841-004-059, 2841-004-060, 2841-004-062, 2841-004-063 and 2841-004-058);

• Real property commonly known as 16235 Valley Ranch Road, Santa Clarita, CA 91387 (APNs 2840-012-008 and 2840-012-009); and

• Real property commonly known as 16161 Sky Ranch Road, Santa Clarita, CA 91387 (APN 2841-013-026).

(b)  To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c)(1)(B), any defendant so convicted shall forfeit substitute property, if, by

any act or omission of said defendant, the property described in the
preceding, or any portion thereof; (a) cannot be located upon the
exercise of due diligence; (b) has been transferred, sold to, or
deposited with a third party; (c) has been placed beyond the
jurisdiction of the court; (d) has been substantially diminished in
value; or (e) has been commingled with other property that cannot be
divided without difficulty.

                                        A TRUE BILL



                              _____
                              Foreperson


E. MARTIN ESTRADA
United States Attorney



MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

JOSHUA O. MAUSNER
Assistant United States Attorney
Chief, Violent & Organized Crime
Section

JENNIFER CHOU
Assistant United States Attorney
Violent & Organized Crime Section

LINDSAY M. BAILEY
Assistant United States Attorney
Violent & Organized Crime Section

RYAN WATERS
Assistant United States Attorney
Asset Forfeiture and Recovery
Section