1   UNITED STATES DISTRICT COURT
    CENTRAL DISTRICT OF CALIFORNIA
2   WESTERN DIVISION – LOS ANGELES

3

4   UNITED STATES OF AMERICA,    )
                                 )
5                    Plaintiff,  )
                                 )
6           vs.                  )   Case No.  2:24-CR-00471-MWF
                                 )
7   JUAN CARLOS THOLA-DURAN,     )        Los Angeles, California
                                 )        September 6, 2024
8                    Defendant.  )
    _____ _ )
9

10

11                      DETENTION HEARING
12
    BEFORE THE HONORABLE A. JOEL RICHLIN
13      UNITED STATES MAGISTRATE JUDGE

14

15  APPEARANCES:               See Next Page

16  COURT REPORTER:            Recorded, CourtSmart

17  COURTROOM DEPUTY:          Claudia Garcia-Marquez

18  TRANSCRIBER:               Dorothy Babykin
                               Courthouse Services
19                             1218 Valebrook Place
                               Glendora, California  91740
20                             (626) 963-0566

21

22

23  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
24

25

1    APPEARANCES:

2

3    FOR PLAINTIFF UNITED STATES OF AMERICA:

     E. MARTIN ESTRADA
4    UNITED STATES ATTORNEY
     BY:  JENNIFER Y. CHOU
5        LINDSEY BAILEY
     ASSISTANT UNITED STATES ATTORNEYS
6    VIOLENT AND ORGANIZED CRIME SECTION
     312 NORTH SPRING STREET
7    LOS ANGELES, CALIFORNIA  90012

8

     FOR DEFENDANT JOHN CARLO THOLA-DURAN:
9
     LAW OFFICES OF DORITA A. AHOUBIM
10   BY:  DORITA ARIELA AHOUBIM
         ATTORNEY AT LAW
11   5900 SEPULVEDA BOULEVARD
     SUITE 400
12   VAN NUYS, CALIFORNIA  91411

13

     ALSO PRESENT:
14
     JESUS RIVERA
15   SPANISH LANGUAGE INTERPRETER

16

17

18

19

20

21

22

23

24

25

1                                         I N D E X

2    2:24-CR-00471-MWF                              SEPTEMBER 6, 2024

3    PROCEEDINGS:   DETENTION HEARING

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; SEPTEMBER 6, 2024; 3:19 P.M.

2          THE CLERK:  CALLING CASE 2:24-CR-471, UNITED STATES OF

3    AMERICA VERSUS JUAN CARLOS THOLA-DURAN.

4          COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

5    RECORD.

6          MS. AHOUBIM:  GOOD AFTERNOON, YOUR HONOR.  OH.

7          MS. CHOU:  GOOD AFTERNOON, YOUR HONOR.

8          JENNIFER CHOU ON BEHALF OF THE UNITED STATES.  ALONG

9    WITH AUSA LINDSEY BAILEY.

10          THE COURT:  GOOD AFTERNOON.

11          MS. AHOUBIM:  I APOLOGIZE.

12          GOOD AFTERNOON, YOUR HONOR.

13          DORITA AHOUBIM APPEARING FOR MR. JUAN CARLOS THOLA,

14    WHO'S IN CUSTODY AND BEING ASSISTED BY THE SPANISH LANGUAGE

15    INTERPRETER.

16          I'LL LET  -- ALSO LET THE COURT KNOW THAT I HAVE BEEN

17    RETAINED FOR PURPOSES OF THE RETENTION HEARING -- DETENTION

18    HEARING ONLY.

19          I HAVE COUNSEL HERE WHO WILL BE TAKING OVER ON THE

20    CASE FOLLOWING THE DETENTION HEARING.

21          MR. KATZ:  GOOD AFTERNOON, YOUR HONOR.

22          DAVID KATZ WITH  --  IN FOR MR. JUAN CARLOS THOLA – THOLA-

23    DURAN.

24          AND IT'S A PLEASURE TO BE HERE.  I DON'T THINK I'VE

25    APPEARED IN FRONT OF YOUR HONOR BEFORE.  BUT GOOD TO BE HERE.

1    THANK YOU.

2              THE COURT:  GOOD AFTERNOON.

3              ALL RIGHT.  SINCE I SEE THAT MR. THOLA-DURAN IS BEING

4    ASSISTED BY A SPANISH-LANGUAGE INTERPRETER, CAN I ASK THE

5    INTERPRETER TO PLEASE STATE HIS APPEARANCE FOR THE RECORD.

6              SPANISH-LANGUAGE INTERPRETER:  GOOD AFTER- -- GOOD

7    AFTERNOON, YOUR HONOR.

8              JESUS RIVERA, SPANISH INTERPRETER.  OATH IS ON FILE.

9              THE COURT:  GREAT.  THANK YOU SO MUCH FOR YOUR HELP

10   TODAY.

11             SO, MR. THOLA-DURAN, IF AT ANY TIME DURING THE

12   PROCEEDINGS YOU'RE NOT UNDERSTANDING WHAT'S HAPPENING OR

13   WHAT'S BEING SAID, WILL YOU PLEASE JUST RAISE YOUR HAND AND LET

14   ME KNOW.

15             THE DEFENDANT:  YES, YOUR HONOR.

16             THE COURT:  OKAY.

17             THANK YOU SO MUCH.

18             OKAY.  GREAT.  SO, WE HAVE NO ISSUE WITH COUNSEL.  WE

19   HAVE TWO COUNSEL HERE JUST HANDLING DIFFERENT PIECES.

20             SO, LAST TIME WE HANDLED THE INITIAL APPEARANCE.  AND WE

21   – I BELIEVE WE DID NOT HANDLE THE ARRAIGNMENT OR THE DETENTION

22   HEARING.

23             DOES THAT SOUND RIGHT?

24             MS. AHOUBIM:  THAT'S RIGHT, YOUR HONOR.  WE DID THE

25   ADVISEMENT OF RIGHTS.  BUT WE DIDN'T ENTER A PLEA.

1          THE COURT:  OKAY.  GREAT.

2          I'LL JUST QUICKLY COVER THAT AGAIN SO THAT THERE'S NO

3    ISSUE AND SO THAT WE'RE CONFIDENT MR. THOLA-DURAN UNDERSTANDS

4    HIS RIGHTS.

5          SO, MR. THOLA-DURAN, I'M HOLDING UP A DOCUMENT ENTITLED

6    "ADVISEMENT OF DEFENDANT'S STATUTORY AND CONSTITUTIONAL

7    RIGHTS."

8          THIS DOCUMENT SUMMARIZES AND DESCRIBES ALL OF YOUR

9    RIGHTS AS A CRIMINAL DEFENDANT UNDER FEDERAL LAW AND THE

10   UNITED STATES CONSTITUTION.

11         DID YOU SIGN THIS DOCUMENT?

12         THE DEFENDANT:  YES, YOUR HONOR.

13         THE COURT:  AND BEFORE SIGNING THE DOCUMENT, WAS IT

14   READ TO YOU BY A SPANISH-LANGUAGE INTERPRETER?

15         THE DEFENDANT:  YES, YOUR HONOR.

16         THE COURT:  AND DO YOU UNDERSTAND YOUR RIGHTS

17   CONTAINED IN THE DOCUMENT?

18         THE DEFENDANT:  YES, YOUR HONOR.

19         THE COURT:  OKAY.

20         DO YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS?

21         THE DEFENDANT:  NO, YOUR HONOR.

22         THE COURT:  OKAY.

23         AND MS. AHOUBIM, DID YOU ALSO SIGN THIS DOCUMENT?

24         MS. AHOUBIM:  I DID, YOUR HONOR.

25         THE COURT:  OKAY.

1          AND IS IT  -- DO YOU AGREE THAT YOU CLIENT UNDERSTANDS

2    HIS RIGHTS THAT'S CONTAINED IN THE DOCUMENT?

3          MS. AHOUBIM:  YES, YOUR HONOR.

4          THE COURT:   OKAY. GREAT.

5          SO, LET'S -- FOR PURPOSES OF ARRAIGNMENT, LET'S REVIEW A

6    COUPLE OF THINGS.

7          MR. THOLA-DURAN, YOU HAVE BEEN CHARGED THROUGH A

8    DOCUMENT CALLED AN INDICTMENT.

9          I'M HOLDING IT HERE.  THIS IS IT.  IT'S VERY -- IT'S VERY LARGE.

10          HAVE YOU AND YOUR ATTORNEY RECEIVED A COPY OF THE

11    INDICTMENT?

12          THE DEFENDANT:  YES, YOUR HONOR.

13          THE COURT:  OKAY.

14          AND HAS THE INDICTMENT BEEN READ TO YOU BY A SPANISH-

15    LANGUAGE INTERPRETER?

16          THE DEFENDANT:   YES, YOUR HONOR.

17          THE COURT:  OKAY.   AND I'M NOT ASKING IF YOU AGREE WITH

18    THE ALLEGATIONS IN THE INDICTMENT.

19          MY QUESTION IS DO YOU UNDERSTAND WHAT THE

20    GOVERNMENT IS ACCUSING YOU OF?

21          THE DEFENDANT:  YES, YOUR HONOR.

22          THE COURT:  OKAY.

23          AND DO YOU HAVE ANY QUESTIONS ABOUT THE ALLEGATIONS

24    AT THIS TIME?

25          THE DEFENDANT:   NO, YOUR HONOR.

1          THE COURT:   OKAY.  GREAT.

2          IF YOU DO HAVE ANY QUESTIONS IN THE FUTURE YOU CAN ASK

3    YOUR  -- AFTER TODAY YOUR ONLY ATTORNEY IS GOING TO BE MR. KATZ.

4          SO, MR. KATZ CAN GIVE YOU CONFIDENTIAL EXPERT LEGAL

5    ADVICE AT ANY TIME.   FEEL FREE TO ASK HIM QUESTIONS ABOUT IN THE

6    FUTURE.

7          OKAY?

8          THE DEFENDANT:   YES, YOUR HONOR.

9          THE COURT:  OKAY.

10          SO, THE NEXT STEP IN THIS CASE IS THAT YOUR CASE HAS BEEN

11    ASSIGNED TO THE HONORABLE MICHAEL FITZGERALD.

12          JUDGE FITZGERALD IS LOCATED IN COURTROOM 5-A AT THE LOS

13    ANGELES UNITED STATES COURTHOUSE JUST DOWN THE STREET.

14          THERE IS A JURY TRIAL SET FOR OCTOBER 22ND, 20024 AT 8:30

15    A.M.

16          THERE IS A STATUS CONFERENCE SET FOR SEPTEMBER 9, 2024

17    AT 3:00 P.M.

18          AND JUDGE FITZGERALD ASKED THAT WE TAKE THE NOT GUILTY

19    PLEA AT THIS HEARING.

20          SO, MR. KATZ, HOW DOES YOUR CLIENT INTEND TO PLEAD TO

21    THE CHARGES IN THE INDICTMENT?  -- GUILTY OR NOT GUILTY?

22          MR. KATZ:   THAT WOULD BE NOT GUILTY TO ALL THE COUNTS

23    AGAINST HIM.

24          THE COURT:   MR. THOLA-DURAN, HOW DO YOU PLEAD TO THE

25    CHARGES IN THE INDICTMENT, GUILTY OR NOT GUILTY?

1      THE DEFENDANT:   NOT GUILTY.

2      THE COURT:   OKAY.  THANK YOU.

3      MS. CHOU:   YOUR HONOR –

4      THE COURT:  YES.

5      MS. CHOU:  SOMETIME BETWEEN THE FIRST INITIAL

6   APPEARANCE LAST THURSDAY AND TODAY JUDGE FITZGERALD VACATED

7   THE STATUS CONFERENCE.

8      THE COURT:  OH.

9      MS. CHOU:   I DON'T KNOW.  WE'RE TRYING TO CHECK TO SEE

10  WHETHER OR NOT FOR SOME REASON IT'S VACATED ONLY AS TO THE

11  DEFENDANTS WHO HAD ALREADY DONE PIA AND NOT TO THESE THREE.

12      I CAN'T IMAGINE THAT IT WOULDN'T APPLY TO  ALL OF THEM, BUT

13  I DID WANT TO ALERT THAT TO THE COURT  --

14      THE COURT:  OKAY.

15      MS. CHOU:  -- AND TO COUNSEL IN THE ROOM.

16      THE COURT:  OKAY.

17      SO  -- SO, MR. KATZ, OBVIOUSLY YOU CAN CHECK CM/ECF.

18      YOU CAN CHECK PACER AND SORT OF TAKE A LOOK AT THAT.

19      OBVIOUSLY, IT'S A LITTLE BIT OF A COMPLICATED DOCKET WITH

20  SO MANY CO-DEFENDANTS BUT -- BUT DO TAKE A LOOK AT THAT.

21      AND YOU CAN OBVIOUSLY ALSO FOLLOW UP WITH JUDGE

22  FITZGERALD'S COURTROOM DEPUTY AND JUST CONFIRM NEXT STEPS FOR

23  YOUR CLIENT.

24      OKAY.

25      MR. KATZ:  YOUR HONOR, I APPRECIATE THE GOVERNMENT'S

1    COMMENT BECAUSE SEPTEMBER 9TH DID HIT ME WHEN YOU SAID IT.  WE

2    NEED TO DO SOMETHING ABOUT THAT.

3              THE COURT:  YEAH.  YES.

4              SO, JUST AFTER THIS, CHECK THE DOCKET AND MAYBE IT'S

5    ALREADY TAKEN CARE OF.

6              OKAY.  SO, I THINK -- I THINK WE'RE COVERED THEN IN TERMS OF

7    ARRAIGNMENT.

8              AND I'LL MOVE BACK TO DETENTION THEN.

9              THE COURT HAS RECEIVED A REQUEST FOR DETENTION FROM

10   THE GOVERNMENT.

11             MS. CHOU, IS THE GOVERNMENT STILL MOVING FOR DETENTION

12   IN THIS MATTER?

13             MS. CHOU:  YES, YOUR HONOR.

14             AND IN SUPPORT OF ITS RECOMMENDATION FOR DETENTION,

15   THE GOVERNMENT PROFFERS THE PRETRIAL SERVICES REPORT AND ITS

16   RECOMMENDATION FOR DETENTION AS TO BOTH FLIGHT AND DANGER.

17             THE INDICTMENT, THE AFFIDAVIT TO THE SEARCH WARRANT,

18   WHICH THE COURT SHOULD HAVE A COPY OF.  THAT IS MATTER NO.

19   2:24-MJ-05082, WHICH WAS A SEARCH WARRANT FOR THE SAND CANYON

20   RESIDENCE WHERE THE DEFENDANT WAS RESIDING AND FOUND AT THE

21   TAKE-DOWN.

22             THE COURT:  OKAY.

23             AND I WAS GOING TO ASK, BUT I TAKE IT THAT THE PARTIES

24   HAVE NOT REACHED ANY AGREEMENT ON YOUR REQUEST FOR

25   DETENTION.

1          MS. AHOUBIM:  NO, WE HAVE NOT, YOUR HONOR.

2          THE COURT:  OKAY.

3          IS THAT  -- HAVE YOU  --

4          MS. CHOU:  CORRECT.  THE GOVERNMENT CONTINUES TO

5    REQUEST DETENTION.

6          THE COURT:  OH, NO, NO.  WAS THERE ANYTHING ELSE YOU  --

7    WERE YOU DONE, MS. CHOU?

8          MS. CHOU:  IN TERMS OF WHAT THE GOVERNMENT IS

9    PROFFERING?

10          THE COURT:  YES.

11          I COULDN'T TELL IF YOU WERE JUST PAUSING OR IF YOU WERE

12    DONE.

13          MS. CHOU:  THOSE ARE THE THINGS THAT I AM PROFFERING FOR

14    NOW.

15          THE COURT:  OKAY.

16          I DIDN'T WANT TO CUT YOU OFF.  THAT'S ALL.

17          MS. CHOU:  THANK YOU.

18          (PAUSE IN PROCEEDINGS.)

19          THE COURT:  HOLD ON.  I'M JUST  -- I WANT TO MAKE SURE I

20    HAVE BOTH OF THE REPORTS I MADE NOTES ON.

21          MS. CHOU:  YOUR HONOR, I SUPPOSE I SHOULD CLARIFY THAT

22    THE GOVERNMENT IS PROFFERING BOTH THE INITIAL PRETRIAL SERVICES

23    REPORT, WHICH WAS ISSUED ON LAST THURSDAY, AUGUST 29TH, AS WELL

24    AS THE AMENDMENT -- THE ADDENDUM THAT WAS ISSUED THIS MORNING.

25          AND I'LL NOTE FOR THE RECORD THAT PRETRIAL

1    RECOMMENDED DETENTION ON THE BASIS OF BOTH DANGER AND FLIGHT

2    IN ITS INITIAL RECOMMENDATION AND CONTINUED TO DO SO IN THE

3    REVISED REPORT.

4            THE COURT:  OKAY.  AND CAN YOU CLARIFY AGAIN  -- HOLD ON.

5    LET ME SEE --

6            (PAUSE IN PROCEEDINGS.)

7            THE COURT:   OKAY.  CAN YOU CLARIFY AGAIN  -- I KNOW I WAS

8    TALKING ABOUT THIS WITH MS. BAILEY, BUT THE RESIDENCE WHERE MR.

9    THOLA-DURAN RESIDED.

10           DID HE  -- HE RESIDES WITH MS. ARRIAGADA?

11           MS. CHOU:  THAT'S CORRECT, YOUR HONOR.

12           OVER THE COURSE OF THE INVESTIGATION IT APPEARED THAT

13   HE WOULD REGULARLY SPEND A FEW NIGHTS A WEEK AT THE RESIDENCE

14   OF CO-DEFENDANT PATRICIA ENDERTON, LOCATED IN NORTHRIDGE.

15           BUT HIS PRIMARY RESIDENCE WAS AT THE SAND CANYON

16   RESIDENCE WHERE HE -- WHICH HE SHARED WITH CO-DEFENDANT

17   ARRIAGADA AND WHERE HE WAS LOCATED ON -- ON THE MORNING OF THE

18   SEARCH AND THE ARREST LAST WEDNESDAY.

19           THE COURT:  OKAY.  AND WHERE WERE THE FIREARMS FOUND?

20           MS. CHOU:  THERE WERE TWO FIREARMS FOUND.  THEY WERE

21   BOTH IN THE BEDROOM WHICH HE SHARES WITH CO-DEFENDANT

22   ARRIAGADA.   THERE WAS A HANDGUN WHICH CAME BACK AS STOLEN

23   THAT WAS HIDDEN IN A MIRROR THAT WAS ON TOP OF A BUREAU.

24           AND ON THE HEADBOARD OF THE SINGLE BED IN THE ROOM

25   WAS A RIFLE.  AND AMMUNITION FOR THE RIFLE WAS FOUND IN THE

1    CLOSET OF THE BEDROOM.

2             THE COURT:  OKAY.

3             AND WAS THAT REGISTERED TO EITHER OF THE RESIDENTS?

4             MS. CHOU:   IT WAS UNREGISTERED, YOUR HONOR.

5             THE COURT:   OKAY.  JUST ONE MOMENT.  I JUST WANT TO

6    CHECK ONE OTHER DETAIL.

7             (PAUSE IN PROCEEDINGS.)

8             THE COURT:  OKAY.  MS.  AHOUBIM.

9             MS. AHOUBIM:   YOUR HONOR, I HAVE READ THE PRETRIAL

10   RECOMMENDATION, BOTH INITIAL AND THE SUBSEQUENT ONE THAT WAS

11   WRITTEN TODAY.

12            AND JUST A FEW POINTS TO MAKE.

13            FIRST OF ALL, AS TO THE GUNS THAT WERE ALLEGEDLY FOUND

14   AT THE HOUSE, THERE ARE MANY INDIVIDUALS WHO WERE LIVING IN THE

15   HOUSE.

16            SO, AS TO  -- AND HE IS NOT  -- HE DOES NOT LIVE THERE FULL

17   TIME.  MY CLIENT DOES NOT LIVE THERE FULL TIME.  SO, HE'S ADAMANT

18   THAT THE  GUN -- THE  --

19            THE COURT:   WHO ELSE LIVED IN THE HOUSE?

20            MS. AHOUBIM:   ANN ARRIAGADA.  THEY HAVE MS. ARRIAGADA'S

21   MOTHER.  THEY HAVE MS. ARRIAGADA'S ELDEST DAUGHTER, HER GRAND-

22   -- HER  -- MS. ARRIAGADA'S GRANDCHILD.  THE CHILD THAT THEY HAVE IN

23   COMMON.   AND THEN I THINK THERE ARE A FEW OTHER PEOPLE, BUT

24   THERE ARE ALSO PEOPLE WHO ARE VISITING CONSTANTLY.

25            SO, I MEAN, THERE'S A LOT OF FAMILY.  A LOT OF INDIVIDUALS

1    COME AND GO IN THE HOME.

2              THE COURT:    OKAY.  BUT THE OTHER FOLKS WHO LIVE IN THE

3    HOME ARE CHILDREN AND MOTHER?

4              MS. AHOUBIM:   MOTHER AND  -- YES.  BUT, AGAIN, THERE ARE A

5    LOT OF PEOPLE COMING IN AND OUT --

6              THE COURT:  OKAY.

7              MS. AHOUBIM:  -- OF THE PROPERTY.

8              AND MY CLIENT WASN'T AWARE OF THE -- THE GUNS THAT WERE

9    --

10             THE COURT:  NOT EVEN THE RIFLE HANGING OVER THE BED?

11             MS. AHOUBIM:  I DON'T THINK IT WAS HANGING, YOUR HONOR,

12   FROM WHAT -- I THINK IT WAS HIDDEN BEHIND THE BED.

13             IN ANY EVENT, GOING TO MY CLIENT, HE HAS MINIMAL CRIMINAL

14   HISTORY.  HE HAS NOTHING WITH VIOLENCE INVOLVED.

15             HIS LAST CRIMINAL --

16             THE COURT:   THAT'S NOT CORRECT.

17             MS. AHOUBIM:   HE HAS NO FELONY CONVICTIONS, YOUR

18   HONOR, FROM -- THEY'RE ALL MISDEMEANORS, I BELIEVE.

19             THE COURT:   HE HAS A SPOUSAL ABUSE CONVICTION.   LET ME

20   SEE WHAT ELSE.

21             (PAUSE IN PROCEEDINGS.)

22             MS. AHOUBIM:    I BELIEVE THAT WAS IN THE 1990'S.

23             THE COURT:  YES.  YES.

24             MS. AHOUBIM:   YES.

25             THE COURT:  BUT YOU DID SAY HE HAD NO VIOLENT

1    CONVICTIONS.

2             (PAUSE IN PROCEEDINGS.)

3             THE COURT:  THERE ARE SOME JUVENILE ISSUES AS WELL THAT

4    ARE VIOLENT, BUT LONG AGO.

5             MS. AHOUBIM:   THEY WERE ALL AWHILE AGO.

6             AND HIS LAST I BELIEVE CONVICTION IS FROM SEVERAL YEARS

7    AGO FOR EVEN A MISDEMEANOR.

8             HE HAS LIVED IN CALIFORNIA AND LOS ANGELES FOR OVER 35

9    YEARS.

10             HE HAS LIVED IN LOS ANGLES FOR 18 YEARS.

11             I BELIEVE HE'S LIVED AT THE SAND CANYON ROAD PROPERTY

12    FOR OVER 18 YEARS.

13             HE HAS FAMILY ALL OVER LOS ANGELES.

14             HE DOES HAVE EIGHT CHILDREN, ALL OF WHOM LIVE IN THE

15    UNITED STATES.   ONE WHO IS IN THE U.S. MILITARY.  AND HE IS IN

16    CONTACT WITH HIM DAILY.   HE IS IN CONTACT WITH ALL OF HIS CHILDREN.

17             HE HAS NO SUBSTANCE ABUSE PROBLEMS.

18             NO MENTAL HEALTH ISSUES.

19             ALL OF THESE ALLEGATIONS INVOLVE ALLEGATIONS OF THEFT.

20             I UNDERSTAND THAT THE GOVERNMENT BELIEVES THAT HIS

21    INVOLVEMENT IS SIGNIFICANT.

22             AGAIN, THESE ARE ALLEGATIONS.  THEY ARE PROPERTY

23    CRIMES.  THEY ARE AGAIN NOT CRIMES OF VIOLENCE.

24             SO, I WOULD ARGUE THAT HE IS NOT A FLIGHT RISK NOR IS HE A

25    DANGER TO SOCIETY GIVEN THE FACT THAT HE HAS LIVED AT THE SAME

1    RESIDENCE FOR OVER 18 YEARS, HAS STRONG TIES TO CALIFORNIA -- IF

2    NOT LOS ANGELES.

3           HE HAS STRONG FAMILIAL TIES IN LOS ANGELES.

4           HE HAS SEVERAL INDIVIDUALS WHO WILL SIGN PROPERTY AND

5    APPEARANCE BONDS TOTALING OVER $260,000 WITH A PROPERTY BOND

6    HAVING -- VALUED AT OVER A MILLION -- CLOSE TO A MILLION DOLLARS

7    WITH EQUITY OF $600,000.

8           HE IS RETAINED BY COUNSEL WHO IS AN EXPERIENCED FORMER

9    AUSA HIMSELF, MR. KATZ.

10          HE WOULD ARGUE THAT HE IS NOT A FLIGHT RISK.

11          THERE IS A CO-DEFENDANT ON THIS CASE WHO HAS BEEN

12   GRANTED BAIL.

13          AND I'M SURE THE AUSA AND PRETRIAL ALSO RECOMMENDED

14   FOR HIM TO BE DETAINED.

15          BUT MY CLIENT IS NOT GOING ANYWHERE.  HE IS HERE.  HE IS --

16   HE HAS STRONG TIES.

17          AND, AGAIN, THESE ARE ALLEGATIONS THAT HE WOULD -- HE

18   WOULD LIKE TO HAVE THE OPPORTUNITY TO CLEAR UP.  FIGHT.  PRESENT

19   EXPLANATIONS FOR.

20          AND IT WOULD BE HELPFUL IF HE IS OUT OF CUSTODY -- I MEAN

21   NOT -- HE IS -- YEAH  -- OUT OF CUSTODY SO THAT HE CAN HELP HIS

22   ATTORNEY AS WELL AS HIMSELF IN CLEARING SOME OF THESE VERY

23   SIGNIFICANT ALLEGATIONS AGAINST HIM.

24          AND, SO, WE DO  -- IF THE COURT IS COMFORTABLE WITH

25   PUTTING HIM ON AN ANKLE MONITOR OR ANY SORT OF MONITOR OUTSIDE

1     OF BEING DETAINED, HE WOULD AGREE TO THAT.

2                (COUNSEL CONFERRING.)

3                MS. AHOUBIM:  AND MR. KATZ WOULD ALSO LIKE TO SPEAK.

4                THE COURT:  SURE.

5                MR. KATZ:   COULD I JUST ADD ONE THING AS THE ATTORNEY

6     FOR THE CASE ITSELF.

7                I THINK IT'S EASY FOR THE GOVERNMENT TO MINIMIZE HOW

8     DIFFICULT IT IS FOR A PERSON -- ALTHOUGH THEY'RE PRESUMED

9     INNOCENT -- TO PREPARE TO DEFEND A CASE LIKE THIS IF THEY'RE IN

10    CUSTODY.

11               IT REALLY PUTS THEM DESPITE THE PRESUMPTION OF

12    INNOCENCE BEHIND THE EIGHT BALL.

13               THIS WILL BE A CASE WITH VOLUMINOUS DISCOVERY.

14               I HAVE NO IDEA NOW HOW VOLUMINOUS, BUT IT'S OBVIOUSLY

15    GOING TO BE A CASE WITH VOLUMINOUS DISCOVERY.

16               THE DIFFERENT KINDS OF MEDIA THAT ARE VERY DIFFICULT TO

17    PLAY AT THE MDC, TO DEAL WITH AT THE MDC.

18               WE MET THERE LAST NIGHT.  AND IT WAS SWELTERING.   IT JUST

19    WAS.  IT JUST WAS ONE OF THE REALITIES.  YOU WALK IN THERE.  THERE

20    CAN BE A PROBLEM WITH THE COUNT.  IT CAN BE SWELTERING.  IT CAN BE

21    WHATEVER IT IS.  THE MACHINE CANNOT WORK.  YOU'RE GOING TO HAVE

22    TROUBLE WITH THE MEDIA.  IT'S AWFULLY, AWFULLY DIFFICULT TO

23    PREPARE A CASE IN CUSTODY.

24               WHEREAS IF HE'S ON HOME ARREST  -- AND I JUST HEARD THE

25    ARGUMENT ABOUT THE MONITOR.   AND I HAVE SOME EXPERIENCE WITH

1    THAT BECAUSE I HAVE ANOTHER -- A VERY COMPLEX CASE.   PROBABLY

2    WITH MORE VOLUMINOUS DISCOVERY THAN THIS.  AND THERE WAS AN

3    ISSUE ABOUT DETAINING THE CLIENT.   AND THE CLIENT WAS NOT

4    DETAINED.  AND IT'S SUCH AN ADVANTAGE TO HAVE SOMEONE OUT OF

5    CUSTODY, YOUR HONOR, AND TO BE ABLE TO PREPARE THE CASE BACK

6    AND FORTH.

7          I CAN CALL THEM IN THE EVENING WHEN I HAVE QUESTIONS

8    ABOUT THE DISCOVERY.  IT'S NIGHT AND DAY, THE DIFFERENCE BETWEEN

9    TRYING TO PREPARE A COMPLEX CASE.

10          HE'S A CITIZEN.  HE'S A LONG-TIME RESIDENT OF THE

11    COMMUNITY.

12          I'M NOT AS FAMILIAR WITH THE RECORD, BUT I UNDERSTOOD

13    FROM THE ARGUMENT THAT IT'S VERY OLD -- ANYTHING THAT HAD TO DO

14    WITH VIOLENCE OR ANYTHING.

15          THIS CASE GOT ENORMOUS PUBLICITY, YOUR HONOR.

16          THERE WAS NO ONE WHO WOULD DEAL WITH HIM, HAVE

17    CONTACT WITH HIM AFTER THIS.

18          THE IDEA THAT HE COULD DO SOMETHING LIKE THIS WHILE HE

19    WERE OUT -- EVEN IF ANYONE WERE THAT FOOLHARDY -- I THINK IS

20    BASICALLY -- YOU KNOW, HE'S BEEN -- HE'S BEEN BURNED ALL OVER THE

21    PLACE.  SO, I DON'T THINK THAT'S GOING TO HAPPEN.

22          I THINK THE REALITY OF HIM BEING A DANGER TO THE

23    COMMUNITY, IT'S A GOOD ARGUMENT TO MAKE AFTER THIS HUGE SPLASH

24    OF PUBLICITY.  MAYBE IT'S EASY TO ROLL OUT OF THE GOVERNMENT'S

25    MOUTH, YOUR HONOR.

1          BUT THE REALITY IS HE'S NOT A DANGER TO THE COMMUNITY.

2          SO, I THINK THE QUESTION IS IS HE REALLY GOING TO FLEE.

3          AND THE ANSWER IS I THINK NO.  I THINK SHE PROVIDED A

4     REALLY COMPELLING ARGUMENT THAT THESE ELECTRONIC MONITORING

5     DEVICES WORK.   THEY'RE MONITORED INCESSANTLY.

6          YOU KNOW, YOU READ IN THE NEWSPAPERS SOMEONE CUT OFF

7     THEIR MONITOR.  THAT'S NOT THIS KIND OF CASE.  THAT'S NOT WHEN YOU

8     HAVE THE RIGHT KIND OF MONITORING.

9          AND YOUR HONOR KNOWS THERE'S ALL THESE FEDERAL CASES

10    WITH PEOPLE WHO ARE LIKE BILLIONAIRES, RIGHT.   AND THEY DO

11    ELECTRONIC MONITORING THAT WORKS.  AND THOSE PEOPLE DON'T GO

12    ANYWHERE.  AND THEY DON'T CUT IT OFF.

13         AND MY CLIENT IS CERTAINLY NOT A BILLIONAIRE.

14         ALL OF THESE PROPERTIES  -- MANY OF THESE PROPERTIES

15    HAVE BEEN SEIZED.  THERE'S LIS PENDENS I THINK OR WHATEVER THEY

16    PUT ON THEM.

17         HE'S NOT GOING ANYWHERE.   AND HE'S REALLY NOT A FLIGHT

18    RISK BECAUSE THERE'S NOWHERE THAT -- YOU KNOW, THIS IDEA THAT

19    PEOPLE JUST GET ON A PLANE AND GO TO COLOMBIA  -- WELL, NO, THEY

20    DON'T.  THAT'S NOT WHAT HE'S GOING TO DO.

21         THEY WOULD  -- IF HE TRIED TO DO THAT, THEY WOULD

22    IMMEDIATELY FIND OUT ABOUT IT.   THEY WOULD IMMEDIATELY TAKE

23    STEPS.

24         IT HASN'T HAPPENED WITH MY OTHER CLIENTS I THINK EVER.

25         I READ IN THE NEWSPAPER ABOUT THESE CASES WHERE

1    PEOPLE WHO HAVE A MUCH STRONGER MOTIVE TO GO AND MUCH MORE

2    MONEY AND MUCH MORE RESOURCES AND SOME COUNTRY THAT

3    WOULDN'T RETURN THEM -- CHINA, YOU NAME IT.   THEY DON'T GO.

4         COLOMBIA WOULD RETURN HIM ON A CASE LIKE THIS.  HE'S A

5    U.S. CITIZEN.

6         SO, YOUR HONOR, THE REALITY IS IT WOULD HELP HIM MIGHTILY

7    TO PRESERVE HIS PRESUMPTION OF INNOCENCE.

8         HIS RIGHT TO BE REALLY THOUGHT TO BE INNOCENT BY THE

9    COURTS AND BY THE JUSTICE SYSTEM SO HE CAN PREPARE A DEFENSE

10   WITH A LAWYER WHO IS USED TO DEFENDING THESE KINDS OF CASES.

11        AND WE COULD ACTUALLY DO IT.  AND WE COULD BE ON SOME

12   KIND OF FOOTING THAT THE GOVERNMENT IS ON WITH ITS TWO

13   PROSECUTORS AND ALL OF ITS AGENTS AND EVERYTHING ELSE -- ONE

14   ATTORNEY WHO WOULD BE WORKING FOR HIM.

15        BUT IT SO HARD TO PREPARE A CASE IN THE MDC AND SO

16   UNNECESSARY HERE BECAUSE HE'S REALLY NOT A FLIGHT RISK.   AND

17   HE'S CERTAINLY NOT BY CLEAR AND CONVINCING EVIDENCE A DANGER

18   TO THE COMMUNITY.

19        THANK YOU, YOUR HONOR.

20        THE COURT:   OKAY.

21        MS. CHOU.

22        MS. CHOU:   JUST FOR THE RECORD, I JUST WANT TO

23   PROCEDURALLY OBJECT TO THE FACT THAT IT APPEARS THAT HE HAD

24   MULTIPLE COUNSEL MAKING THE DETENTION ARGUMENT.

25        BUT SETTING THAT ASIDE, THERE ARE SIGNIFICANT REASONS

1    WHY THIS COURT SHOULD FIND THAT THE DEFENDANT IS BOTH A

2    CONTINUING DANGER TO THE COMMUNITY AS WELL AS A SIGNIFICANT

3    FLIGHT RISK.

4         I WANT TO START WITH THE TIES TO COLOMBIA.

5         THE DEFENDANT OWNS PROPERTY THERE.  HE HAS A RANCH

6    THERE THAT HE VISITS REGULARLY WITH HIS CO-DEFENDANTS WITH MS.

7    ARRIAGADA, WITH HIS SON CO-DEFENDANT JOHN THOLA.

8         IN FACT, HE HAD JUST TRAVELED THERE AND HAD RETURNED

9    TO THE UNITED STATES JUST A WEEK OR SO BEFORE THE ARREST.

10        HE TRAVELS FREQUENTLY OUTSIDE OF THE COUNTRY TO

11   OTHER LOCATIONS.

12        JUST THIS YEAR TRAVEL RECORDS INDICATE THAT HE HAD

13   TRAVELED NOT ONLY TO MEXICO, WHICH HE HAD DISCLOSED TO

14   PRETRIAL, BUT THAT HE HAD ALSO TRAVELED TO ARMENIA AND TO

15   BARCELONA.

16        THE INVESTIGATION -- OVER THE COURSE OF THE

17   INVESTIGATION HE -- HE TRAVELED FREQUENTLY OUTSIDE OF THE

18   DISTRICT.

19        AND, SO, HE DOES HAVE SIGNIFICANT TIES AND THE MEANS TO

20   BE ABLE TO START OVER OR CONTINUE WHERE HE LEFT OFF IN COLOMBIA

21   IF HE WERE RELEASED ON BOND

22        ELECTRONIC MONITORING IN THIS INSTANCE  -- AND PRETRIAL

23   SERVICES AGREES  -- WOULD NOT BE SUFFICIENT TO MITIGATE THE

24   FLIGHT RISK.

25        AND I DON'T KNOW ABOUT MR. KATZ.   BUT I CERTAINLY HAVE

1    HAD DEFENDANTS FLEE WHILE ON ELECTRONIC MONITORING.  AND BY

2    THE TIME THE MARSHALS REALIZED THAT THE BRACELET IS NO LONGER

3    ACCURATELY PINGING TO THE DEFENDANT'S LOCATION IT'S TOO LATE.

4         AND I HAVE STILL FUGITIVES NOT IN THIS COUNTRY THAT

5    ESCAPED WHILE THEY WERE ON ELECTRONIC MONITORING ON PRETRIAL

6    RELEASE.

7         THE  -- THE  -- ONE OF THE THINGS THAT IS VERY CONCERNING

8    TO THE GOVERNMENT IS THE FACT THAT WHILE DEFENDANT HAS

9    DISCLOSED THAT HE HAS DUAL CITIZENSHIP, AND HE DISCLOSED THAT HE

10   HAS COLOMBIAN PASSPORTS AND U.S. PASSPORTS, IN FACT, DURING THE

11   SEARCH OF THE VARIOUS LOCATIONS ON WEDNESDAY OF LAST WEEK,

12   AGENTS FOUND A VALID UNITED STATES PASSPORT CARD OF THE

13   DEFENDANTS NOT LOCATED AT HIS RESIDENCE AT SAND CANYON BUT AT

14   MS. ENDERTON'S RESIDENCE AND BIANCA 6 FEET AWAY IN HER CLOSET.

15        HE DID NOT DISCLOSE THAT TO PRETRIAL SERVICES.

16        HE DID NOT SAY, OH, AND BY THE WAY, I'VE GOT A VALID TRAVEL

17   INSTRUMENT, A U.S. PASSPORT CARD THAT I'VE HIDDEN AT MY OTHER

18   GIRLFRIEND'S HOUSE.

19        SO, THAT IS A SIGNIFICANT CONCERN TO THE GOVERNMENT,

20   THE FACT THAT HE HAS THE MEANS TO TRAVEL   HE HAS THE EXPERIENCE

21   TO TRAVEL.  HE HAS STRONG TIES OUTSIDE OF THE COUNTRY.

22        THE FACT THAT THE FIREARMS WERE FOUND  -- NOT JUST

23   SOMEWHERE ON THIS PROPERTY WHERE THERE WERE OTHER PEOPLE.

24   THEY WERE FOUND IN HIS BEDROOM ON HIS BED.

25        AND THAT IS SOMETHING THAT IS --

1          THE COURT:   CAN YOU  -- CAN YOU BE MORE SPECIFIC.

2          ON HIS  -- I  -- I – I GOT  -- THE PICTURE I GOT FROM YOU IT WAS

3    LIKE HANGING OVER THE HEADBOARD.

4          SO, WHAT -- HELP ME OUT.

5          MS. CHOU:   IT WAS RESTING BEHIND THE HEADBOARD.

6          THE COURT:  OKAY.

7          MS. CHOU:   BETWEEN THE HEADBOARD AND THE WALL, RIGHT.

8          THE COURT:  OH, OKAY.

9          MS. CHOU:  SO -- SO, IT WAS LIKE A CARVED HEADBOARD --

10          THE COURT:   SO --

11          MS. CHOU:  -- KIND OF LIKE DECORATIVE HEADBOARD THING.

12          THE COURT:   SO NOT  -- IF YOU'RE LOOKING AT IT, YOU

13    WOULDN'T SEE IT THERE.  BUT YOU JUST GO LIKE THAT.  AND IT'S RIGHT

14    THERE.

15          MS. CHOU:   RIGHT.  IT'S NOT DEEP INTO IT.  THEY FOUND IT --

16          THE COURT:  OKAY.

17          MS. CHOU:   -- RIGHT RESTING ON THE HEADBOARD.

18          THE COURT:   OKAY.  I THOUGHT IT WAS  --

19          MS. CHOU:   SO --

20          THE COURT:   -- JUST VISIBLE.  OKAY.  GOT IT.

21          MS. CHOU:   RIGHT.

22          SIMILARLY, THE STOLEN UNREGISTERED HANDGUN WAS FOUND

23    LIKE JUST TUCKED RIGHT BEHIND THE MIRROR ON TOP OF THE MATCHING

24    BUREAU.

25          THE COURT:   UH-HMM.

1          MS. CHOU:   SO, THE GUNS WERE NOT OUT IN THE OPEN, BUT

2    THEY WERE CERTAINLY THERE IN CLOSE PROXIMITY TO LITERALLY

3    WHERE HE LAYS HIS HEAD ON HIS PILLOW EVERY NIGHT IN THAT HOUSE.

4          AND THE FACT, YOUR HONOR, THAT THE FIREARMS WERE NOT

5    REGISTERED TO HIM.  THE FACT THAT THE HANDGUN WAS REPORTED

6    BACK STOLEN AND OBVIOUSLY UNREGISTERED.

7          I MEAN, THOSE ARE CRIMES IN AND OF THEMSELVES.

8          THE OTHER CONCERN -- AND THIS WAS MENTIONED AS SORT OF

9    A RECENT UPDATE THAT WAS PROVIDED TO PRETRIAL JUST THIS

10   MORNING AND IT WAS INCLUDED IN THE ADDENDUM -- IS THAT AGENTS

11   ACTUALLY SEIZED TWO VEHICLES AT SAND CANYON -- A ROLLS-ROYCE

12   THAT WAS REGISTERED TO ONE OF THE PROPOSED SURETIES HIS SISTER

13   VIANE RAMIREZ.

14         AND A MERCEDES G-WAGON, WHICH WAS REGISTERED TO – I

15   BELIEVE IT WAS REGISTERED TO DRIVER POWER NETWORK, THE

16   CORPORATE DEFENDANT.

17         THOSE TWO VEHICLES HAVE BEEN CONFIRMED TO HAVE BEEN

18   PURCHASED WITH IDENTITY THEFT AND BANK FRAUD AND TRANSFERRED

19   FROM THE SELLERS ALONG WITH A THIRD VEHICLE, ANOTHER

20   ROLLS-ROYCE, USING CO-DEFENDANT'S MIGUEL BARAJAS -- HE WAS

21   USING A FAKE I.D. TO TAKE POSSESSION OF AND THEN TRANSFER

22   CONTROL OF THE THREE VEHICLES, A TOTAL VALUE OF OVER A MILLION

23   DOLLARS.  AND THEY WERE PARKED THERE ON DEFENDANT'S PROPERTY.

24   AND ONE OF THEM IS REGISTERED TO HIS SISTER.  AND THEN THE OTHER

25   ONE IS REGISTERED TO HIS COMPANY.

1       SO  -- AND THESE  -- AND THE IDENTITY THEFT AND THE BANK

2   FRAUD PURCHASE OF THE THREE VEHICLES OCCURRED JUST IN JULY.

3       SO, ALTHOUGH THE INDICTMENT ALLEGES CONDUCT GOING AS

4   FAR BACK AS 2018, AND OBVIOUSLY WE HAD TO STOP SOMEWHERE WHEN

5   IT CAME TIME TO CHARGE AND FINISH DRAFTING THE INDICTMENT, THIS

6   INFORMATION SHOWS THAT THE DEFENDANT IS CONTINUING TO ENGAGE

7   IN THESE CRIMES.

8       THE SUGGESTION THAT PROPERTY CRIMES ARE SOMEHOW NOT

9   A DANGER TO THE COMMUNITY, ASK THE HUNDREDS OF VICTIMS WHO

10  HAD THEIR CREDIT CARDS AND DEBIT CARDS STOLEN AND THEN, YOU

11  KNOW, MAXED OUT AT BEST BUYS AND TARGETS IN ORDER TO OBTAIN

12  GOODS FOR THIS DEFENDANT TO FENCE.

13      ASK THE HUNDREDS OF HOMEOWNERS WHO HAD THEIR

14  RESIDENCES BURGLED BY THIEVES WHO WERE DIRECTED TO ENGAGE IN

15  THESE CRIMES AND FACILITATED THOSE CRIMES BY THIS DEFENDANT

16  AND  -- AND HIS CARS AND THE FACT THAT HE THEN FENCED THE GOODS

17  THAT THEY STOLE FROM THOSE HOMES.

18      AND ALL THE BUSINESS OWNERS WHO HAD THEIR -- THEIR  --

19  THEIR STORES COMMERCIALLY BURGLARIZED BY THIEVES DRIVING THE

20  DEFENDANT'S CARS AND THEN FENCING THE STOLEN GOODS BACK TO

21  THE DEFENDANT.

22      SO, THERE IS AN ENORMOUS DANGER TO THE COMMUNITY.

23      THERE IS NO REASON TO BELIEVE THAT HE WOULD STOP DOING

24  IT ESPECIALLY IF HE WERE ALLOWED TO DO SO FROM THE SAFETY OF HIS

25  HOME WITHOUT THE ABILITY FOR LAW ENFORCEMENT TO MONITOR HIS --

1    HIS ACTIVITIES.

2            I ALSO WANT TO NOTE  -- AND I'LL MAKE AN ATTORNEY PROFFER

3    ON THIS BECAUSE WE LITERALLY JUST LEARNED ABOUT THIS JUST IN THE

4    LAST 15 MINUTES OR SO  -- THAT THE GOVERNMENT HAS OBTAINED JAIL

5    CALLS THAT WERE MADE BY THE DEFENDANT SINCE HIS ARREST.

6            AND IN ONE OF THE CALLS HE IS -- HE CALLED.  OBVIOUSLY,

7    THEY'RE HIS CALLS.  HE CALLED ONE OF THE UNINDICTED

8    CO-CONSPIRATORS, UNINDICTED CO-CONSPIRATOR NUMBER 2, FEDERICO

9    RODRIGO TRIEBEL.

10           AND ALTHOUGH HE WAS NOT INDICTED IN THIS ROUND, HE IS  --

11   HE IS OBVIOUSLY ALLEGED REGULARLY IN THE OVERT ACTS.

12           ACCORDING TO THE AGENTS WHO REVIEWED THE CALL, THE

13   DEFENDANT AND THIS UNINDICTED CO-CONSPIRATOR APPEARED TO HAVE

14   BEEN COLLUDING AND GETTING THEIR STORIES STRAIGHT.

15           AND THIS IS OF COURSE OBSTRUCTION OF JUSTICE.   IT'S

16   WITNESS TAMPERING.  AND  -- AND IT IS HIGHLY ALARMING THAT HE

17   WOULD CONSIDER DOING THIS EVEN ON A RECORDED CALL FROM THE

18   JAIL WITH THE UNDERSTANDING THAT POSSIBLY LAW ENFORCEMENT

19   COULD LISTEN TO THIS.

20           I SHUDDER TO THINK WHAT HE WOULD BE DOING ON CALLS

21   THAT CANNOT BE MONITORED BY THE GOVERNMENT.

22           AND, SO, I WANT TO NOTE THAT THE -- MANY OF THE PROPOSED

23   SURETIES THAT WERE PRESENTED BY COUNSEL, SEVERAL OF THEM ARE

24   OTHER UNINDICTED CO-CONSPIRATORS.

25           HIS SISTER, VIANAY WHO HAS OFFERED TO SECURE HER -- HER

1    BOND WITH PROPERTY, SHE'S ACTUALLY UNINDICTED CO-CONSPIRATOR

2    NUMBER 27 IN THE INDICTMENT.

3         SO, THE PEOPLE WHO ARE PROFFERED, MANY OF THEM ARE

4    IDENTIFIED AS ENMESHED AND INTERTWINED IN THE CRIMINAL

5    ENTERPRISE.

6         ANOTHER PERSON THAT IS PROFFERED IS MARIELLE ESPINOSA,

7    I BELIEVE THE DEFENDANT'S MOTHER.  SHE WAS A STRAW OWNER OF

8    ONE OF THE -- THE PARCELS ON SAND CANYON AND PART OF THE

9    LAUNDERING OF THE FUNDS IN AND OUT OF THE PROPERTY.

10        SO, THE DEFENDANT -- THERE'S A REASON WHY HE'S

11   DEFENDANT NUMBER 1 IN THIS INDICTMENT.

12        YOU CAN'T COMPARE HIM TO DEFENDANT NUMBER 7 WHO WAS

13   RELEASED ON BOND ON THE RECOMMENDATION OF PRETRIAL AS WELL.

14        THERE IS NO SET OF CONDITIONS THAT THE GOVERNMENT

15   BELIEVES CAN BE FASHIONED THAT WILL ASSURE HIS APPEARANCE BUT,

16   MORE IMPORTANTLY, PROTECT THE COMMUNITY FROM FURTHER

17   DANGER.

18        AND THAT'S NOT WHAT SURETIES ARE FOR.  THAT'S NOT WHAT

19   BOND IS -- YOU KNOW, PROPERTY AND SECURED PROPERTY.   THAT'S --

20   THAT'S NOT GOING TO DO ANYTHING TO KEEP HIM FROM CONTINUING TO

21   ENGAGE IN CRIMINAL ACTIVITY.

22        SO, YOUR HONOR, I MEAN, HE  -- HE DOESN'T HAVE ANY FELONY

23   CONVICTIONS.  BUT YOUR HONOR NOTED THAT HE DOES HAVE AN

24   EXTENSIVE CRIMINAL HISTORY OF MORE OF THESE TYPES OF ACTIVITIES

25   RELATED TO THEFT, RELATED TO UNAUTHORIZED TRANSACTIONS WITH

1    CARS.

2          HE HAS HAD MANY BRUSHES WITH THE LAW.  AND HE JUST

3    BRUSHES THEM OFF BECAUSE THEY HAVE NOT STOPPED HIM.   THEY

4    HAVEN'T SLOWED HIM DOWN.

5          AND, IN FACT, THE INVESTIGATORS, YOU KNOW, IN LOOKING AT

6    THE RECORDS SAW A REAL UPTICK IN THE LAST TWO YEARS OF THE

7    CRIMINAL ACTIVITY AS ALLEGED IN THE INDICTMENT.

8          SO, YOU KNOW, WE WERE ABLE TO DISRUPT THE -- THE

9    CRIMINAL ACTIVITY, THE SCHEMES SORT OF, YOU KNOW, AS IT IS

10   CONTINUING TO RAMP UP AND GROW.

11         AND THE GOVERNMENT IS SIGNIFICANTLY -- HAS SIGNIFICANT

12   CONCERNS THAT IF RELEASED ON BOND THERE IS NO SET OF

13   CONDITIONS THAT WOULD KEEP HIM FROM EITHER FLEEING TO HIS

14   RANCH IN COLOMBIA OR CONTINUING  -- AND/OR CONTINUING TO ENGAGE

15   IN CRIMINAL CONDUCT.

16         SO, UNLESS THE COURT HAS OTHER QUESTIONS, I'LL SUBMIT.

17         THE COURT:   SO, MS. CHOU, JUST TO CLARIFY A FEW THINGS.

18         SO, AS IT RELATES TO THE WEIGHT OF THE EVIDENCE AS A

19   FACTOR UNDER HE BAIL REFORM ACT, WHEN YOU ALLEGE IN THE

20   INDICTMENT THAT MR. – MR. THOLA  -- NOW, IN THE INDICTMENT WHEN

21   YOU SAY MR. THOLA, THAT MEANS MR. THOLA-DURAN.

22         MS. CHOU:  RIGHT.

23         THE COURT:   SO, WHEN YOU SAY MR. THOLA RECEIVED THE

24   WIRE PAYMENT.  AND I'M  -- I'M JUST LOOKING AT PAGE  -- I'M LOOKING AT

25   OVERT ACT 213.

1          SO, ON MARCH 29, 2022, DEFENDANT THOLA RECEIVED A WIRE

2     PAYMENT OF APPROXIMATELY $50,220.

3          DO I UNDERSTAND THAT THE GOVERNMENT HAS A

4     TRANSACTION EVIDENCING THAT WIRE PAYMENT?

5          MS. CHOU:   YES, YOUR HONOR.  THAT'S CORRECT.

6          THE MONEY LAUNDERING ALLEGATIONS -- AND IT IS JUST ONE

7     OF THE FACTORS THAT THE COURT IS TO CONSIDER AND THE COURT IS  --

8     IS NOT TO GIVE IT THE FULL WEIGHT BECAUSE THEY ARE JUST

9     ALLEGATIONS.  SO, I WANT TO BE FAIR ABOUT THAT.

10          BUT I WILL SUBMIT TO THE COURT THAT THE TRANSACTIONS

11     ALLEGATIONS ARE BASED ENTIRELY ON THE DEFENDANT'S BANK

12     RECORDS.

13          AND, SO, I WILL NOTE THAT IN A ONE-YEAR PERIOD $1.8 MILLION

14     PASSED THROUGH THE DEFENDANT'S ACCOUNT UNTIL IT WAS SHUT

15     DOWN FOR FRAUD BECAUSE HE TRIED TO DEPOSIT NUMEROUS FALSIFIED

16     CHECKS.

17          THE COURT:   OKAY.

18          AND THEN SIMILARLY WHERE -- I'M LOOKING AT OVERT ACT 216 --

19     THAT SAYS ON APRIL 13, 2022, USING CODED LANGUAGE IN A WHAT'S APP

20     CHAT WITH FENCE 1 DEFENDANT THOLA SAID HE WAS A BUYER WHO WAS

21     BUYING ALL OF DEFENDANT THOLA'S AVAILABLE ELECTRONICS.

22          DO I UNDERSTAND THAT THE GOVERNMENT -- DO I UNDERSTAND

23     CORRECTLY THAT THE GOVERNMENT HAS THOSE CHATS THAT ARE

24     REFERENCED?

25          MS. CHOU:  THAT IS CORRECT, YOUR HONOR.

1        THE GOVERNMENT DOES HAVE THE  -- THE TEXT MESSAGES

2    THAT WERE EXCHANGED BETWEEN THE DEFENDANT AND THE

3    UNINDICTED CO-CONSPIRATOR  -- OR I WOULD JUST SAY THE FENCE,

4    FENCE 1.

5        AND I'LL ALSO NOTE THAT, AGAIN, IN TERMS OF JUST THE SHEER

6    AMOUNT OF MONEY THAT IS PASSING THROUGH THIS PARTICULAR

7    DEFENDANT, SPECIFICALLY NOT JUST THE NETWORK OVERALL, THAT

8    TEXT MESSAGES BETWEEN THESE TWO ENTITIES SHOW THAT BETWEEN

9    FEBRUARY AND MAY OF 2022 THOLA PERSONALLY OBTAINED ALMOST

10   $380,000 FROM FENCE 1 IN EXCHANGE FOR THE DAILY SALE OF FENCED

11   STOLEN AND FRAUDULENTLY OBTAINED GOODS.

12       THE COURT:  OKAY.

13       MS. AHOUBIM.

14       MS. AHOUBIM:   JUST VERY QUICKLY.

15       THE COURT:  AND LET ME JUST ASK ALSO IF YOU -- I KNOW MS.

16   CHOU MADE A NEW PROFFER THAT YOU HADN'T HEARD BEFORE.

17       IF YOU WANT -- IF YOU WANT A TWO-MINUTE RECESS TO TALK

18   TO YOUR CLIENT ABOUT SO YOU CAN RESPOND, JUST LET ME KNOW.

19       MS. AHOUBIM:   WELL, I MEAN, THERE ARE MANY ALLEGATIONS

20   THAT MS. CHOU DID BRING UP THAT WE'VE NEVER HEARD ABOUT.

21       AND THEN AGAIN, THEY ARE ALLEGATIONS JUST LIKE THERE

22   ARE ALLEGATIONS IN THE INDICTMENT, YOUR HONOR, WHICH I

23   UNDERSTAND THAT THEY HAVE BEEN WATCHING MY CLIENT SINCE 2018.

24   BUT, AGAIN, THEY ARE ALLEGATIONS.

25       HE DOES HAVE AGAIN TIES TO THE COMMUNITY.

1           AND HE SHOULD BE GIVEN THE CHANCE TO EXPLAIN THESE

2   ALLEGATIONS OR DEFEND HIMSELF.

3           THE COURT:  WELL, HE WILL.  THAT'S FOR SURE.

4           MS. AHOUBIM:  I MEAN, OR DEFEND HIMSELF.

5           AND THE BEST WAY THAT HE CAN DO THAT GIVEN THE FACT

6   THAT THERE IS AS THE PROSECUTOR TOLD US VOLUMINOUS DISCOVERY

7   HERE.

8           AND SITTING DOWN AS AN ATTORNEY GOING TO MDC AND

9   TRYING TO TALK TO YOUR CLIENT, I -- I WAS THERE MYSELF ON

10  WEDNESDAY FOR FOUR HOURS.  AND IT TOOK A VERY LONG TIME TO GET

11  IN.  THERE WERE SHIFT CHANGES.  THERE ARE CERTAIN THINGS YOU

12  CANNOT -- YOU KNOW, YOU WANT TO SIT DOWN NEXT TO THE PERSON

13  AND TALK TO THEM.   NONE OF THIS IS ALLOWED.

14          AND, AGAIN, ON A CASE LIKE THIS WHERE HE HAS BEEN

15  WATCHED FOR SIX YEARS, I THINK THAT IT WOULD WARRANT HIM TO BE

16  ABLE TO HAVE A CHANCE TO DEFEND HIMSELF.

17          AND, YOU KNOW, HE HAS AGAIN HAD BRUSHES WITH THE LAW.

18  AND, YES, HE HAS STAYED.   HE HAS NEVER RAN AWAY.

19          SO, THAT AT LEAST SHOULD ALLAY THE FEARS TO THE FACT

20  THAT HE WOULD RUN AWAY NOW.

21          HE WILL BE ON ANKLE MONITORING.   I KNOW THE MARSHALS DO

22  A FANTASTIC JOB IN CALIFORNIA.  THEY ARE THERE WITHIN MINUTES.

23          I'VE HAD CASES IN THE PAST WHERE THAT HAS HAPPENED.

24          AND I UNDERSTAND THAT SHE HAS FEARS, BUT HE HAS

25  SIGNIFICANT FAMILY TIES HERE.  SIGNIFICANT TIES TO THE COMMUNITY.

1    THERE ARE PEOPLE WHO ARE PUTTING THEIR LIVES ON THE

2    LINE FOR THESE BONDS.  AND THEY ARE -- THEY WOULD BE LOSING THEIR

3    LIVELIHOOD IF HE WERE TO RUN.

4    THE COURT:   WELL, DO YOU  -- SO – SO, LET ME -- LET ME OFFER

5    YOU SOME THINGS IF YOU WANT TO ADDRESS.

6    YOU KNOW, AGAIN, NOT A SURPRISE.  IT SHOULDN'T BE A

7    SURPRISE.

8    THE COURT'S GREATEST CONCERN IS  -- IS THE FOLLOWING.

9    MR. THOLA -- MR. THOLA-DURAN'S ROLE IN THIS CONSPIRACY IS

10    AS A LEADER.  THIS IS A VAST CONSPIRACY AS IT'S ALLEGED.

11    IT INVOLVES SIGNIFICANT HARM TO LOTS OF PEOPLE ACROSS

12    THE COUNTRY.  IT IS VERY SOPHISTICATED.

13    IT INVOLVES FALSE DOCUMENTATION, FRAUDULENT --

14    FRAUDULENT APPLICATIONS OF ALL KINDS.  SO, THE LEVEL OF

15    SOPHISTICATION IS VERY HIGH.  SO, THAT RAISES CONCERN FOR FLIGHT

16    AND EVASION.

17    THE AMOUNT OF MONEY INVOLVED IS VERY HIGH.   AS COUNSEL

18    REFERENCED, 1.8 MILLION FLOWING THROUGH HIS BANK ACCOUNT IN THE

19    LAST YEAR.

20    SO, I HAVE LOTS OF CONCERN AGAIN ABOUT THE ABILITY TO SET

21    ANY BOND BECAUSE THE GOVERNMENT IS UNAWARE OF VERY LARGE

22    AMOUNTS OF MONEY WHICH MAY BE STASHED IN ANY PLACE.

23    AND, AGAIN, AS YOU'RE EMPHASIZING TIES TO THIS COMMUNITY,

24    THERE ARE SUBSTANTIAL TIES OUTSIDE THE UNITED STATES.

25    SO, THOSE ARE REALLY GOING TO BE MY CORE CONCERNS IF

1    YOU WANT TO ADDRESS ANY OF THOSE.

2            AND, ALSO, YOU KNOW, AS I TALKED ABOUT WITH THE

3    GOVERNMENT, THE WEIGHT OF THE EVIDENCE IS A FACTOR.

4            AND I THINK, YOU KNOW, THE COURT WILL CONSIDER THE

5    WEIGHT OF THE EVIDENCE TO HELP IT DETERMINE WHETHER ANY

6    CONDITION COULD REASONABLY ASSURE MR. THOLA-DURAN'S FUTURE

7    APPEARANCE AND COMPLIANCE WITH COURT CONDITIONS AS WELL AS

8    THE SAFETY OF THE COMMUNITY.

9            SO, THAT'S THE WAY I LOOK AT IT.

10            BUT  -- BUT IN THAT CONTEXT THERE IS VERY STRONG

11    EVIDENCE BACKING UP THESE MONEY TRANSFERS AND THE

12    SOPHISTICATION AND ALL OF WHICH CAUSES CONCERN FOR FLIGHT RISK

13    AS PRETRIAL SERVICES FINDS.

14            SO, I WOULD FOCUS ON THOSE THINGS IF YOU'D LIKE.

15            MS. AHOUBIM:   SO, AS TO THE ALLEGATIONS --

16            (COUNSEL CONFERRING.)

17            MS. AHOUBIM:   AS TO THE ACCUSATIONS OF HIM BEING A

18    LEADER, AGAIN, THESE – THIS IS BASED ON ALLEGATIONS FROM THE

19    PROSECUTION.  WE HAVE SEEN NO EVIDENCE OF THAT.

20            AND, AGAIN, WE'D LIKE THE OPPORTUNITY TO BE ABLE TO GO

21    OVER THAT WITH OUR CLIENT.

22            THERE ARE A LOT OF INDIVIDUALS WHO ARE INVOLVED HERE,

23    YES.   BUT, AGAIN, ACCUSING HIM RIGHT NOW OF BEING A LEADER AND

24    BEING SOPHISTICATED IN BEING INVOLVED IN THESE BURGLARIES -- THAT

25    HE DIRECTED THEM TO DO -- THESE OTHER CO-CONSPIRATORS TO DO

1    THESE BURGLARIES, WE DON'T HAVE THE EVIDENCE.   WE HAVE THESE

2    ALLEGATIONS.

3              AND, AGAIN, THIS HAS BEEN GOING ON  -- THEY'RE  -- THEY'RE

4    WATCHING  -- OUR CLIENT HAS BEEN FOR SIX YEARS.

5              IF THE EVIDENCE WAS SO STRONG, WHY DID IT TAKE SIX YEARS

6    TO BRING THIS CASE FORWARD.

7              AND I'M HOPING THAT FOR THEIR SAKE THE EVIDENCE IS

8    STRONG.

9              BUT, AGAIN, THESE ARE ALLEGATIONS.

10              AND OUR CLIENT SHOULD HAVE THE OPPORTUNITY TO FIGHT

11   THIS SIX-YEAR LONG SURVEILLANCE OF HIM AND HIS -- HIS WHEREABOUTS

12   AND, YOU KNOW, EVERYTHING THAT HE HAS DONE.

13              HE DOES HAVE SIGNIFICANT TIES.

14              AND THE HARM TO OTHER PEOPLE THAT YOUR HONOR IS

15   STATING ACROSS THE UNITED STATES, YOU KNOW, HE WAS NOT

16   INVOLVED IN THOSE BURGLARIES.   HE DID NOT COMMIT THOSE

17   BURGLARIES.

18              I UNDERSTAND THAT THEIR ALLEGATION IS THAT HE DIRECTED

19   THEM.  AGAIN, THERE IS NO EVIDENCE TO STATE THAT AT THIS PART OF

20   THE CASE.

21              THE AMOUNT OF  --

22              THE COURT:   AND IS THAT  -- I SHOULD ALSO SAY IT'S VERY

23   CONCERNING WHEN YOU HAVE A DEFENDANT IN PRETRIAL CUSTODY

24   MAKING CALLS WHICH IS -- WHICH IS OBSTRUCTION WHICH  -- WHICH IS

25   ANOTHER BASIS IN ADDITION TO FLIGHT WHICH IS ANOTHER BASIS TO

1    DETAIN.

2              SO, IF YOU WANT TO SAY ANYTHING ABOUT THAT, PLEASE DO.

3              MS. AHOUBIM:   I MEAN, YOUR HONOR CAN SET ANY CONDITION

4    THAT HE SEES FIT TO MONITOR MR. THOLA-DURAN -- NOT JUST AN ANKLE

5    MONITOR, COMPUTER MONITORING, TELEPHONE MONITORING.  ANYTHING

6    THAT YOUR HONOR WOULD LIKE TO -- ANY PARAMETERS THAT YOUR

7    HONOR WOULD LIKE TO SET FOR MR. THOLA-DURAN, HE WILL FOLLOW

8    ALONG WITH IT.

9              HE WOULD LIKE TO HAVE A CHANCE TO DEFEND HIMSELF.

10             AND IN ORDER TO BE ABLE TO DO THAT COMPETENTLY WITH HIS

11   ATTORNEY ON A CASE LIKE THIS -- WHICH AGAIN IS A WHITE COLLAR

12   CRIME -- HE WOULD NEED TO HAVE THE ABILITY TO SIT DOWN WITH HIS

13   ATTORNEY AND TALK ABOUT THESE ALLEGATIONS AND DEFEND HIMSELF.

14             AND HE WOULD LIKE THAT OPPORTUNITY.

15             THE COURT:   WELL, TO BE CLEAR, HE HAS THAT RIGHT.   HE

16   WILL HAVE THAT RIGHT.

17             MS. AHOUBIM:  I UNDERSTAND THAT.

18             BUT IT MAKES IT VERY DIFFICULT FOR THE ATTORNEY  --

19             THE COURT:  I UNDERSTAND.

20             MS. AHOUBIM:  -- YOUR HONOR.

21             I MEAN, I DON'T KNOW WHO HAS BEEN A DEFENSE ATTORNEY

22   HERE.

23             COMMUNICATING WITH A CLIENT WHO IS DETAINED IS VERY

24   DIFFICULT.  BECAUSE IT'S NOT JUST  --

25             THE COURT:   UNDERSTOOD.

1          MS. AHOUBIM:  -- OUR SCHEDULE --

2          THE COURT:  I JUST  -- I JUST WANT TO MAKE SURE --

3          MS. AHOUBIM:  -- IT'S THEIR SCHEDULE.

4          THE COURT:  I JUST WANT TO MAKE SURE  -- AND I UNDERSTAND

5    YOUR ARGUMENT.  AND I JUST WANT TO MAKE SURE MR. THOLA-DURAN

6    UNDERSTANDS --

7          MS. AHOUBIM:  YES.

8          THE COURT:  -- HE ABSOLUTELY GETS TO DEFEND HIMSELF.

9    THAT IS NOT IN QUESTION.

10         MR. KATZ:  YOUR HONOR, COULD I JUST ADD ONE THING.

11         THE COURT:  YES, PLEASE.

12         MR. KATZ:  YOU KNOW, THE GOVERNMENT COULD HAVE COME

13   IN HERE RIGHT NOW WITH A PROFFER OF THEIRS AND GIVEN US THE

14   TRANSCRIPT OF THAT.

15         I MEAN, IF THIS WERE REALLY SOME BOMBSHELL, THAT'S

16   CERTAINLY WHAT I WOULD HAVE EXPECTED.  IT SOUNDS LIKE HE SPOKE

17   TO SOMEBODY ELSE ON THE PHONE.

18         I JUST DOUBT THAT IT WAS AS DASTARDLY AS THEY TRIED TO

19   PAINT IT FOR YOUR HONOR --

20         THE COURT:  WELL, YOU'LL  -- YOU WILL ABSOLUTELY GET A

21   COPY OF  THAT.  I AM SURE OF THAT.  AND THEN YOU CAN – YOU CAN

22   ALWAYS COME BACK AND -- YEAH.

23         MR. KATZ:  IT WAS KIND OF AN AMBUSH FROM THE OLD SCHOOL.

24   AND AS I SAY, IF IT REALLY WERE A BOMBSHELL, THEY'D BE IN HERE WITH

25   A COPY FOR YOUR HONOR AND THE DEFENSE.

1          YOUR HONOR, YOU KNOW, I LOOKED AT THE CASE AS BEST AS I

2    COULD ON  --

3          MS. CHOU:  YOUR HONOR, JUST FOR THE RECORD, I JUST WANT

4    TO  --

5          THE COURT:  I'LL LET YOU RESPOND.

6          MR. KATZ:  I LOOKED AT  --

7          THE COURT:  YOU DON'T HAVE TO INTERRUPT.  I'D LET YOU

8    RESPOND.

9          MR. KATZ:  I LOOKED AT THE CASE.  YOU KNOW, IT'S JUST VERY

10   RECENTLY.  BUT, YOU KNOW, IT SEEMED LIKE, OKAY. THEIR ALLEGATION IS

11   THAT HE'S A FENCE, THAT PEOPLE KNEW THAT HE WAS A FENCE, THAT

12   AFTER ONE OF THESE BURGLARIES  -- AND I THINK THERE ARE ONLY

13   THREE IN THE INDICTMENT.  THERE ARE THREE, YOUR HONOR.  THEY

14   TRUMP IT TO THE PRESS AND EVERYWHERE ELSE THAT THIS IS THIS

15   BURGLARY THING.  YOU KNOW. BURGLARY TOURISM.  BUT THE REALITY IS

16   THERE ARE THREE THAT ARE CHARGED IN A 98-PAGE INDICTMENT AMONG

17   ALL OF THESE OVERT ACTS THAT ARE ABOUT GIFT CARDS AND ABOUT

18   TAKING CREDIT CARDS OUT OF PURSES AND THEN USING THEM.  THERE

19   ARE THREE.

20          AND HE WAS KNOWN, LET'S SAY BEST CASE, AS A FENCE.  SO, IF

21   AFTER SOMEBODY DID A BURGLARY -- AND WITHOUT HIM KNOWING

22   ANYTHING ABOUT IT WHATSOEVER, THEY SAID, HEY, WOULD YOU LIKE TO

23   BUY A JEWEL FROM THAT.  WOULD YOU LIKE TO BUY A BEAUTIFUL STEREO

24   SET THAT WE TOOK IN THAT.

25          HE DOESN'T EVEN KNOW WHERE IT'S FROM.  HE KNOWS THAT

1    THERE'S -- AND THE THINGS THAT HE TOOK I UNDERSTAND HE TOOK WITH

2    A RECEIPT. SO, I GUESS THEY STOLE THEM ALONG WITH A RECEIPT. AND

3    WHEN THEY FOUND THOSE THINGS -- YOU HEARD ABOUT THINGS THAT

4    THEY FOUND -- THEY FOUND LOTS AND LOTS OF THIS STUFF WITH A

5    RECEIPT THAT HE HAD, THESE TECHNOLOGY THINGS WITH A RECEIPT.

6            SO, LET'S SAY HE WAS KNOWN AS A FENCE. AND LET'S THINK

7    NOW HOW IT'S DIFFERENT, SO DIFFERENT BETWEEN THE SITUATION

8    BEFORE HE WAS ARRESTED AND NOW WITH THE SATURATION PUBLICITY

9    THAT THEY GOT ABOUT HIM AND HIS NAME.

10            NOBODY WOULD DO BUSINESS WITH HIM. NO ONE IN THEIR

11    RIGHT MIND WOULD DO BUSINESS WITH HIM. NOBODY WOULD THINK OF

12    HIM AS A FENCE.

13            MEANWHILE, HE WOULD BE ON THIS MONITOR --

14            THE COURT: OKAY. UNDERSTAND.

15            MR. KATZ: YOUR HONOR, HE'D BE ON THIS MONITOR WHERE

16    NOT JUST WOULD HE HAVE AN ANKLE MONITOR, NOT ONLY COULD HE NOT

17    LEAVE, NOT ONLY WOULD THEY KNOW ABOUT IT IMMEDIATELY, WHICH

18    HAPPENS WITH MY OTHER CLIENT WHO'S OUT ON HOME -- THEY CALL IT

19    HOME INCARCERATION, WHICH IS WHAT WE'RE PROPOSING FOR HIM. IT'S

20    A KIND OF INCARCERATION BUT IT'S AT HOME. SO, HE ONLY GETS TO

21    LEAVE CERTAIN HOURS OF THE DAY.

22            THE COURT: I UNDERSTAND.

23            MR. KATZ: THIS FELLOW IN THE OTHER CASE WENT TO PLAY

24    GOLF ONE DAY. STUPID THING TO DO, RIGHT. AND THEY KNEW

25    IMMEDIATELY WHERE HE HAD GONE. IMMEDIATELY.

1          HE COULDN'T HAVE GOTTEN  -- HE COULDN'T HAVE GOTTEN

2    VERY -- HE COULDN'T HAVE GOTTEN VERY  -- THEY WOULD HAVE PUT OUT

3    ALERTS.

4          AND THAT'S WHAT WE'RE TALKING ABOUT FOR HIM.  AND YOUR

5    HONOR WOULD PUT HIM ON MONITORING AND TELEPHONE.  THEY WOULD

6    KNOW WHAT TELEPHONE CALLS HE WAS MAKING.

7          THE COURT:  UNDERSTOOD.

8          ANYTHING ELSE?

9          MR. KATZ:  HE WOULDN'T  -- HE WOULDN'T HAVE ACCESS TO A

10   COMPUTER, YOUR HONOR.  ANY MEANINGFUL ACCESS EXCEPT FOR

11   MEDICAL APPOINTMENTS AND LET'S SAY TO DO A PARTICULAR KIND OF

12   BUSINESS THAT WAS KNOWN ABOUT.

13         AND IT TURNS THAT THIS IDEA, YOUR HONOR, OF HIM FLEEING

14   AND GOING SOMEWHERE, THE MONITOR WOULD NOT ONLY PROTECT

15   THAT, BUT HE WOULD WIPE OUT ALL THE PEOPLE THAT HE KNOWS AND

16   LOVES, THE PEOPLE WHO ARE SITTING HERE IN THE COURTROOM.

17         I'VE NEVER SEEN A CASE WHERE SOMEBODY WAS PLEDGING

18   THIS MUCH.  SO, WHEN THEY SAY, OH, MY GOD, THERE WAS A MILLION

19   DOLLARS INVOLVED, LOOK AT THE SURETIES.  LOOK AT THE BAIL THAT

20   WOULD BE UP.  LOOK AT THE PEOPLE'S LIVES THAT HE LOVES, THAT HE

21   WOULD DESTROY IF HE WERE TEMPTED TO GO SOMEWHERE, YOUR

22   HONOR.

23         THIS IS A CASE FOR HOME INCARCERATION BUT NOT STAYING IN

24   JAIL, WHICH REALLY INFRINGES ON HIS RIGHTS TO PREPARE HIS CASE

25   FOR TRIAL AND FOR MOTIONS.

1          THANK YOU, YOUR HONOR.

2          THE COURT:  OKAY.  THANK YOU.

3          MS. CHOU.

4          MS. CHOU:  OBVIOUSLY MAKING IT EASIER FOR DEFENSE

5    COUNSEL TO MEET WITH A CLIENT DOES NOT GO TO EITHER FLIGHT RISK

6    OR DANGER.  AND THE COURT KNOWS THAT.

7          ALLOWING THE DEFENDANT TO BE DETAINED AT HOME WOULD

8    NOT LESSEN THE RISK OF DANGER OR FLIGHT.  THIS IS THE HOME WHERE

9    I BELIEVE PRETRIAL DID NOTE THAT AT THE -- THE MORNING OF THE

10   ARREST THEY FOUND A CONTAINER LIKE A -- LIKE A SHIPPING -- LIKE A

11   TRUCK SHIPPING CONTAINER THAT WAS ON THE PROPERTY THAT

12   CONTAINED A THRIVING MARIJUANA GROW -- ILLEGAL MARIJUANA GROW.

13         MORE CONTAINERS THAT CONTAINED STOLEN CARGO THAT HAS

14   BEEN VERIFIED AS HAVING BEEN STOLEN THROUGH CARGO THEFT,

15   INCLUDING ITEMS LIKE, YOU KNOW, LARGE, LARGE PALLETS OF LIQUOR

16   AND CLOTHING AND SHAMPOO.

17         HUNDREDS AND HUNDREDS OF GIFT CARDS WERE FOUND ALL

18   OVER THE PROPERTY AS WELL AS NEW ELECTRONICS THAT LOOKED LIKE

19   THEY WERE BEING PREPARED FOR FENCING.

20         SO, UNLESS THE COURT HAS OTHER QUESTIONS, YOUR HONOR,

21   WE AGREE WITH PRETRIAL SERVICES THAT  --

22         THE COURT:   UNDERSTOOD.

23         MS. CHOU:  -- ON DANGER AND FLIGHT WE WOULD ASK FOR

24   DETENTION.

25         THE COURT:  OKAY.

1          MS. AHOUBIM, ANY BRIEF FINAL THOUGHTS?

2          MS. AHOUBIM:  JUST  --

3          THE COURT:  VERY BRIEFLY.

4          MR. KATZ:   I KNOW YOU'RE  -- YOU'RE NOT INVITING A REPLY.

5          BUT, YOUR HONOR, I DO THINK THAT THE SITUATION HAS

6   CHANGED TO THE POINT WITH THIS HUGE PUBLICITY THAT HE'S GOTTEN

7   THAT HE WOULD NOT BE ANY KIND OF A DANGER TO THE COMMUNITY.

8          I CAN'T FIGURE OUT WHAT  -- EVEN A FOOLHARDY PERSON

9   WOULD DO.

10          HE WOULD MAKE HIMSELF AVAILABLE FOR FENCING

11   OPERATIONS AND KNOWING HOW HE'S BEING SURVEILLED AND WATCHED.

12          NO, HE WOULDN'T DO THAT.   HE WOULD CERTAINLY NOT BE A

13   DANGER TO THE COMMUNITY BY CLEAR AND CONVINCING EVIDENCE.

14          SO, I THINK THE HARD ONE IF I WERE SITTING IN YOUR HONOR'S

15   POSITION WOULD BE IS IT MORE LIKELY THAN NOT THAT HE'S A FLIGHT

16   RISK.

17          AND YOUR HONOR CAN SET CONDITIONS.

18          AND IF THE IDEA IS THAT WELL, HE WOULD  -- HE WOULD RUN

19   AWAY WIPING OUT ALL THE PEOPLE HE LOVES BUT HE WOULD REIMBURSE

20   THEM SOMEHOW, YOUR HONOR, THERE'S NO WAY THAT HE COULD

21   REIMBURSE THEM AS HOT AS HE IS.

22          AND, SO, THE REALITY IS HE IS NOT MORE LIKELY THAN NOT A

23   FLIGHT RISK.   HE'S JUST NOT, YOUR HONOR.

24          WE CAN SET CONDITIONS.  AND I HOPE YOUR HONOR WILL.

25          THE COURT:   OKAY.  ALL RIGHT.

1          THANK YOU TO THE PARTIES FOR THE  -- FOR THE ROBUST

2    DISCUSSION BACK AND FORTH.

3          IT IS A  -- IT IS A COMPLICATED CASE.   SO, I APPRECIATE ALL OF

4    THE CONTEXT AND THE VIGOROUS ARGUMENT.

5          I AM, HOWEVER, GOING TO ORDER MR. THOLA-DURAN DETAINED

6    PENDING TRIAL.

7          I DO THINK THE GOVERNMENT HAS MET THEIR BURDEN BY A

8    PREPONDERANCE OF THE EVIDENCE TO ESTABLISH RISK OF FLIGHT.

9          I AM ALSO GOING TO FIND THAT THERE IS A SERIOUS RISK THAT

10   -- THAT THE DEFENDANT WILL OBSTRUCT OR ATTEMPT TO OBSTRUCT

11   JUSTICE.

12         I AM CONFIDENT THAT THE DEFENDANT WILL GET IN DUE

13   COURSE THROUGH DISCOVERY A TRANSCRIPT OF THAT RECORDED CALL.

14   AND YOU'LL BE ABLE TO REVISIT THAT IF THE EVIDENCE DOESN'T

15   SUPPORT THAT BUT BASED  -- BUT I DO ACCEPT THE GOVERNMENT'S

16   PROFFER AND  -- WHICH IS PERFECTLY APPROPRIATE TO PROFFER BY

17   ATTORNEY.

18         AND, SO, I WILL FIND A RISK OF OBSTRUCTION.

19         AND I AGREE WITH THE RECOMMENDATION OF PRETRIAL

20   SERVICES FOR ALL THE REASONS MENTIONED.

21         THERE IS AN EXTENSIVE CRIMINAL HISTORY, ALTHOUGH DATED.

22         MR. THOLA-DURAN'S ROLE AS ALLEGED IN THE CONSPIRACY IS

23   AS A LEADER.  IT IS VERY EXTENSIVE.

24         AND THE WEIGHT OF THE EVIDENCE IS STRONG.

25         SO, THAT IS A FACTOR AS WELL.

1        SO – OKAY.   SO – SO, BEFORE WE END THIS HEARING, LET ME --

2    LET ME ASK A QUESTION.

3        LET ME ASK THE GOVERNMENT A QUESTION ABOUT THE

4    CORPORATE ENTITIES.

5        MR. THOLA-DURAN IS A PRINCIPAL OF ONE OF THE  -- I GUESS

6    THERE ARE  --

7        WELL, I THINK THE ONLY THING THAT MATTERS IS THE ONE

8    THAT'S CHARGED.

9        MS. CHOU:   SO, THE DIFFICULTY WITH THE ONE THAT'S

10   CHARGED, THE WAY THAT THE INDICTMENT IS ALLEGED, IS ESSENTIALLY

11   THAT MR. THOLA-DURAN AND HIS CO-CONSPIRATORS WOULD OPEN A

12   RENTAL CAR BUSINESS.  USE IT FOR A PERIOD OF TIME.  CLOSE IT DOWN.

13   AND THEN OPEN UP ANOTHER ONE IN A NEW LOCATION AND KIND OF

14   PERPETRATE IT USING VARIOUS DIFFERENT ENTITIES.

15       RIGHT NOW IT ACTUALLY HAS TWO OPERATING ENTITIES THAT

16   ARE WORKING, "CAR DEALS AND MORE" AND "ENTERPRISE L.A. RENTALS."

17       THE COURT:  OKAY.  THESE ARE JUST DBAS, RIGHT?

18       MS. CHOU:  YES.  WELL  --

19       THE COURT:  BUT THEY'RE REALLY  --

20       MS. CHOU:   --- WE DIDN'T KNOW EXACTLY HOW -- IT'S AKAS BUT

21   IT'S FOR A BUSINESS.   IT'S NOT TECHNICALLY DOING BUSINESS AS THEM.

22   THEY ARE TWO SEPARATE ENTITIES.

23       BUT OUR ALLEGATION IS THAT THEY ARE ESSENTIALLY THE

24   SAME BUSINESS JUST IN TWO DIFFERENT  --

25       THE COURT:   SORRY.   YOU SAID  -- OKAY.  I KNOW WHAT AN LLC

1    IS AND I KNOW WHAT A DBA IS.

2                AN AK ISN'T REALLY A THING IN CORPORATE LAW.

3                MS. CHOU:   RIGHT.

4                THE COURT:  WHAT  -- WHAT  --

5                MS. CHOU :  THAT'S THE DIFFICULTY HERE IS  -- IS THEY ARE

6    TECHNICALLY TWO SEPARATE ENTITIES.

7                THE COURT:   WHAT ARE?

8                MS. CHOU:  "CAR DEALS AND MORE" AND "ENTERPRISE L.A.

9    RENTALS."

10                THE COURT:   THEY ARE SEPARATELY INCORPORATED?

11                MS. CHOU:   THEY ARE NOT INCORPORATED.   ONE OF THEM IS

12    AN LLC  -- ACTUALLY, I BELIEVE BOTH OF THEM ARE AN LLC.   BUT THEY'RE

13    NOT CORPORATIONS.

14                THE COURT:  OKAY.  SO, THE INDICTMENT IS MISTAKEN THEN.

15                BECAUSE YOU  -- YOU ALLEGE THAT "CAR DEALS AND MORE" IS A

16    DBA OF DRIVER POWER RENTALS, LLC.

17                BUT YOU'RE SAYING "CAR DEALS AND MORE" IS ITS OWN LLC?

18                MS. CHOU:   I BELIEVE SO.   I WOULD HAVE TO GO BACK AND

19    LOOK AT THE PAPERWORK FOR "CAR DEALS AND MORE."

20                BUT THEY ARE ESSENTIALLY TWO SEPARATELY RUNNING

21    BUSINESSES RIGHT NOW.

22                THE COURT:   OKAY.

23                MS. CHOU:   ONE OF WHICH JOHN CARLO THOLA IS THE

24    REGISTERED OWNER AND ONE OF WHICH ANA ARRIAGADA IS THE

25    REGISTERED OWNER.

1          THE COURT:   OKAY.   WELL, I DON'T KNOW IF YOU MAY HAVE TO

2     FIX THIS.

3          I MEAN, I THINK YOU'VE ONLY INDICTED DRIVER POWER

4     RENTALS, LLC.

5          MS. CHOU:   WE'LL HAVE TO LOOK A LITTLE BIT MORE INTO IT.   I

6     APOLOGIZE, YOUR HONOR.

7          THE COURT:   OKAY.

8          MS. CHOU:   MY UNDERSTANDING BASED OFF  --

9          THE COURT:   DO YOU  -- DO YOU WANT TO  -- DO YOU WANT TO

10     TRY AND DO AN APPEARANCE AND ARRAIGNMENT FOR --

11          MS. CHOU:   I THINK WE ARE NOT DOING AN APPEARANCE AND

12     ARRAIGNMENT TODAY  --

13          THE COURT:   OKAY.

14          MS. CHOU:  -- UNTIL WE FIGURE OUT WHICH ONE OF THE

15     DEFENDANTS IS GOING TO BE SERVING  --

16          THE COURT:  OKAY.

17          MS. CHOU:   -- AS THE AUTHORIZED REPRESENTATIVE.

18          AND IT'S  -- AND FIGURING OUT WHO THEIR COUNSEL IS GOING

19     TO BE.

20          THE COURT:   OKAY.  YOU DON'T WANT  -- OKAY.  SO, I WAS JUST

21     --

22          MS. CHOU:   SO, WE'RE NOT DOING IT TODAY.

23          ALTHOUGH, THIS DEFENDANT DID CLAIM TO BE THE OWNER OF

24     "CAR DEALS AND MORE" IN THE PRETRIAL SERVICES REPORT.

25          HE'S NOT CURRENTLY A REGISTERED OWNER OF EITHER THE

1    CURRENTLY ACTIVE OPERATING ENTITIES.

2              THE COURT:   OKAY.

3              MS. CHOU:  SO, WE DON'T BELIEVE THAT HE COULD BE AN

4    AUTHORIZED REPRESENTATIVE, THIS  -- THIS PARTICULAR DEFENDANT.

5              THE COURT:   OKAY.  ALL RIGHT.

6              SO, JUST OFF THE TABLE TODAY.  I WAS TRYING TO  -- TRYING  --

7              MS. CHOU:  I APPRECIATE YOUR ASSISTANCE, YOUR HONOR.

8              THE COURT:   ALL RIGHT.

9              WELL, THEN, YOU'LL  -- I'LL LEAVE THAT TO YOU TO FIGURE OUT

10   WHAT THE CORRECT LLCS ARE AND WHETHER YOU WANT TO AMEND

11   YOUR INDICTMENT IN ANY WAY.

12             AND OBVIOUSLY THAT CAN BE ADDRESSED IN THE FUTURE.

13             MS. CHOU:   YES, YOUR HONOR.

14             THANK YOU.

15             THE COURT:   OKAY.

16             THEN LET'S JUST TO WRAP UP WITH MR. THOLA-DURAN, I THINK

17   WE'VE COVERED EVERYTHING.

18             IS THERE ANYTHING ELSE FROM THE GOVERNMENT, MS. CHOU?

19             MS. CHOU:  NO, YOUR HONOR.

20             THE COURT:   OKAY.

21             ANYTHING, MS. 0HOUBIM?

22             MS. AHOUBIM:  NO, YOUR HONOR.

23             MR. KATZ:   YOUR HONOR, I THINK THAT SHE SAID  -- AND MAYBE

24   MY HEARING ON IT WASN'T PERFECT -- THAT MY CLIENT COULD NOT BE.

25             MS. CHOU:   I THINK WE SHOULD PROBABLY TALK ABOUT IT

1    AFTER.

2            I BELIEVE RIGHT NOW THAT THE TWO AUTHORIZED REGISTERED

3    REPRESENTATIVES WOULD BE ANA ARRIAGADA AND JOHN CARLO THOLA.

4            ALTHOUGH, TO PRETRIAL SERVICES YOUR CLIENT DID INDICATE

5    THAT HE WAS THE OWNER OF "CAR DEALS AND MORE."  BUT THAT'S NOT

6    WHAT'S REFLECTED IN THE STATE OF CALIFORNIA REGISTRATION

7    PAPERWORK.

8            THE COURT:   AND REALLY MY QUESTION WAS JUST WHETHER

9    WE WERE GOING TO TRY AND ARRAIGN ONE OF THE CHARGED ENTITIES.

10            AND THE ANSWER APPARENTLY IS NO.

11            SO  --

12            MR. KATZ:   THANK YOU.

13            THE COURT:   BUT I THINK FOR A FUTURE ISSUE WITH YOUR

14    CLIENT IS TO TALK THROUGH THIS.

15            THERE ARE SOME ENTITIES THAT HE MAY OR MAY NOT OWN

16    THAT HAVE BEEN CHARGED.

17            AND WHO IS GOING TO REPRESENT THEM IS THE QUESTION WE

18    HAVE.

19            MR. KATZ:  THANK YOU VERY MUCH.

20            THE COURT:  AND  -- SO THAT WE CAN ARRAIGN  --

21            MR. KATZ:  THANK YOU FOR SAYING THAT, YOUR HONOR.

22            THE COURT:   SO, OKAY.

23            OKAY.  ALL RIGHT.

24            THANK YOU TO THE PARTIES.

25            MS. AHOUBIM:  THANK YOU, YOUR HONOR.

1    THE COURT:  GOOD LUCK TO YOU, MR. THOLA-DURAN.

2    (PAUSE IN PROCEEDINGS.)

3    THE CLERK:   THIS COURT IS NOW IN RECESS.

4    (PROCEEDINGS ADJOURNED AT 4:12 P.M.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          TRANSCRIBER'S CERTIFICATE

4                                    DISCLAIMER

5         THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

6              DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

7              I, Dorothy Babykin, attest that the foregoing proceedings provided to me

8     electronically were transcribed by me to the best of my ability.

9                          /s/  *Dorothy Babykin*

10

11                          Dorothy Babykin

12    Date: 10/4/24

13

14

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place    •    Glendora, CA 91740    •    626.963.0566    •    dotnisbet@aol.com