David A. Katz, SBN 112874
Katz & Associates
9465 Wilshire Blvd. Suite 300
Beverly Hills, CA 90212
Telephone: (818) 281-8815
Email: katznassoc@aol.com
Attorney for Defendant JUAN THOLA-DURAN

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-471-MWF |
|---|---|
| Plaintiff, | OPPOSITION TO THE EX PARTE APPLICATION FOR A PROTECTIVE ORDER; MEMORANDUM |
| v. | |
| JUAN THOLA-DURAN, | Hearing date: No hearing requested |
| Defendant. | |

TO THE HONORABLE U.S. DISTRICT JUDGE MICHAEL W. FITZGERALD AND TO THE U.S. ATTORNEY FOR THIS DISTRICT: PLEASE TAKE NOTICE that Defendant Juan Thola-Duran, through counsel, hereby opposes and objects to certain language in the protective order sought by the government.

First, the defense objects to the language in the proposed order, at 4-5, "WARNING" and "UNAUTHORIZED COPYING OR VIEWING IS SUBJECT TO PUNISHMENT AS CONTEMPT OF COURT" – which is not used in any case cited by the government. The government's legitimate aims are met, without chilling and constricting the defense investigation, with the language: "CONTENTS SUBJECT TO PROTECTIVE ORDER."

Second, there should not be a requirement that witnesses, contacted by the defense, who view confidential informant information (CII) or personal identifying information (PII) put "in writing" that they will not disclose the information. Such a requirement would chill the defense investigation. Notably, the government opposes any requirement that the witnesses it has contacted or will contact be subject to such a requirement.

Third, the protective order should not preclude the defense team from having PII or CII materials in a locked trunk of the vehicle.

The defense does not object to the CII section in the protective order proposed by the government. The defense recognizes that it can petition the Court if there is a dispute as to what should be deemed CII, PII, or Privacy Act material. The defense also does not object to allowing the government to redact PII. The defense recognizes that it can petition the Court if there is any dispute as to any redactions.

At this point, over four months after PIA, the government has disclosed so little discovery that the defense is at a profound disadvantage to explain "the circumstances of th[is] particular case and the nature of the confidential information" that underlie the need for a protective order. *U.S. v. Hovhannisyan*, CR 19-411-GW (C.D. Cal. 2020). Hence it is respectfully submitted that this Court's rulings as to these matters be without prejudice, subject to reassessment and reconsideration as the government actually makes disclosures to the defense.

This opposition is based on the following memorandum, and the entire file and record in this case.

Dated: January 10, 2025

                                            Respectfully submitted,
                                            _____/s/_____
                                            David A. Katz
                                            Attorney for Defendant Juan Thola-Duran

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Background.**

Juan Thola-Duran was indicted in August 2024. He was charged with conspiracy to commit wire fraud (18 U.S.C. §1349); wire fraud (18 U.S.C. §1343); conspiracy (18 U.S.C. §371); conspiracy to commit money laundering (18 U.S.C. §1956(h)); money laundering (18 U.S.C. §1956(a)(1)(B)(i)); and structuring (31 U.S.C. §§5313, 5324(a)(3), (d)(2)). This case does not charge drugs, firearms, violent offenses, or obstruction of justice. According to the government, Thola-Duran knowingly rented cars to crime tourists, had them fraudulently obtain credit cards to buy electronic goods and high-end watches, and fenced those items.

The magistrate judge ordered pretrial detention for Thola-Duran and codefendants Ana Arraigada, John Thola (his son), and Miguel Barajas. Codefendants Patricia Enderton and Federico Triebel were released on bail.

On December 20, 2024, the government filed an ex parte application for a protective order for discovery.

**II.   The proposed protective order.**

On September 16, 2024, the government wrote to the defense about a proposed protective order for discovery. The government wanted to include the following language on each page of discovery that contained personal identifying information and confidential informant information: "WARNING: CONTENTS SUBJECT TO PROTECTIVE ORDER. UNAUTHORIZED COPYING OR VIEWING IS SUBJECT TO PUNISHMENT AS CONTEMPT OF COURT."

The defense, which does not object to a protective order in principle, responded that the government should not use the foregoing language. The defense is concerned that the government's proposed language would deter some people from agreeing to speak with the defense or from being a defense consultant. Instead, the protective order should use the language used in other cases, such as Judge Staton's

order in *United States v. Noah*, No 22-17(A)-JLS. In that case and in the other cases cited below, the discovery simply stated, "CONFIDENTIAL INFORMATION – CONTENTS SUBJECT TO PROTECTIVE ORDER." See Exh. A to Gov't Application. The defense also asked the government to "promptly provide authority" for the proposed language. However, the government did not provide such authority, thus defeating the purpose of meeting and conferring.

The defense also asked the government also to remove language requiring witnesses to "agree in writing to be bound by" the terms of the protective order. The defense has no leverage to require a potential witness to sign such an agreement before being interviewed. Moreover, such a requirement would likely scare off potential witnesses, who tend to be more reticent to speak to the defense than to the government and the FBI.

In the proposed protective order submitted to the Court, the government did not remove the language to which the defense objected.

**III. The protective order should not include objectionable language that serves no legitimate purpose but that undermines the defense ability to investigate the case.**

    **A. Warning language.**

The government's proposed protective order would include the following language on discovery provided to the defense: "WARNING: CONTENTS SUBJECT TO PROTECTIVE ORDER. UNAUTHORIZED COPYING OR VIEWING IS SUBJECT TO PUNISHMENT AS CONTEMPT OF COURT." This language is not used in any case cited by the government. Rather, in all cases from this District relied on by the government, the language simply states, "CONTENTS SUBJECT TO PROTECTIVE ORDER."

The language, put here in bold – "**WARNING**: CONTENTS SUBJECT TO PROTECTIVE ORDER. **UNAUTHORIZED COPYING OR VIEWING IS SUBJECT TO PUNISHMENT AS CONTEMPT OF COURT**" – has not been

2

used in fraud/money-laundering cases like this one or even in methamphetamine and other drug-trafficking cases. Rather in those cases, the permitted language was "CONFIDENTIAL INFORMATION; CONTENTS SUBJECT TO PROTECTIVE ORDER." See, e.g., *U.S. v. Torres*, CR 21-294-GW (C.D. Cal. 2021) at 3 (a drug case); *U.S. v. Petroni*, CR 20-329-PSG (C.D. Cal. 2021) at 5 (methamphetamine, heroin and fentanyl trafficking case); *U.S. v. Bridges*, CR 20-498-SB (C.D. Cal. 2021) at 3 (methamphetamine and fentanyl distribution case); *U.S. v. Hurtado Olivares*, CR 22-248-ODW (C.D. Cal. 2022) (methamphetamine distribution case); *U.S. v. Ramos*, CR 22-354-RGK (C.D. Cal. 2022) at 3 (fentanyl analogue and firearms case).

In fact, in other cases relied on by the government in its application, the language was only "CONFIDENTIAL INFORMATION; CONTENTS SUBJECT TO PROTECTIVE ORDER." See *U.S. v. Zia*, CR 23-351-FMO (C.D. Cal. 2023), at 3; *U.S. v. Hicks*, CR 20-140-VAP (C.D. Cal. 2021), at 3; and *U.S. v. Perez*, CR 21-89-AB (C.D. Cal. 2021.

The problem with the proposed language is that it will scare off potential witnesses to whom the CII or PII may be shown. Understandably, the lay witnesses – who have no obligation to be interviewed by the defense, are not trained in the law, and probably are unrepresented – will take note of the all-caps "warning" and decide there is no benefit to viewing documents while being interviewed and take the risk of being held in civil or even criminal contempt of court.

Moreover, the language routinely used in other cases – "CONFIDENTIAL INFORMATION; CONTENTS SUBJECT TO PROTECTIVE ORDER" – strikes the right balance to protect confidential information from dissemination and not to unreasonably discourage potential witnesses from being interviewed.

### B.     "In writing" requirement.

The government's proposed protective order would require the defense, before interviewing a witness, to have the witness sign a statement that the witness agrees to be bound by the protective order. Such a term is often not included in other protective orders in this District, and it would severely chill potential witnesses from speaking with the defense. The requirement would violate Thola-Duran's due process right to prepare and present a defense. Notably, the government does not require the witnesses it interviews to sign such a statement.

In *U.S. v. Albertson*, CR 18-712-DMG (C.D. Cal.), Dkt. 24, the government wanted an in-writing requirement. Judge Gee declined to impose the requirement. Instead, Judge Gee ordered that "any member of the defense team, before showing protected information to a witness or potential witness, should be required to (1) obtain such witness's agreement (written or oral) to be bound by the protective order and (2) maintain a written log under penalty of perjury listing all persons who have so agreed, such log to be maintained by the defense team."

The defense has no objection to requirements that (1) the defense must obtain a witness's oral pre-assent to the protective order before being shown confidential information and must keep a log memorializing the witness's oral assent; (2) a member of the defense team be in the room with the witness viewing confidential information, and (3) the defense team may not leave confidential information with any witness. But requiring the defense also to convince a witness – whom it does not represent, and who already may be reluctant to speak to the defense – to sign a legal document impairs the defense ability to investigate and defend this case. Witnesses often are very hesitant to get involved in federal criminal cases and often are reluctant to speak with a defense attorney or defense investigators. Signing a document will only further intimidate witnesses who are reluctant to be interviewed in the first place and, as a practical matter, will interfere with the defense access to witnesses and the

4

defense ability to prepare a defense. See *U.S. v. Leung*, 351 F.Supp.2d 992, 993 (C.D. Cal. 2005) (explaining that "[i]t is well established that the government may not interfere with defense access to witnesses," and dismissing an indictment where the government imposed conditions that meaningfully interfered with defendant's ability to interview a key witness). For this reason, courts have rightly agreed that the defense's proposed alternative suffices. See *U.S. v. Albertson*, CR-18-712-DMG (C.D. Cal. 2019), Dkt. Nos. 24 and 27; *U.S. v. Cisneros*, CR-18-875-JAK (C.D. Cal. 2019), Dkt. No. 22; *U.S. v. Barrow*, 20-CR-563-VAP (C.D. Cal. 2021), Dkt. 42; *U.S. v. Garcia*, 20-CR-225-DSF (C.D. Cal. 2020), Dkt. 58; *U.S. v. Murrienta Zavala*, 19-CR-676-FMO (C.D. Cal. 2020).

If the defense were to be subject to an "in writing" requirement, the government also should be subject to that requirement. In *U.S. v. Hovhannisyan*, CR 19-411-GW (C.D. 2020), the federal public defender argued for reciprocity, stating that while the government claimed that an "in writing" requirement was "key" to safeguarding sensitive information, the government wanted itself not bound by any "in writing" requirement. The public defender wrote:

> In truth, the government doesn't want to be bound by the in-writing requirement because it recognizes that it's a meaningful impediment to investigating cases. … It's neither fair nor intellectually honest for the government to claim that a protective order imposes minimal burdens and is necessary to protect highly-sensitive information, but that the burdens should only apply to the defense, and never to the government. If the Court intends to enter the protective order, it should require the government to redraft it so that ¶4, which imposes a number of "safeguards" on the defense, is mutually binding on both sides.

The government should protect privacy of crime victims, see Crime Victims' Rights Act, 18 U.S.C. § 3771(a), and it should use "best efforts to do so. See Attorney General Guidelines for Victim and Witness Assistance at 47 (May 2012), https://www.justice.gov/sites/default/files/olp/docs/ag_ guidelines2012.pdf. Yet the

5

government does not think that "best efforts" should include an "in writing" requirement for the witnesses it interviews. There is no reason in this case to think that the defense is in a different position.

### C. Transport of confidential materials.

The government's proposed protective order would preclude the defense from having confidential materials in the locked trunk of a vehicle. FBI agents, police, and government lawyers are not subject to this requirement. The government contends that this term is "standard," is included in all government protective orders for discovery that includes cooperator information, and "has been upheld in many, many protective orders issued in this district."

What the government wrote is inaccurate. First, the issue does not seem to have ben litigated. Defense acquiescence is not the same as having been upheld against a challenge. The cases in which this is included are mainly drugs cases.

See, e.g., *U.S. v. Petroni*, CR 20-329-PSG (C.D. Cal. 2021); *U.S. v. Bridges*, CR 20-498-SB (C.D. Cal. 2021); *U.S. v. Hurtado-Olivares*, CR 22-248-ODW (C.D. Cal. 2022); *U.S. v. Ramos*, CR 22-354-RGK (C.D. Cal. 2022); *U.S. v. Torres*, CR 21-294-GW (C.D. Cal. 2021). In many other cases, no such language was included. See, e.g., *U.S. v. Bonilla*, CR 24-500-JFW (C.D. Cal. 2024) (drug case); *U.S. v. Hicks* CR 20-140-VAP (C.D. Cal. 2021) (firearms case); *U.S. v. Zia*, CR 23-351-FOM (C.D. Cal. 2023) (wire fraud, money laundering case).

It would not be unusual for defense counsel and/or an investigator to meet with more than one potential witness or with a potential witness and his client on the same day, and to show different people different documents. Under the government's proposed requirement, rather than put all documents needed for the day in a locked car trunk, counsel would have to return to his office between meetings to drop off documents from the prior meeting and pick up documents for

the next meeting. This requirement imposes a serious inefficiency that impedes and undermines defense investigation and preparation.

## CONCLUSION

For the foregoing reasons, the protective order should not contain the "warning" and "contempt of court" language; should not include the "in writing" requirment; and should permit the defense to keep confidential information in a locked car trunk when out interviewing witnesses or his client.

Dated: January 10, 2025                               Respectfully submitted,

\_\_/s/_____
David A. Katz
Counsel for Juan Thola-Duran